IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CIVIX-DDI, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL ASSOCIATION OF REALTORS, | ) | No. 05 C 6869 |
| HOMESTORE, INC., HOTELS.COM, L.P. , | ) | |
| HOTELS.COM GP LLC, YAHOO! INC., | ) | |
| ORBITZ LLC, TRAVELOCITY.COM INC., | ) | |
| TRAVELOCITY.COM, LP, and | ) | |
| YELLOWPAGES.COM LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendants Hotels.com, L.P.'s and Hotels.com, GP, LLC's

(collectively "Hotels.com") Motion for Partial Summary Judgment pursuant to Federal Rule of

Civil Procedure 56(c).[1]  In its motion, Hotels.com argues that Plaintiff CIVIX-DII, LLC's

("Civix") patent infringement claims are partially barred because the Hotels.com activities at

issue fall within the scope of Civix's covenant-not-to-sue arising from the Civix-MapQuest

settlement agreement (the "MapQuest Agreement") or within the scope of Civix's covenant-not-

to-sue arising from the Civix-Navteq settlement agreement (the "Navteq Agreement").  For the

reasons discussed below, the Court denies Hotels.com's Motion for Partial Summary Judgment

with respect to the alleged infringement of the '692, '622, '307, and '291 Patents for activities

---

[1]     Hotels.com's partial summary judgment motion applies to all hotel bookings conducted
via Hotels.com between May 7, 2002 and May 15, 2003, and all hotel bookings in the
continental United States from May 15, 2003 to the present.

licensed under the Maporama-Hotels.com License Agreement. The Court grants Hotels.com's Motion for Partial Summary Judgment with respect to the alleged infringement of the '622, '307, and '291 Patents for activities licensed under the MapQuest-Hotels.com License Agreement, but denies Hotels.com's motion as to the '692 Patent for activities under the MapQuest-Hotels.com License Agreement.

## BACKGROUND

### I.     Parties

Civix is a Colorado limited liability company with its principal place of business at 125 South Wacker Drive, Chicago, Illinois. (R. 107-1, Def.'s Stmt. Facts ¶ 1.) Hotels.com, L.P. is a Texas limited partnership with a place of business at 10440 North Central Expressway, Suite 400, Dallas, Texas. (*Id.* ¶ 2; R. 212-1, Def.'s Second. Am. Answer ¶ 4.) Hotels.com GP, LLC is a Texas limited liability company with a place of business at 10440 North Central Expressway, Suite 400, Dallas, Texas. (*Id.*) Hotels.com operates the www.hotels.com website, which allows customers to book hotel reservations online. (Def.'s Stmt. Facts ¶ 8.) Hotels.com, L.P. and Hotels.com GP, LLC are direct or indirect subsidiaries of Expedia, Inc., which owns Travelscape. (R. 158-1, Pl.'s Stmt. Facts ¶ 1.)

### II.     Patents-in-Suit

Civix is the exclusive owner of U.S. Patent Nos. 6,385,622 (the "'622 Patent"), 6,408,307 (the "'307 Patent"), 6,415,291 (the "'291 Patent"), and 6,473,692 (the "'692 Patent"). (R. 203-1; Pl.'s Second. Am. Compl. ¶¶ 11, 13.) Civix brought this lawsuit against Hotels.com alleging infringement of various claims of the patents-in-suit. (Def.'s Stmt. Facts ¶ 5.) Specifically, Civix alleges infringement of claims 6, 12-20, 25, 26, 28, 29, 31, 38, 42-45, 47, 55,

56, 61, and 63 of the '622 patent, claims 2, 5, 13-15, 17, 19, 25, and 30 of the '307 patent, claims

5-7, 14, and 18-23 of the '291 patent, and claims 27, 28, 30, 31, 41, 42, 44, 45, and 50 of the

'692 Patent.  (Pl.'s Second. Am. Compl. ¶ 18.)

## III.    Civix - Navteq Litigation & Settlement Agreement

Navteq, formerly known as NavTech, gathers, formats, and licenses geographic data to

numerous companies.  In 1999, Civix sued Navteq for patent infringement in the United States

District Court for the Northern District of Illinois.  (Def.'s Stmt. Facts ¶ 28; Def.'s Confidential

Ex. 11, Navteq Agreement, pmbl.)  Civix and Navteq settled the lawsuit in 2000.  (Def.'s Stmt.

Facts ¶ 28.)  Under the integrated settlement agreement (the "Navteq Agreement"), Civix

granted "a worldwide, irrevocable, unlimited, unrestricted, paid-up license under the CIVIX

Patents and the INTERFERENCE Patents to the NAVTECH GROUP to engage in any

Commercial Activity at its sole discretion involving or relating in any way to NAVTECH

Technology."  (Navteq Agreement, ¶ 6.a.)  The Navteq Agreement contains a covenant-not-to-

sue, which states in relevant part:

9.      COVENANTS NOT TO SUE

a.      CIVIX hereby covenants and agrees, on a worldwide and irrevocable basis, that
neither CIVIX, nor any successor or assign of CIVIX, nor any successor or assign or
licensee of the CIVIX Patents and/or the INTERFERENCE Patents, will ever bring any
claim, demand and/or cause of action of any kind against:

i.      any NAVTECH COMPANY with respect to or in any way relating to the
NAVTECH Technology, including without limitation any Commercial Activity by any
NAVTECH COMPANY or any third party on behalf of any NAVTECH COMPANY.

ii.     any direct or indirect customer or end user of a NAVTECH COMPANY, and/or
of any NAVTECH Technology, with respect to or in any way relating to the NAVTECH
Technology, including without limitation any Commercial Activity by any such customer
or end user relating in any way to (1) all or any part of the NAVTECH Technology or (2)

any products, processes, systems, and/or services that use and/or incorporate all or any part of the NAVTECH Technology.

(Def.'s Stmt. Facts ¶ 29; Navteq Agreement, ¶ 9.)

The Navteq Agreement defines a "NAVTECH COMPANY" as "any and all entities that form all or a part of NAVTECH; and/or its direct and indirect subsidiaries, affiliates, joint ventures, and partnerships; and/or distributors, agents, and representatives thereof." (Def.'s Stmt. Facts ¶ 30.b; Navteq Agreement, ¶ 1.h.) Further, the Navteq Agreement defines "Commercial Activity" as "making, using, selling, offering for sale and/or importing and any and all other activity, including without limitation creation, development, manufacture, manufacture by another, licensing, offer to license, disposition, transfer, distribution, advertising, promotion, and/or exportation." (Def.'s Stmt. Facts ¶ 30.b; Navteq Agreement, ¶ 1.d.) Furthermore, the Navteq Agreement defines "NAVTECH Technology" as:

> . . . any past, present, and/or future invention, product, process, system, and/or service (including, but not limited to, information, data, software and hardware) (1) created, developed, made, used, sold, offered for sale, licensed, offered for license, imported and/or exported by any NAVTECH COMPANY; and/or (2) created for, developed for, made for, and/or purchased by any NAVTECH COMPANY; and/or (3) licensed by any entity to any NAVTECH COMPANY. Without limiting the foregoing in any way, NAVTECH Technology expressly includes any database of any NAVTECH COMPANY, purchased by any NAVTECH COMPANY, and/or licensed to any NAVTECH COMPANY, such as a geographic database including information about business, historical and other sites and/or points of interest.

(Navteq Agreement, ¶ 1.j.)

## IV.    Civix - MapQuest Litigation & Settlement Agreement

In 1999, Civix sued MapQuest.com for patent infringement in the United States District Court for the District of Colorado. (Def.'s Stmt. Facts ¶ 20; Def.'s Confidential Ex. 5, Ex. A., Stipulated Order of Dismissal ¶ 2.) Civix and MapQuest settled the lawsuit in May 1999.

4

(Def.'s Stmt. Facts ¶ 20.)  Under the integrated settlement agreement (the "MapQuest

Agreement")[2] Civix granted

> a fully paid-up, personal, non-transferable, perpetual, non-assignable, non-exclusive license under the CIVIX Patents to MAPQUEST
>
> (i)     to make, create, modify, improve, design, have made, import, use, sell or offer for sale, sublicense, transfer and/or assign any and all past, present and future MAPQUEST Technology covered by any claim of the CIVIX Patents,
>
> (ii)    to sublicense, transfer and/or assign to any MAPQUEST customer the right to undertake any and all past, present, and future Permitted Uses with respect to the MAPQUEST Technology, and
>
> (iii)   with respect to (i) and (ii) above, the concurrent right of use by MAPQUEST's end users, and by each such customer's customers and end users, of the MAPQUEST Technology and the Permitted Uses.

(Def.'s Stmt. Facts; Def.'s Confidential Ex. 5, MapQuest License Agreement, ¶ 3.)  The

MapQuest Agreement contains a covenant-not-to-sue, stating in relevant part:

> 7.     CIVIX hereby covenants and agrees that neither CIVIX nor any successor or assign of CIVIX will bring any lawsuit, cause of action, claim or demand of any kind against
>
> (i)     MAPQUEST, with respect to the creation, modification, improvement, design of, or any manufacture, importation, use, license, sale or offer for sale by MAPQUEST of, the MAPQUEST Technology or the Permitted Uses to any of its customers who sublicense, purchase, or use MAPQUEST Technology, or
>
> (ii)    any MAPQUEST customer, with respect to the creation, modification, improvement, design of, or any manufacture, importation, use, sale or offer for sale by any such customer, of the MAPQUEST Technology or the Permitted Uses, or
>
> (iii)   any MAPQUEST end user, or any MAPQUEST customer's customer or end user, with respect to the MAPQUEST Technology or the Permitted Uses.

---
[2]

   The MapQuest Agreement contains two agreements – the MapQuest Settlement Agreement and the MapQuest License Agreement.

(Def.'s Stmt. Facts ¶ 21; Def.'s Confidential Ex. 5, MapQuest Settlement Agreement, ¶ 7.) The MapQuest Agreement defines "MAPQUEST Technology" as "proprietary software, products, equipment, systems and services, and related know-how" that "MAPQUEST has created and developed and will continue to create and develop." (Def.'s Stmt. Facts ¶ 22.a; Def.'s Confidential Ex. 5, MapQuest License Agreement, pmbl.) The MapQuest Agreement defines "Permitted Uses" as

> certain rights with respect to the MAPQUEST Technology . . .
>
> (i)     for use of the MAPQUEST Technology by such customer as so licensed, transferred and/or assigned, or
>
> (ii)    with the right for such customer to incorporate the MAPQUEST Technology in, or use the MAPQUEST Technology with, other software, products, equipment, systems and services, or
>
> (iii)   with the right for such customer to modify, enhance, or revise the MAPQUEST Technology for use as so modified, enhanced or revised, or in connection with other software, products, equipment, systems and services, or
>
> (iv)    with the right for such customer to sublicense and/or resell software, products, equipment, systems and services as described in (i), (ii) and (iii) in accordance with license agreements with MAPQUEST (and in each such case, with the concurrent right of MAPQUEST's and each such customers and/or end users).

(Def.'s Stmt. Facts ¶ 22.b; Def.'s Confidential Ex. 5, MapQuest License Agreement, pmbl.)

## V.      Sublicense Agreement between MapQuest & Hotels.com

Hotels.com licensed geographic mapping, route generation, spatial search, and geocoding software and technology from MapQuest between January 15, 2002 and May 15, 2003. (Def.'s Stmt. Facts ¶ 23; Def.'s Confidential Ex. 6, MapQuest-Hotels.com License Agreement, at HOTEL 030116, Schedule B ¶ 2.1, Schedule C; Def.'s Confidential Ex. 7, MapQuest-

Hotels.com License Agreement Extension, ¶ 1; Def.'s Confidential Ex. 8, MapQuest-Hotels.com License Agreement Second Extension, ¶ 1.)

## VI. Sublicense Agreement between Navteq & Maporama

Since 2002, Maporama has licensed geographic data from Navteq. (Def.'s Stmt. Facts ¶ 33; Def.'s Confidential Ex. 13, Navteq-Maporama License Agreement, ¶¶ 1.1, 2.7, 4.1; Def.'s Confidential Ex. 13, Navteq-Maporama License Agreement Extension, at NH00001 & NH00011.) Under the Navteq-Maporama License Agreement, Maporama can use the geographic data to provide six types of transactions to its customers, including a location lookup transaction, a map transaction, and a geocode lookup transaction. (Def.'s Stmt. Facts ¶ 34; Def.'s Confidential Ex. 14, Navteq Territory License No. 1, Ex. B, ¶¶ C, D, F; Def.'s Confidential Ex. 14, Navteq Territory License No. 1, Use Rights, ¶ V.D.) In addition, Maporama may not modify the licensed Navteq geographic data. (Navteq-Maporama License Agreement, ¶ 11(a).) Maporama, however, may allow its customers to locally store a copy of the licensed Navteq geographic data for use in the aforementioned six types of transactions. (Navteq Territory License No. 1, Use Rights, ¶ V.D.)

## VII. Sublicense Agreement between Maporama & Hotels.com

Since at least May 15, 2003, Hotels.com has purchased "mapping, location, and proximity search" services from Maporama. (Def.'s Stmt. Facts ¶ 31; Def.'s Confidential Ex. 12, Maporama-Hotels.com License Agreement, ¶ 3.1.) Under the sublicense agreement, Maporama provides geocoded map data and geocoding, map image generation, and proximity search software. (Def.'s Stmt. Facts ¶ 32; Def.'s Confidential Ex. 12, Maporama-Hotels.com License Agreement, ¶¶ 1, 2.) Specifically, the Maporama service provides "[a]ll necessary

information, tools, engine, and systems . . . so as to enable the [customer] to link . . . to a database of addresses or geocodes . . . ."  (Def.'s Confidential Ex. 12, Maporama-Hotels.com License Agreement, Schedule 2 ¶ 1.)

## LEGAL STANDARDS

### I.     Summary Judgment

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P 56(c).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  In determining whether a genuine issue of material fact exists, the Court construes the facts in a light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party.  *Anderson v. Liberty Lobby*, Inc., 477 U.S. at 255.  "[W]hen a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  *Id.* at 250 (quoting Fed R. Civ. P. 56(e)).  In other words, the existence of a factual dispute alone is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the summary judgment motion.  *Butts v. Aurora Health Care, Inc.*, 387 F. 3d 921, 924 (7th Cir. 2004).

## II.      Patent License Defense

Under title 35, Section 154(a)(1), a patent holder has the right to exclude others from making, using, or selling the patented invention. *Monstanto Co. v. Scruggs*, 459 F.3d 1328, 1338 (Fed. Cir. 2006). Conduct falling within the scope of Section 154(a)(1) includes limited use licensing. *Id.* In other words, because "intellectual property rights, like any other property rights, are subject to the contractual obligations of their owner and the applicable law," a patent holder may confer a license upon another party. *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995); *see also Anton/Bauer, Inc. v. PAG, Ltd.,* 329 F.3d 1343, 1350 (Fed. Cir. 2003) ("all or part of a patentee's right to exclude others from making, using, or selling a patented invention may be waived by granting a license, which may be express or implied"). "A nonexclusive patent license is simply a promise not to sue for infringement." *United States Philips Corp. v. Int'l Trade Comm'n,* 424 F.3d 1179, 1189 (Fed. Cir. 2005). The party asserting the affirmative defense of a patent license bears the burden of proving its defense. *McCoy,* 67 F.3d at 920. Whether a patent license protects a certain accused activity is a question of contract interpretation. *See Intel Corp. v. VIA Tech., Inc.*, 319 F.3d 1357, 1361-63 (Fed. Cir. 2003).

## III.      Illinois Contract Principles[3]

### A.      Contract Interpretation

Illinois courts adhere to the "four corners rule" of contract interpretation, which provides that "an agreement, when reduced to writing, must be presumed to speak the intention of the

---

[3]        Although neither the Navteq Agreement nor the MapQuest Agreement contain a choice of law provision, the parties do not dispute that Illinois law governs the Court's contractual analysis.

parties who signed it.  It speaks for itself, and the intention with which it was executed must be determined from the language used.  It is not to be changed by extrinsic evidence."  *Davis v. G.N. Mortg. Corp.,* 396 F.3d 869, 878 (7th Cir. 2005) (internal quotations omitted) (citing *Air Safety, Inc. v. Teachers Realty Corp.,* 185 Ill.2d 457, 236 Ill.Dec. 8, 706 N.E.2d 882, 884 (1999)).  In other words, courts interpret unambiguous contract terms according to their plain meaning.  *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687 (7th Cir. 2004) (citing *Trade Ctr. v. Dominick's Finer Foods,* 304 Ill.App.3d 931, 238 Ill.Dec. 230, 711 N.E.2d 333, 335 (1999)); *see also PPM Fin., Inc. v. Norandal USA, Inc.,* 392 F.3d 889, 892 (7th Cir. 2004) (if contract provisions' language is clear and unambiguous, court ascertains parties' intent exclusively from contract's language).  A contract provision is ambiguous if it is subject to more than one reasonable interpretation.  *PPM Fin., Inc. v. Norandal USA, Inc.,* 392 F.3d 889, 893 (7th Cir. 2004) (citing *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.,* 166 Ill.2d 520, 211 Ill.Dec. 459, 655 N.E.2d 842, 846 (1995)).  Under Illinois law, the interpretation of an unambiguous contract is a question of law.  *Utility Audit, Inc.*, 383 F.3d at 687.

### B.      Third-Party Beneficiaries

"Individuals who are not parties to a contract may enforce its terms only when the original parties intended the contract to directly benefit them as third parties."  *United States v. Andreas,* 216 F.3d 645, 663 (7th Cir. 2000) (citing Restatement (Second) of Contracts § 304); *see also United Logistics, Inc. v. Catellus Dev. Corp.,* 319 F.3d 921, 930 (7th Cir. 2003) (although not a party to the contract, an intended third party beneficiary is one who the contracting parties intended to benefit from the contract).  Under Illinois law, "[i]t is not necessary that the beneficiary be identified by name in the contract, but it must be identified in some manner, for

10

example, by describing the class to which it belongs." *Continental Cas. Co. v. American Nat. Ins. Co.,* 417 F.3d 727, 734-35 (7th Cir. 2005) (citing *Holmes v. Fed. Ins. Co.,* 353 Ill.App.3d 1062, 289 Ill.Dec. 750, 820 N.E.2d 526, 530 (2004)).

## ANALYSIS

### I. Hotels.com's License Defense Under the Navteq Agreement

Under the Navteq Agreement, Civix granted a license under the "CIVIX Patents" to the "NAVTECH GROUP" to engage in any Commercial Activity at its sole discretion involving or relating in any way to "NAVTECH Technology." (Navteq Agreement ¶ 6.a.) The '622, '307, and '291 Patents are continuations of application Serial No. 08/371,425, filed on January 11, 1995, and are therefore included in the definition of "CIVIX Patents" under the Navteq Agreement. (Navteq Agreement ¶ 1.a.) Also under the Navteq Agreement, Civix released all direct and indirect customers of Navteq from infringement claims under the "CIVIX Patents" arising prior to the agreement date of January 25, 2000, involving or relating in any way to "NAVTECH Technology." (*Id.* ¶ 7.a.ii.) Civix further agreed not to sue customers or end users of Navteq with respect to or in any way relating to "NAVTECH Technology," including "Commercial Activity" of a customer or end user relating in any way to "NAVTECH Technology," or products, processes, systems, and/or services that use and/or incorporate all or part of the "NAVTECH Technology." (*Id.* ¶ 9.a.ii; Def.'s Stmt. Facts ¶ 29.)

### A. Coverage of the '692 Patent Under the Navteq Covenant-Not-to-Sue

The definition of "CIVIX Patents" in the MapQuest Agreement does not include the '692 Patent because the '692 Patent is not part of the patent families that yielded U.S. Patent Nos. 4,997,170 or 5,682,525, and the '692 Patent does not claim priority to application Serial No.

08/371,425, filed on January 11, 1995, or application Serial No. 07/146,692, filed on January 21, 1988. (Navteq Agreement ¶ 1.a.) Hotels.com argues that the covenant-not-to-sue in the Navteq Agreement nonetheless covers the '692 Patent because the Court addressed this issue in a related case and concluded, as a matter of law, that the covenant-not-to-sue also covers the '692 Patent. *See CIVIX-DDI, LLC v. Cellco P'ship*, No. 03 C 3792, 2004 WL 2966928, at *5 (N.D. Ill. Dec. 1, 2004). Specifically, in *Cellco P'ship*, the Court concluded that Civix-Navteq Agreement's covenant-not-to-sue covered the '692 Patent because "Paragraph 9.a. of the NavTeq Agreement is broader than the license provision in Paragraph 6 because the Agreement limits the latter, but not the former, to 'CIVIX Patents'" and "the covenant-not-to-sue is only limited to 'any claim, demand, and/or any cause of action of any kind' relating to 'NAVTECH Technology.'" *Id.* (citation omitted). Because the Navteq Agreement at issue here is the same agreement in the Court's *Cellco P'ship* decision, for the same reasons set forth the by the Court in *Cellco P'ship*, the covenant-not-to-sue in the Navteq Agreement covers the '692 Patent as a matter of law.

### B.      Navteq Agreement Provision at Issue

Hotels.com argues that its accused services are protected in their entirety by the covenant-not-to-sue in Paragraph 9 of the Navteq Agreement. More specifically, Hotels.com relies on the language in the Navteq Agreement stating that Civix cannot "bring any claim, demand, and/or causes of action of any kind against . . . ***any direct or indirect customer*** or end user of a NAVTECH Company, and/or any NAVTECH Technology, with respect to or in any way relating to the NavTech Technology." (Def.'s Stmt. Facts ¶ 29; Navteq Agreement ¶ 9.a.ii.) (emphasis added). In other words, Hotels.com maintains that it is a third-party beneficiary to the Navteq Agreement because it is an "indirect customer" of a Navteq Company. *See Continental*

*Cas. Co.,* 417 F.3d at 734-35.  The Court agrees that Hotels.com is a third-party beneficiary to the Navteq Agreement.

The Navteq Agreement is integrated and does not reference the Navteq–Maporama License Agreement or the Maporama-Hotels.com License Agreement.  (*See* Navteq Agreement ¶ 22.)  Under Illinois law, an "integration clause is a 'clear indication that the parties desire the contract be interpreted solely according to the language used in the final agreement.'"  *Much v. Pacific Mut. Life Ins. Co.*, 266 F.3d 637, 644 (7th Cir. 2001) (quoting *Air Safety, Inc.*, 185 Ill.2d at 465).  Thus, when "parties formally include an integration clause in their contract, they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence."  *Id.* (quoting *Air Safety, Inc.*, 185 Ill.2d at 465.)  As such, under basic principles of contract law, the Navteq-Maporama License Agreement and the Maporama-Hotels.com License Agreement do not limit Hotels.com's third-party beneficiary rights under the Navteq Agreement.  *See Liberty Mut. Ins. Co. v. Travelers Indem. Co.*, 78 F.3d 639, 643-44 (D.C. Cir. 1996) (citing Restatement (Second) of Contracts § 309, Defenses Against the Beneficiary, cmt. c.) ("beneficiary's right against the promisor is not subject to claims and defenses of the promisee against the beneficiary unless the contract so provides."); *see also CIVIX-DDI, LLC v. National Assoc. of Realtors, et al.,* No. 05 C 6869, 2006 WL 3210504, at *5 (N.D. Ill. Nov. 6, 2006).

### C.    Definition of "Use" Under the Navteq Agreement

#### 1.    Unambiguous Contract Terms

The covenant-not-to-sue in the Navteq Agreement upon which Hotels.com relies covers "any products, processes, systems, and/or services that use and/or incorporate all or any part of

the NAVTECH Technology." (Def.'s Stmt. Facts ¶ 29; Navteq Agreement ¶ 9.a.ii.) Under the basic canons of contract interpretation, the Court must interpret the Navteq Agreement's terms according to their plain meaning and will not examine extrinsic evidence if the agreement is unambiguous on its face. *See Davis,* 396 F.3d at 878; *Utility Audit,* 383 F.3d at 687. Here, the Navteq Agreement unequivocally states that it covers "any products, processes, systems, and/or services that use and /or incorporate all or any part of the NAVTECH Technology." (Def.'s Stmt. Facts ¶ 29; Navteq Agreement ¶ 9.a.) Because this provision is not subject to more than one reasonable interpretation, *see PPM Fin., Inc.,* 392 F.3d at 893, the Court will not turn to extrinsic evidence to interpret its meaning. The Navteq Agreement's integration clause, in which the contracting parties were "explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence," supports this conclusion. *Much*, 266 F.3d at 644 (quoting *Air Safety, Inc.,* 185 Ill.2d at 465).

### 2. Civix's Attempt to Use Extrinsic Evidence

#### a. Navteq-Maporama License Agreement

Relying on the Navteq-Maporama License Agreement and part of Navteq's Rule 30(b)(6) witness' deposition testimony, Civix attempts to define the word "use" with extrinsic evidence. (R. 143-1, Pl.'s Confidential Ex. E, Birch Dep. at 22-23, 70-71, 140-141.) Specifically, Civix argues that Hotels.com does not "use" Navteq data when a Hotels.com web page does not display a Navteq copyright marking, and therefore, this "marking display" test can determine if Maporama "uses" Navteq data to generate a web page. The Court rejected this exact argument in *CIVIX-DDI, LLC v. National Assoc. of Realtors, et al.,* No. 05 C 6869, 2006 WL 3210504, at *5 (N.D. Ill. Nov. 6, 2006), and for the same reasoning, rejects Civix's present argument.

b.      Maporama-Hotels.com License Agreement

Civix also tries to create an ambiguity by incorporating the Maporama-Hotels.com
License Agreement and part of the deposition testimony of Hotels.com's Rule 30(b)(6) witness,
David Mertz.  The Maporama-Hotels.com License Agreement requires Hotels.com to display a
Maporama logo and attribution notice ("Powered by Maporama") and include a hyperlink to the
Maporama homepage on any Hotels.com web pages that are "Content Pages." (Def.'s
Confidential Ex.12, Maporama-Hotels.com License Agreement, ¶ 5.2.)  "Content Pages" are
defined as web pages "dedicated to the Content."  (Maporama-Hotels.com License Agreement,
¶ 1.)  "Content" includes "[g]eocoded worldwide map data with intertown road network" and
"[g]eocoded map data street numbers and addresses located in the Territory."  (*Id.*)  Civix argues
that if a Maporama notice is not displayed on a Hotels.com page, that Maporama "Content" –
and thus Navteq Data – is not used to generate the data displayed on the page.

The Maporama-Hotels.com License Agreement, however, allows Maporama to audit the
number of "Content Pages" viewed on Hotels.com's website.  (Maporama-Hotels.com License
Agreement, ¶ 15.)  More specifically, Maporama may install software to count "the number of
generated maps and proximity search[es] per MAPORAMA's map supplier."  (*Id.*)  This is a
subset of the services, including geocoding and reverse geocoding, that Hotels.com receives
from Maporama under the their agreement.  (Maporama-Hotels.com License Agreement,
Schedule 2, ¶¶ 1-7.)  Accordingly, Hotels.com may use services under Maporama-Hotels.com
License Agreement to generate unmarked web pages.

Assuming, *arguendo*, that Hotels.com is failing to mark web pages as required under the
Maporama-Hotels.com License Agreement, Hotels.com may still be "using" Maporama

"Content" within the plain meaning of the word. To illustrate, the parties agree that Hotels.com purchases geocode information from Maporama for use in its database of hotel properties. (Def.'s Stmt. Facts, ¶¶ 19, 35.) Thus, any proximity search or destination search on the Hotels.com website uses the purchased hotel property geocode information to generate search results. (*Id.* ¶ 14.) Indeed, the parties do not dispute that the "city name," "landmark," and "address" search results pages do not display a Maporama mark. (Pl.'s Stmt. Facts ¶ 30 (disputing only whether a display of a Maporama mark is necessary on results pages for destination and proximity results pages).)

The deposition testimony of Hotels.com's Rule 30(b)(6) witness, David Mertz, supports this analysis. Mertz testified that Hotels.com must mark a web page "whenever Maporama content is ***used on a page***" but web page marking is not a reliable means of determining "whether Maporama content is ***used in connection with any page*** on the website." (Pl.'s Confidential Ex. F, Mertz Dep., at 43-44.) (emphasis added). Accordingly, the suggested "display marking" test creates false factual disputes that are not outcome determinative of this lawsuit. Thus, Civix's argument based on Hotels.com's contractual marking obligation under the Maporama Sublicense Agreement fails.

**D.      Civix has Covenanted Not to Sue for Activities Involving or Relating to "NAVTECH Technology," Not Just for "Actual Use"**

Next, the Court turns to the scope of the covenant-not-to-sue in the Navteq Agreement. The Navteq Agreement states that Civix cannot "bring any claim, demand, and/or causes of action of any kind against . . . any direct or indirect customer or end user of a NAVTECH Company, and/or any NAVTECH Technology, ***with respect to or in any way relating to*** the NavTech Technology." (Navteq Agreement ¶ 9.a.ii; Def.'s Stmt. Facts ¶ 29.) (emphasis added).

16

Civix offers its own interpretation of this clause based on the Court's earlier decision in a related case involving the Navteq Agreement. *See Cellco P'ship*, No. 03 C 3792, 2004 WL 2966928, at *5. Civix emphasizes a single sentence from the Court's earlier opinion to support an interpretation that limits the scope of the Navteq Agreement to actual use: "The Court cannot interpret the covenant not to sue as precluding CIVIX from suing even activities that do not use 'NAVTECH Technology.'" *CIVIX-DDI, LLC v. Cellco P'ship*, 2004 WL 2966928, at *5. Civix ignores the larger context of the *Cellco P'ship* opinion.

In *Cellco P'ship*, the Court rejected defendant Verizon Information Services' ("VIS") argument that Navteq's License Agreement with Civix was a covenant "to never sue NavTech's indirect customers whether or not the lawsuit targeted 'NAVTECH Technology.'" *Id.,* 2004 WL 2966928, at *5. While the sentence Civix relies upon was part of the rejection of VIS's argument, the Court further explained the proper focus of the contractual analysis in the next sentence of the opinion: "Thus, to the extent the accused . . . functionality *does not involve or relate* to a NavTech database, the NavTech Agreement's covenant does not preclude CIVIX from bringing suit." *Id.* (emphasis added). As such, the sentence Civix relies upon was not an attempt to define "involve or relate to," but rather was a rejection of VIS's argument that Civix agreed "to never sue NavTech's indirect customers" regardless of the activity at issue. Finally, the *Cellco P'ship* decision unequivocally provides that the "Navtech Agreement license only covers commercial activity *involving or relating to* 'NAVTECH Technology.'" *Id.* at *4. (emphasis added). Civix's attempt to narrow the scope of the covenant-not-to-sue based on the Court's earlier decision is in error.

      **E.     Genuine Issues of Material Fact Exist Whether Hotels.com's Activities Relate to Navteq Technology**

Last, the Court turns to whether Hotels.com's activities "relate to" to Navteq Technology. Civix and Hotels.com do not dispute that Navteq Data – under the umbrella of "Navteq Technology" – is a component of what Maporama sells to Hotels.com. (Pl.'s Stmt. Facts ¶ 3 (stating that Navteq technology is part of a "combination of technologies" sold to Hotels.com); *see also* Def.'s Stmt. Facts ¶ 34 (undisputed that "[u]se of the Navtech Data allows Maporama to provide six types of transactions to its customers, including . . . [g]eocodes."); Def.'s Stmt. Facts ¶ 35 (Maporama was the exclusive supplier of geocode data, only "disputed to the extent Hotels.com suggests that Maporama sells geocode data for or on behalf of Hotels.com."). Further, each property in the Hotels.com database has a latitude and longitude associated with it. (Def.'s Stmt. Facts ¶ 10; Def's Confidential Ex. 4, Mertz Decl., Ex. A (showing latitude/longitude fields for a sample hotel property in the Hotels.com system.).) Geocoding is used to calculate the latitude and longitude for a hotel property. (Def.'s Stmt. Facts ¶ 10.) Also, a location lookup transaction involves resolving a street address to a geocode. (Pl.'s Stmt. Facts ¶ 10; O'Neill Decl. ¶ 7.) From the end of the last MapQuest contract extension in May 15, 2003, the Hotels.com website used geocode geographic data provided by Navteq under the Maporama-Hotels.com License Agreement. (Def.'s Stmt. Facts ¶¶ 31, 35; Def's Confidential Ex. 4, Mertz Decl., ¶ 21 ("[f]rom May 15, 2003 until the present, Maporama has been Hotels.com's exclusive vendor of geocode data.").)[4]

---

[4]

      Despite Civix's arguments to the contrary, Hotels.com's Rule 30(b)(6) witness, David Mertz, has the requisite personal knowledge to support the statement made in paragraph 21 of his declaration. *See Markel v. Board of Regents of the Univ. of Wis.,* 276 F.3d 906, 912 (7th Cir. 2002) (affiant must be competent to testify to the matters at hand and affidavit must contain facts that would be admissible into evidence).

Civix, however, argues that Maporama's involvement as a value-added-reseller of Navteq Technology changes the nature of what is sold to Hotels.com to something other than "Navteq Technology," and therefore Hotels.com cannot benefit from the covenant-not-to-sue in the Navteq Settlement Agreement. Stated another way, Civix argues that when Maporama bundles purchased Navteq Technology – including geographic data – with other software and services for sale, it is selling "Maporama Technology" or "Maporama Data" not covered by the relevant covenant-not-to-sue.

There is evidence in the record, however, demonstrating that Maporama sells its software and Navteq Data to Hotels.com, which in turn uses the software and data to extract geocodes. (Pl.'s Stmt. Facts ¶ 10 (citing O'Neill Decl., ¶ 7).) Nevertheless, Civix also sets forth evidence that Maporama, not Hotels.com, converts the street address into geocodes. More specifically, Navteq's Rule 30(b)(6) witness testified that Maporama is a value-added reseller that combines Navteq technology and sells it to third-parties. (Def.'s Stmt. Facts ¶ 3.) Other evidence supports Civix's contention that Maporama converts the street addresses into geocodes, although this evidence is also disputed. (R. 143-1, Pl.'s Resp. to Def.'s Stmt. Facts ¶ 17, O'Neill Decl. ¶¶ 15, 20; *but see* Ex. G, McIntosh Dep at 28.)

Accordingly, viewing the evidence and all reasonable inferences in a light most favorable to Civix, *see Anderson v. Liberty Lobby*, Inc., 477 U.S. at 255, there are genuine issues of material fact for trial concerning whether Hotels.com's activities relate to Navteq Technology. The Court thus denies Hotels.com motion for partial summary judgment with respect to the alleged infringement of the '692, '622, '307, and '291 Patents for activities licensed under the Maporama-Hotels.com License Agreement.

19

## II.    Hotels.com's License Defense Under MapQuest Agreement

Under the MapQuest Agreement, Civix granted a license to MapQuest "to make, create, modify, improve, design, have made, import, use, sell or offer for sale, sublicense, transfer and/or assign any and all past, present and future MAPQUEST Technology covered by any claim of the CIVIX Patents," and "to sublicense, transfer, and/or assign to any MAPQUEST customer the right to undertake any and all past, present and future Permitted Uses with respect to the MAPQUEST Technology."  (MapQuest License Agreement,  ¶¶ 3.i, 3.ii.)  The '622, '307, and '291 Patents are continuations of application Serial No. 08/371,425, filed on January 11, 1995, which issued as U.S. Patent No. 5,682,525, and are therefore included in the definition of "CIVIX Patents" under the MapQuest Agreement.  (*Id.* pmbl.; MapQuest Settlement Agreement, pmbl.)

Civix also released all customers of MapQuest from infringement claims under the "CIVIX Patents" arising prior to the agreement date of May 3, 1999, involving or relating in any way to "MAPQUEST Technology."  (MapQuest Settlement Agreement, ¶ 5.)  Civix further agreed not to sue customers or end users of MapQuest with respect to the "MAPQUEST Technology," including "creation, modification, improvement, design of, or any manufacture, importation, use, sale of offer for sale" of  "the MAPQUEST Technology or its Permitted Uses" by MapQuest or its customers.  (*Id.* ¶ 7; Def.'s Stmt. Facts ¶ 21.)

### A.    Coverage of the '692 Patent Under the MapQuest Covenant-Not-to-Sue

Hotels.com argues that the covenant-not-to-sue in the MapQuest Agreement covers the '692 Patent because the Court addressed this issue in a related case and noted that the covenant-not-to-sue also covers the '692 Patent.  *See CIVIX-DDI, LLC v. Cellco P'ship*, No. 03 C 3792,

2004 WL 2966928, at *5 (N.D. Ill. Dec. 1, 2004). In *Cellco P'ship*, the Court concluded that Civix-Mapquest Agreement's covenant-not-to-sue covered the '692 Patent because "[t]he **parties do not dispute** that the patents-in-suit asserted against VIS are 'CIVIX patents' as defined by the MapQuest License Agreement." *Id.* at *5 (emphasis added). Hotels.com's and Civix's Local Rule 56.1 Statements do not establish that the '692 patent is a "CIVIX Patent" as defined by the MapQuest License Agreement. In fact, the definition of "CIVIX Patents" in the MapQuest Agreement does not include the '692 Patent because the '692 Patent is not part of the patent families that yielded U.S. Patent Nos. 4,997,170 or 5,682,525. (*See* MapQuest Settlement Agreement, pmbl.) While Hotels.com is correct in noting that the covenant-not-to-sue in Paragraph 7 of the MapQuest Agreement covers "any lawsuit," that language – in and of itself – does not allow the Court to interpret the scope of Paragraph 7 beyond the "CIVIX Patents" to include the '692 Patent. (*Id.* ¶ 7.)

The Court notes that all of the provisions in the MapQuest Agreement are not limited to the "Civix Patents." The covenant-not-to-sue provision of the MapQuest Agreement, for example, does not mention the "Civix Patents." (*Id.* ¶ 7.) In contrast, other provisions of the settlement agreement contain similar broad releases of liability, but are limited to the "CIVIX Patents." Paragraph 5 of the MapQuest Agreement discharges MapQuest from "any and all claims, demands or causes of action . . . that relate in any way to the CIVIX Patents." (*Id.* ¶ 5.) Similarly, Paragraph 3 of the MapQuest Agreement "grants a fully paid-up, personal, non-transferable, perpetual, non-assignable, non, exclusive license under the CIVIX Patents to MAPQUEST . . . ." (*Id.* ¶ 3.)

In *Cellco P'ship*, the Court concluded that Civix-Navteq Agreement's covenant-not-to-sue covered the '692 Patent because "Paragraph 9.a. of the NavTeq Agreement is broader than the license provision in Paragraph 6 because the Agreement limits the latter, but not the former, to 'CIVIX Patents'" and "the covenant-not-to-sue is only limited to 'any claim, demand, and/or any cause of action of any kind' relating to 'NAVTECH Technology.'" *CIVIX-DDI, LLC v. Cellco P'ship*, 2004 WL 2966928, at *5 (citation omitted). Here, it is not the Court's duty to raise and conduct a similar argument for the MapQuest Agreement on behalf of Hotels.com. *See Doherty v. City of Chicago*, 75 F.3d 318, 324 (7th Cir. 1996) ("Given our adversary system of litigation, it is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (citation omitted). Because Hotels.com has insufficiently supported its position that the '692 Patent is covered under the MapQuest Agreement, the Court denies Hotels.com's Partial Motion for Summary Judgment with respect to the alleged infringing activities under the '692 Patent that relate to its use of "MAPQUEST Technology."

### B. MapQuest Agreement Provision at Issue

Hotels.com maintains that its accused services are protected in their entirety by the covenant-not-to-sue in Paragraph 7 of the MapQuest Agreement. Specifically, Hotels.com relies on the language in the MapQuest Agreement stating that Civix agrees not to "bring any lawsuit, cause of action, claim, or demand" against "***any MAPQUEST customer***" or "any MAPQUEST end user" with respect to the "MAPQUEST Technology," including "creation, modification, improvement, design of, or any manufacture, importation, use, sale of offer for sale" of "the MAPQUEST Technology or its Permitted Uses" by MapQuest or its customers. (Def.'s Stmt.

Facts ¶ 21; MapQuest Settlement Agreement, ¶ 7.) (emphasis added). Hotels.com contends that it is a third-party beneficiary to the MapQuest Agreement because it is a "MAPQUEST customer." *See Continental Cas. Co.,* 417 F.3d at 734-35. The Court agrees.

The MapQuest Agreement is integrated and does not reference the MapQuest – Hotels.com License Agreement. (MapQuest Settlement Agreement ¶ 15.) Under the same contract principles applied to the Navteq Agreement, the MapQuest Sublicense Agreement does not limit Hotels.com's third-party beneficiary rights under the MapQuest Agreement as Civix asserts. *See Liberty Mut. Ins. Co. v. Travelers Indem. Co.*, 78 F.3d 639, 643-44 (D.C. Cir. 1996) (citing Restatement (Second) of Contracts § 309, Defenses Against the Beneficiary, cmt. c.) ("beneficiary's right against the promisor is not subject to claims and defenses of the promisee against the beneficiary unless the contract so provides."); *see also CIVIX-DDI, LLC v. National Assoc. of Realtors, et al.,* No. 05 C 6869, 2006 WL 3210504, at *5 (N.D. Ill. Nov. 6, 2006).

### C. No Genuine Issues of Material Fact Exist as to Whether Hotels.com's Alleged Infringement of the '622, '307, & '291 Patents are Covered by MapQuest Agreement

Civix and Hotels.com do not dispute that MapQuest provided geocode information to Hotels.com from at least May 2002 through May 15, 2003. (Def.'s Stmt. Facts ¶¶ 19, 23; Def.'s Confidential Ex. 6, MapQuest-Hotels.com License Agreement, Schedule B, ¶ 2.4.5; MapQuest-Hotels.com License Agreement, Schedule C (defining "MapQuest NT Server" as including "the Mapping Data, the MapQuest Toolkit, the MapQuest API, and the Licensee Interface, when used in conjunction with each other to generate . . . geocodes.").) From the launch of the Hotels.com website through the termination of the last MapQuest contract extension in May 15, 2003, the Hotels.com website used geocode and mapping functionality provided by MapQuest. (Def.'s

Stmt. Facts ¶ 25; Def.'s Confidential Ex. 10, Hotels.com Maporama Transition Project, at 9-16;

Def.'s Confidential Ex. 4, Mertz Decl. ¶ 17.)[5]

    Hotels.com's Rule 30(b)(6) witness, David Mertz, has the requisite personal knowledge to support the statement made in paragraph 17 of his declaration. *See Markel v. Board of Regents of the Univ. of Wis.,* 276 F.3d 906, 912 (7th Cir. 2002) (affiant must be competent to testify to the matters at hand and affidavit must contain facts that would be admissible into evidence).

    Further, Hotels.com included the following statement of undisputed fact to define its relationship with Mapquest:

> From the time the www.hotels.com website launched until May 15, 2003, MapQuest was Hotels.com's exclusive provider of geocoding and mapping data technology. *See* Exhibit 4, at 15. During the time Hotels.com was a Mapquest customer, all of the hotels available on the www.hotels.com website received geocodes that were provided by MapQuest and were used in the process of hotel location searching used to identify hotels for customer booking. Because of this, every hotel booking on the www.hotels.com website during this time used MapQuest data and technology. *See* Exhibit 4, ¶ 17.

(Def.'s Stmt. Facts ¶ 25.) Civix offered the following response:

> Disputed. The MapQuest/Hotels.com Agreement limited the extent to which Hotels.com was entitled to the benefits arising from the CIVIX/MapQuest settlement agreement to activities performed using the "MapQuest API" (Ex. M, MapQuest/Hotels.com Agreement, ¶ 2.1 at HOTEL 30118) and to functions preformed with "the software specifically licensed hereunder:"
>
> 2.4.5: Geocodes. All latitude and longitude coordinates ("MapQuest Geocodes") assigned to locations either (i) by MapQuest's geocoding services or (ii) by software licenses hereunder, shall be used by Licensee solely in conjunction with the software specifically licensed hereunder. The MapQuest Geocodes shall not be used by Licensee for any other purpose, including without limitation, use with any computer software not licensed hereunder, and uses or products which modify the delivered latitudes and longitudes.

(Pl.'s Resp. to Def.'s Stmt. Facts ¶ 25.)

    It is well-established that the Court is entitled to expect strict compliance with Local Rule 56.1. *See Ammons v. Aramark Unif. Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). The requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v.*

Furthermore, Civix and Hotels.com do not dispute that any proximity search or destination search on the Hotels.com website uses the purchased hotel property geocode information to generate search results. (Def.'s Stmt. Facts ¶ 14.) As such, any hotel search – for properties near a landmark, near an address, or in a city/destination – involves a comparison between the point of interest and the hotel properties geocoded using "software, products, equipment, or services" that fall under the definition of "MAPQUEST Technology" in the settlement agreement. (MapQuest LicenseAgreement, pmbl.) The comparison itself is "incorporation of MAPQUEST Technology with other software, products, systems, or services" that falls within "Permitted Uses" covered by the covenant-not-to-sue because the comparison relies on hotel property geocoded data that is part of the contracted MapQuest Technology. (MapQuest Settlement Agreement ¶ 7.) Usage of MapQuest API's (application program interface) to perform proximity search functions and display maps are additional examples of a customer use of "MAPQUEST Technology" covered by the covenant-not-to-sue. (*Id.*; Def.'s

*Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000). Civix chose to discuss Hotels.com's third-party beneficiary rights under the covenant not to sue, rather than respond to the facts contained in Hotels.com's statement, namely, that Mapquest was the exclusive provider of geocoding and mapping data technology for Hotels.com through May 15, 2003. In responding to other Local Rule 56.1 statements, Civix does not dispute that Hotels.com had a contractual relationship with MapQuest, that MapQuest provided maps, and that Hotels.com "switched to Maporama as of May 15, 2003." (Pl.'s Resp. ¶¶ 9, 23, 27.) The Court is not required to "wade through improper denials and legal argument in search of a genuinely disputed fact." *Bordelon,* 233 F.3d at 529. Accordingly, paragraph 25 of Hotels.com's statement of undisputed facts is deemed admitted. *See* N.D.Ill. Local Rule 56.1(b)(3)(C); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (". . . when a responding party's statement fails to controvert the facts as set forth in the moving party's statement in the manner dictated by the rule, those facts shall be deemed admitted for purposes of the motion.").

Stmt. Facts ¶ 26; Def.'s Confidential Ex. 9, MapQuest Enterprise v. 2.0 Technical User Guide, at 15-18, 21-23.)

Hotels.com has carried its burden of properly supporting its summary judgment motion under Rule 56(e) and Civix has failed to rebut Hotels.com's motion by presenting "specific facts showing that there is a genuine issue for trial." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250; *see also Butts*, 387 F. 3d at 924. The Court thus grants Hotels.com's Motion for Partial Summary Judgment with respect to the alleged infringement of the '622, '307, and '291 Patents for activities licensed under the MapQuest-Hotels.com License Agreement. The Court, however, denies Hotels.com's summary judgment motion as to the '692 Patent for activities under the MapQuest-Hotels.com License Agreement.

## CONCLUSION

For these reasons, the Court denies Hotels.com's Motion for Partial Summary Judgment with respect to the alleged infringement of the '692, '622, '307, and '291 Patents for activities licensed under the Maporama-Hotels.com License Agreement. The Court grants Hotels.com's Motion for Partial Summary Judgment with respect to the alleged infringement of the '622, '307, and '291 Patents for activities licensed under the MapQuest-Hotels.com License Agreement. The Court, however, denies Hotels.com's motion as to the '692 Patent for activities under the MapQuest-Hotels.com License Agreement. Finally, the Court denies Civix's Motion to Strike the Declaration of David Mertz as moot.

**Dated:** January 22, 2007

                                        **ENTERED**

                                  _____

                                  **AMY J. ST. EVE**
                                  **United States District Court Judge**