IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| CIVIX-DDI, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 05 C 6869 |
| v. | ) | |
| | ) | Honorable Amy St. Eve |
| NATIONAL ASSOCIATION OF | ) | |
| REALTORS, HOMESTORE, INC., | ) | |
| HOTELS.COM, L.P., HOTELS.COM | ) | |
| GP LLC, and YAHOO! INC., | ) | |
| | ) | |
| Defendants. | ) | |

## CIVIX'S OPENING BRIEF ON CLAIM CONSTRUCTION

Raymond P. Niro
David J. Sheikh
Gregory P. Casimer
David J. Mahalek
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, IL 60602
(312) 236-0733
Fax: (312) 236-3137

*Attorneys for Plaintiff, CIVIX-DDI, LLC*

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ...............................................................................................1

II.   SUMMARY OF THE PATENTS-IN-SUIT.....................................................1

III.  SUMMARY OF THE LEGAL STANDARDS  GOVERNING CLAIM
CONSTRUCTION..............................................................................................2

IV.  DEFENDANTS' ACCUSED PRODUCTS AND SERVICES...........................4

V.   AGREED UPON TERMS ..................................................................................5

      A.    Agreed Upon Terms That Were Not
            Construed By the Court In The Expedia Suit .........................................5

      B.    Agreed Upon Terms That Were
            Construed By the Court in the Expedia Suit…………………………………6

VI.  DISPUTED TERMS IN THE '622, '307 AND '291 PATENTS THAT  WERE
NOT CONSTRUED BY THE COURT IN THE EXPEDIA SUIT ...................7

      A.    "Advertisement" And "Advertising" .......................................................8

      B.    "Video" ....................................................................................................9

      C.    "User Interface" .....................................................................................12

VII.  DISPUTED TERMS IN THE '692 PATENT THAT WERE  NOT CONSTRUED
BY THE COURT IN THE EXPEDIA SUIT...................................................14

      A.    "Wherein A Search Of Said Repository Acquires Said Location" And "Searching
            Said Repository Based on Said Locational Address"............................14

      B.    "Location".............................................................................................16

VIII. TERMS PREVIOUSLY CONSTRUED BY THE  COURT THAT ARE
CONTESTED BY DEFENDANTS ..................................................................18

IX.  AGREED TERMS FROM THE EXPEDIA SUIT...........................................19

X.   CONCLUSION.................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.,
340 F.3d 1298 (Fed. Cir. 2003)................................................................................3

Apex Inc. v. Raritan Computer, Inc.,
325 F.3d 1364 (Fed. Cir. 2003)................................................................................2

Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.,
334 F.3d 1294 (Fed. Cir. 2003)................................................................................2

CIVIX v. Expedia, et al.,
Case No. 04 C 3792 (N.D. Ill.) ..........................................1, 5, 6, 7, 14, 18, 19

Comark Communications, Inc. v. Harris Corp.,
156 F.3d 1182 (Fed. Cir. 1998)................................................................................3

Exxon Chemical Patents, Inc. v. Lubrizol Corp.,
64 F.3d 1553 (Fed. Cir. 1995)................................................................................21

International Visual Corp. v. Crown Metal Manufacturing Co.,
991 F.2d 768 (Fed. Cir. 1993)................................................................................3

Markman v. Westview Instruments, Inc.,
52 F.3d 967 (Fed. Cir. 1995)................................................................................2, 4

Panduit Corp. v. Dennison Manufacturing Co.,
810 F.2d 1561 (Fed. Cir. 1987)................................................................................3

Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.,
170 F.3d 1373 (Fed. Cir. 1999)................................................................................4

Phillips v. AWH Corp.,
415 F.3d 1303 (Fed. Cir. 2005)................................................................2, 4, 9, 15

Read Corp. v. Portec, Inc.,
970 F.2d 816 (Fed. Cir. 1992)................................................................................4

Renishaw PLC v. Marposs Societa per Azioni,
158 F.3d 1242 (Fed. Cir. 1998)................................................................................15

SRI International v. Matsushita Electric Corp.,
775 F.2d 1107 (Fed. Cir. 1985)................................................................................3

Toro Co. v. White Consolidated Industries, Inc.,
199 F.3d 1295 (Fed. Cir. 1999)............................................................................................15

Transmatic, Inc. v. Gulton Industries, Inc.,
53 F.3d 1270 (Fed. Cir. 1995)..............................................................................................3

Vitronics Corp. v. Conceptronic, Inc.,
90 F.3d 1576 (Fed. Cir. 1996).......................................................................2, 3, 4, 9, 15

**FEDERAL STATUTES**

35 U.S.C. 112 ¶ 6..................................................................................................................7, 14

## I.      INTRODUCTION

In this suit, CIVIX has charged each of the defendants (National Association of Realtors, Homestore, Inc., Hotels.com, L.P., Hotels.com, G.P., LLC and Yahoo!, Inc.) with infringement of U.S. Patents Nos. 6,385,622 ("the '622 patent"), 6,402,307 ("the '307 patent"), 6,414,291 ("the '291 patent") and 6,473,692 ("the '692 patent").  The first step in resolving the issue of infringement is to determine the meaning of the asserted claims.

Much of this work has already been done.  In CIVIX v. Expedia, et al., Case No. 04 C 3792 (N.D. Ill.), the Court construed most of the claim terms identified in the Joint Claim Chart submitted by the parties in this suit on May 11, 2007 (Dkt. No. 349).  There is no legitimate need or basis to revisit the Court's construction of these terms.   The intrinsic record of the patents-in-suit is the same today as it was in the Expedia suit, and the Court's rulings were based on proper and correct legal standards.  This leaves only a handful of truly disputed terms, which are discussed in detail below.

## II.      SUMMARY OF THE PATENTS-IN-SUIT

The Court is familiar with the subject matter of the patents-in-suit, so a detailed discussion of these patents is not required here.  Briefly, all the patents-in-suit relate to systems used to obtain locational and other information about places of interest in specified geographical regions by accessing a remote database.  The patents can be divided into two categories.  The '622, '307 and '291 patents (collectively "the CIVIX Patents") all derive from U.S. Patent Application No. 08/371,425 which issued as U.S. Patent No. 5,682,525 ("the '525 patent").  The '622, '307 and '291 patents share a common specification.  Copies of the '622, '307, '291 and '525 patents, and their prosecution histories, are in Volumes 1-3 of the Parties' Joint Appendix, which has been filed with this brief.  Citations to the Parties' Joint Appendix are as follows: "A___."

The '692 patent is not part of the chain of applications that produced the '525, '622, '307 and '291 patents. CIVIX acquired the '692 patent from Go2. The '692 patent derives from a chain of applications filed by other inventors, beginning with U.S. Patent Application No. 08/701,586, which issued as U.S. Patent No. 5,839,088. Copies of the '692 patent and its predecessor related patents, with their prosecution histories, are in Volumes 4-6 of the Parties' Joint Appendix.

## III. SUMMARY OF THE LEGAL STANDARDS GOVERNING CLAIM CONSTRUCTION

Claim construction is an issue of law for the Court to decide. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995). It is a "bedrock principle" of patent law that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). In construing claims, the analytical focus must begin and remain centered on the language of the claims since those words, selected by the inventor, define the scope of the claim. Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc., 334 F.3d 1294, 1298 (Fed. Cir. 2003). The claims themselves provide substantial guidance as to the meaning of particular claim terms quite apart from the written description and the prosecution history. See Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). Thus, the Court must start its analysis with the "strong presumption" that claims must be given their plain and ordinary meaning as depicted in the claim itself. Apex Inc. v. Raritan Computer, Inc., 325 F.3d 1364, 1371 (Fed. Cir. 2003).

The objective baseline from which to begin claim interpretation is to inquire into how a person of ordinary skill in the art would understand the claim. Phillips, 415 F.3d at 1313. The context in which a term is used in the claim can be highly instructive. However, the claims do not stand alone; they are part of "a fully integrated written instrument." Markman, 52 F.3d at

978. Thus, claims "must be read in view of the specification, of which they are a part." Vitronics, 90 F.3d at 1582. Indeed, the party challenging the plain meaning has the burden of providing this Court with evidence to demonstrate that the inventor had *clear* intention to re-define the disputed terms in a different manner than how they are ordinarily understood by one skilled in the art. Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc., 340 F.3d 1298, 1308 (Fed. Cir. 2003).

When interpreting a claim in light of the specification, it is important to remember that limitations from the specific embodiments of a patent cannot be read as limitations into the claims. Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("It does not follow that limitations from the specification may be read into the claims."); SRI International v. Matsushita Electric Corp., 775 F.2d 1107, 1121 (Fed. Cir. 1985):

> If everything in the specification were required to be read into the claims, or if structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims.... It is the claims that measure the invention.

Id. at 1121. Thus, while the specification may be used to interpret the claims, it may not be used as a source for adding extraneous limitations. Transmatic, Inc. v. Gulton Industries, Inc., 53 F.3d 1270, 1277-78 (Fed. Cir. 1995).

Of course, it is improper to rewrite the claims, either by disregarding words that are present or adding others that are not. Panduit Corp. v. Dennison Manufacturing Co., 810 F.2d 1561, 1576 (Fed. Cir. 1987). Claim construction is not claim re-definition; that is, words not present in the claims cannot suddenly become claim limitations. See International Visual Corp. v. Crown Metal Manufacturing Co., 991 F.2d 768, 771 (Fed. Cir. 1993).

The Federal Circuit has also explained that in addition to consulting the specification, a court "should … consider the patent's prosecution history" or complete record of the

proceedings in the patent office. Markman, 52 F.3d at 980. The prosecution history may often demonstrate how the inventor and the Patent Office understood the invention and demonstrate if the inventor further explained (or even limited) the invention. Vitronics, 90 F.3d at 1582-83. However, it must be read in context. Not every comment by an applicant limits or narrows a claim. Read Corp. v. Portec, Inc., 970 F.2d 816, 824 (Fed. Cir. 1992). Unless the intrinsic evidence contains a clear and deliberate disavowal of its scope apart from descriptions of particular embodiments, the term must be given its plain and ordinary meaning. Pharmacia & Upjohn Co. v. Mylan Pharms., Inc., 170 F.3d 1373, 1377 (Fed. Cir. 1999).

Finally, the Federal Circuit has authorized district courts to rely on extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." Markman, 52 F.3d at 980. Importantly, "while extrinsic evidence 'can shed useful light on the relevant art,' it is 'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" Phillips, 415 F.3d at 1317.

As shown below, CIVIX's proposed constructions for the disputed terms are dictated by the intrinsic record. Defendants' proposed constructions are inconsistent with the intrinsic record, and appear to be dictated by Defendants' non-infringement and invalidity positions.

## IV.    DEFENDANTS' ACCUSED PRODUCTS AND SERVICES

Defendants operate services for obtaining locational and other information about places of interest which are accused of infringement. All of these accused services are available over the Internet, are accessible from a computer, utilize databases and also provide digital pictures, video, and/or advertising information. For example, Homestore operates the www.realtor.com and www.move.com web sites through which users of these sites can obtain locational and other information about real estate for sale in and around a selected geographical vicinity, such as in or

4

around a city.  Hotels.com operates the www.hotels.com website through which users of the site can obtain locational and other information about hotels having specified criteria in and around a selected geographic vicinity, such as in or around a city, an address or a landmark.  Yahoo! provides its Yellow Pages and Local services at its www.yahoo.com web site through which users of these services can obtain locational and other information on specified businesses in and around a selected geographic vicinity, such as a city or a Zip Code.

V.    **AGREED UPON TERMS**

As in the Expedia litigation, the parties have attempted to minimize the number of terms that need to be construed by this Court.  The agreed upon terms are identified in the Joint Claim Chart (Dkt. No. 349).  These terms fall into two categories:  1) terms that were not construed by the Court in the Expedia suit, and 2) terms that were construed by the Court in the Expedia suit.

A.    **Agreed Upon Terms That Were Not
       Construed By the Court In The Expedia Suit**

In connection with their preparation of the Joint Claim Chart (Dkt. 349), the parties were able to agree on the following two terms that were not construed by the Court in the Expedia suit:

- "communicating the first location and the category to a database" in claim 1 of the '307 patent and its dependent claims means "transmitting or otherwise conveying, in or more electronic messages, the first location and the category to a database."  (Dkt. No. 349, at p. 4);

- "request including a locational address" in independent claims 27 and 41 of the '692 patent and their dependent claims means "a search request by a user, where the user indicates a locational address (ULA or PLA)."  (Dkt. No. 349, at p. 19).

Furthermore, in the course of preparing this brief, to avoid excess disputes, CIVIX has determined that it can agree to Defendants' proposed construction of one additional term:

- "deriving from" in claim 1 of the '307 patent and its dependent claims means "is obtained from" (Dkt. No. 349, at p. 4).

Finally, with respect to the term "video" in claim 19 of the '622 patent, claim 14 of the '307 patent and claim 23 of the '291 patent, CIVIX has reconsidered defendants' proposed construction, and has revised its position in an effort to minimize the scope of the dispute between the parties.

### B. Agreed Upon Terms That Were Construed By The Court In The Expedia Suit

CIVIX believes that *all* of the Court's claim construction rulings from the <u>Expedia</u> suit should apply in this suit. Defendants want to pick and choose the rulings they like, as if the Court's rulings were a smorgasbord at the local Old Country Buffet. At any rate, here are terms for which the Defendants are not contesting the Court's prior claim construction rulings:

- "a method for determining the position of one or more items of interest in a selected category…wherein a user at the port may locate the one item of interest" in independent claim 14 of the '291 patent and its dependent claims (Dkt. No. 349, at p. 1);

- "associated with" in independent claim 1 of the '307 patent and its dependent claims; and independent claim 1 of the '291 patent and its dependent claims (Dkt. No. 349, at p. 2);

- "communicating" in independent claims 1 and 58 of the '622 patent and their dependent claims; and independent claim 1 of the '307 patent and its dependent claims (Dkt. No. 349, at p. 2);

- "generating" in independent claims 1 and 47 of the '622 patent and their dependent claims; and dependent claim 5 of the '307 patent (Dkt. No. 349, at p. 4);

- "geographic vicinity" in independent claims 1, 33, 47 and 58 of the '622 patent and their dependent claims (Dkt. No. 349, at p. 5);

- "indicating" in independent claims 1 and 47 of the '622 patent and their dependent claims; and independent claim 1 of the '291 patent and its dependent claims (Dkt. No. 349, at pp. 5-6);

- "inputs" in independent claims 1 and 47 of the '622 patent and their dependent claims; and independent claims 1 and 14 of the '291 patent (Dkt. No. 349, at pp. 6-7);

- "items of interest" and "points of interest" in independent claims 1, 33, 47 and 58 of the '622 patent and their dependent claims; independent claim 1 of the '307 patent and its

dependent claims; and independent claims 1 and 14 of the '291 patent (Dkt. No. 349, at p. 7);

- "locating" in independent claim 1 of the '307 patent and its dependent claims (Dkt. No. 349, at pp. 7-8);

- "map" in claims 14 and 43 of the '622 patent; and claims 2 and 25 of the '307 patent (Dkt. No. 349. at p. 8);

- "port" in independent claims 1, 33, 47 and 58 of the'622 patent and their dependent claims; independent claim 1 of the '307 patent and its dependent claims; and independent claims 1 and 14 of the '291 patent (Dkt. No. 349, at p. 8);

- "remote" and "remotely" in independent claims 1, 33, 47 and 58 of the'622 patent (Dkt. No. 349, at p. 11);

- "spatial detail" in claims 13 and 42 of the '622 patent; independent claim 1 of the '307 patent and its dependent claims; and independent claims 1 and 14 of the '291 patent and its dependent claims (Dkt. No. 349, at p. 12);

- "ULA" in the construction of "locational address" in independent claims 27 and 41 of the '692 patent and their dependent claims (Dkt. No. 349, at pp. 15-16); and

- "locational address is defined based on a latitude/longitude" in independent claims 27 and 41 of the '692 patent and their dependent claims (Dkt. No. 349, at pp. 17-18).

The parties agree that the Court's construction of each of these terms in the <u>Expedia</u> suit should govern here.

## VI.    DISPUTED TERMS IN THE '622, '307 AND '291 PATENTS THAT WERE NOT CONSTRUED BY THE COURT IN THE EXPEDIA SUIT

There are four terms in the '622, '307 and '291 patents that are disputed by the parties in this suit which were not construed in the <u>Expedia</u> suit. None of these terms is a means-plus-function element under 35 U.S.C. 112 ¶ 6 necessitating identification of a function and corresponding structure. CIVIX's proposed construction for each term and supporting arguments are set forth below.

7

A.    **"Advertisement" And "Advertising"**

The term "advertisement" appears in claims 28, 31, 45, 56 of the '622 patent and claim 7 of the '291 patent.  The term "advertising" appears in claims 14 and 15 of the '307 patent and claims 21 and 22 of the '291 patent.

Here is how the term "advertisement" is used in the '622 patent:

> 45.    Database according to claim 33, wherein the information comprises an ***advertisement*** associated with at least one of the items of interest.

(A00303, '622 patent, col. 16, lines 61-63).

Here is how the term "advertising" is used in the '307 patent:

> 14.    A method according to claim 13, wherein the step of transmitting additional detail comprises transmitting multimedia information including at least one of video, prerecorded music, ***advertising*** information, and digital pictures.

(A00498, '307 patent, col. 15, lines 52-55).

CIVIX proposes that the terms "advertisement" and "advertising" should be construed to mean ***"a paid promotion of a business name, service or product."***  Defendants propose that "advertisement" and "advertising" should be construed to mean "a notice designed to attract public attention or patronage." (Dkt. No. 349, at p. 8).

The specification directly supports CIVIX's construction of "advertisement/advertising":

> In still another aspect, the invention also communicates at least one ***advertisement*** associated with at least one of the items of interest to the user.  As such, certain advertisers that are connected with the selected category of items of interest can ***promote a name or business***.

(A00870, '291 patent, col. 3, lines 1-5, emphasis added).  The specification goes on to describe advertisements in relation to "a paying customer's name or company" and that the business seeking to promote its name or company would "typically specify (***and pay for***) the 'advertisement' logo or wording."  (A00875, '291 patent, col. 13, lines 51-65, emphasis added).

8

Defendants' proposed construction, which does not include the requirement of paid promotion of a business name, service or product, is inconsistent with the above statements from the specification and, for this reason, should be rejected. Phillips, 415 F.3d at 1315 ("[T]he specification 'is always highly relevant to the construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"), quoting Vitronics Corp. v. Conceptronic, Inc. 90 F.3d 1576, 1582 (Fed. Cir. 1996).

Independently, Defendants' proposed construction of "advertisement/advertising" is grossly overbroad. Under Defendants' construction, road signs (e.g., "Road Work Ahead," "Work Zone") would qualify as advertisements because they are certainly notices designed to attract public attention. No one skilled in the art – no one, period – would consider a road sign to be an "advertisement" or "advertising."

For the foregoing reasons, "advertisement" and "advertising" should be construed as "a paid promotion of a business name, service or product" as proposed by CIVIX.

### B.   "Video"

The term "video" appears in claim 19 of the '622 patent, claim 14 of the '307 patent and claim 23 of the '291 patent. For example, the term "video" is used in claim 23 of the '291 patent as follows:

> 23.   A method of claim 21, wherein the step of supplying information comprises supplying one or more of *video* clips and digitized images related to the one item of interest.

(A00876, '291 patent, claim 23).

In the Joint Claim Chart, CIVIX proposed that "video" should be construed as "a digitized multimedia presentation obtained from a camcorder or other video capture device," and Defendants proposed that the term should be construed as "visual display of textual or graphical information on a computer monitor." (Dkt. No. 349, at p.14). In an effort to narrow the scope of

the dispute between the parties with respect to video," CIVIX has revisited the construction of this term in view of Defendants' position, and believes the following construction is supported by the intrinsic record:  ***"a digitized presentation of multiple sequential frames of image data."***

This construction is consistent with the intrinsic record.  For example, the specification describes a "video clip" that is made using a camcorder or other video capture, storage and editing device:

> Using a camrecorder and/or other video capture, storage, and editing analogue or digital devices, for example, a short ***video clip*** is embedded in the data associated with the information about the items of interest and transmitted and displayed when selected.

(A0875, '291 patent, col. 14, lines 14-21, emphasis added).

So far as appears, the remaining principal difference between CIVIX's proposed construction and Defendants' proposed construction is that CIVIX's proposed construction connotes a ***presentation*** of ***sequential frames*** of images, whereas Defendants' construction would encompass even a ***single*** image displayed on a computer monitor such as this:  <u>*"X."*</u>  But the intrinsic record clearly distinguishes "video" from the array of textual and graphical imagery that Defendants want to encompass.

As seen above, claim 23 of the '291 patent recites that the step of supplying information comprises "supplying one or more video clips ***and*** digitized images related to the one item of interest."  (A00876, '291 patent, claim 23, emphasis added).  If Defendants' construction were correct, then the phrase, "and digitized images" would be superfluous.

Similarly, claim 14 of the '307 patent states that the step of transmitting additional detail "comprises transmitting multi-media information including at least one of video, prerecorded music, advertising information, ***and*** digital pictures." (A00497, '307 patent, claim 14, emphasis

added).  Again, if Defendants' construction were correct, then the phrase "and digital pictures" would be superfluous.

Claim 19 of the '622 patent requires that the "additional detail" provided to users of the system comprises "video."  (A00303, '622 patent, claim 19).  Claim 25 requires that this same "additional detail" comprises "digital pictures." (A00303, '622 patent, claim 25).  Defendants' proposed construction, which treats "video" and "digital pictures" as the same thing would render claim 19 or claim 25 superfluous.

Consistent with the above, the specification distinguishes "video" from "digital pictures":

> The additional detail can include other multimedia information, such as video, prerecorded music, and digital pictures.

(A00869, '291 patent, col. 2, lines 65-67).  And the specification separately discusses embodiments of the invention that display textual and graphic information and embodiments that display "video."  (Compare, e.g., A00872, '291 patent, col. 7, line 50 through col. 8, line 5, (describing embodiments of the invention that display textual and graphic information) with A00875, '291 patent, col. 14, lines 14-21 (describing "a further embodiment of the invention" that displays "video clips")).

Moreover, the Request for Reexamination of the '622 patent, which has been adopted by all Defendants, acknowledges that "video" connotes "motion imaging" while "digital pictures" and the like connote "still…imaging."  (Exhibit A, Request for Reexamination of the '622 patent, at pp. 24-25) [1].  To the extent Defendants contend in this proceeding that "video" is the same thing as still imaging, this contradicts their position in the request for reexamination.

Accordingly, a construction of "video" that would encompass any visual information displayed on a computer monitor Defendants' suggest would be inconsistent with the intrinsic

---

[1] Citations to "Exhibit ___" refer to CIVIX's Separate Appendix, which has been filed with this brief.

record. The term "video" should be construed as "a digitized presentation of multiple sequential frames of image data." as proposed by CIVIX.

### C. "User Interface"

The phrase "user interface" appears in claims 1, 17, and 47 of the '622 patent and claims 1, 5 of the '291 patent. For example, here is how "user interface" is used in claim 17 of the '622 patent:

> 17. System of claim 1, further comprising a plurality of ports, each of the plurality of ports having a ***user interface*** for accessing at least part of the information from the database in response to user inputs at the ***user interface***.

(A00303, '622 patent, claim 17, emphasis added).

CIVIX proposes that "user interface" should be construed as ***"hardware and/or software features that facilitate the exchange of information between a user and a computer."*** Defendants propose that "user interface" should be construed as "equipment or programs designed to communicate information from or to a person utilizing the system." (Dkt. No. 349, at p. 14).

CIVIX's proposed construction for "user interface" is consistent with the description of this element in the specification.

> In accord with the invention, software code supporting the database interaction with the remote port can include object-oriented programming, Visual Basic, and other software architectures configured to allow user interaction, portability to other platforms, interface with the internet or other gateways, and relational management.

(A00874, '291 patent, col. 11, lines 27-32).

> To accept user inputs at the port, the user interface can further include a television interface, telephone interface, facsimile interface, and/or a personal computer interface.

(A00869, '291 patent, col. 2 lines 45-48).

12

The specification explains that the "user interface" can be a graphical display, keyboard and mouse:

> Accordingly, the port 16 preferably includes a user interface section 20 which provides a graphical display 22, keyboard 24, and mouse tracker 25 (for pointing and clicking on selected display items within the display 22).

(A00871, '291 patent, col. 5 lines 1-4). However, the "user interface" is not limited to this embodiment, and encompasses other hardware and software that facilitates the exchange of information between a person using the system and a computer:

> The displays 22 and 40 of FIG. 1 include those displays known to those skilled in the art, including the cathode-ray-tube (CRT), Liquid Crystal Display (LCD), and an array of Light Emitting Diodes (LEDs). However, the display 22 can also take the form of a paper or voice communication port such as a facsimile output (hard-copy), printer, a voice communication synthesizer with automated digitized voice responses, a voice-driven menu systems, or as other devices capable of rendering digitized or analogue output signals, FIGS 7A and 7B below illustrate some of these alternative forms of the display 22.

(A00871, '291 patent, col. 6, lines 17-27). The specification goes on to describe the "user interface" in terms of a port with a printer and telephone (A00873, '291 patent, col. 10, lines 31-45), a fax machine user interface (A00873, '291 patent, col. 10, lines 46-54), a voice recognition user interface (A00873, '291 patent, col. 10, lines 55-63), and a hand-held device user interface (A00873, '291 patent, col. 10 line 64 through col. 11 line17).

The prosecution history of the '622 and '291 patents confirms that the "user interface" facilitates the exchange of information between users of the system and a computer. (A00177 (stating that the system "would encourage user and user interaction.").

The problem with Defendants' proposed construction of "user interface" is its requirement that the "user interface" *itself* is designed to communicate information from or to a person using the system. As explained in the above portions of the intrinsic record, the user interface does not, by itself, communicate between the user and the system; the user interface

comprises those components that *facilitate* user interaction with the system. (See, e.g., A00874, '291 patent, col. 11, lines 29-30 ("software architectures configured **to allow user interaction**…."); A00177 ("encourage use and user interaction")).

Defendants' proposed construction is also at odds with the other elements of the asserted claims that themselves communicate information between a computer and the system. For example, claim 1 of the '622 patent (which includes the "user interface" limitation) further includes "a communications link for communicating between a user of the system and the database" and "an information controller for transmitting a portion of the information in the database to the user." (A01106, '622 patent, claim 1). *These* are the elements that communicate information between a computer and the system.

Accordingly, the term "user interface" should be construed as "hardware and/or software features that facilitate the exchange of information between a user and a computer" as proposed by CIVIX.

## VII. DISPUTED TERMS IN THE '692 PATENT THAT WERE NOT CONSTRUED BY THE COURT IN THE EXPEDIA SUIT

The parties in this suit dispute three terms in the '692 patent that the Court did not address in the Expedia suit. These terms are, 1) "wherein a search of said repository acquires said location," which appears in claim 27; 2) "searching of said repository based on said locational address," which appears in claim 41; and 3) "location," which appears in claims 27, 30, 31, 41, 44 and 45. None of these terms is a means-plus-function element under 35 U.S.C. 112 ¶ 6 necessitating identification of a function and corresponding structure.

### A. "Wherein A Search Of Said Repository Acquires Said Location" And "Searching Said Repository Based on Said Locational Address"

Here is how these terms are used in the claims:

27. A locational information system capable of being used to provide a location, said locational information system comprising:

a repository capable of receiving and storing said location;

a receiver capable of receiving a request including a locational address, *wherein a search of said repository acquires said location*; and

a transmitter capable of transmitting said location to a user;

wherein said locational address is defined based on a latitude/longitude.

(A01115, '692 patent, col. 19, lines 31-43).

41. A method of providing a location, said method comprising:

storing said location in a repository;

receiving a request including a locational address;

*searching said repository based on said locational address*; acquiring said location; and

transmitting said location to a user;

wherein said locational address is defined based on a latitude/longitude.

(A01115, '692 patent, col. 20, lines 19-27).

CIVIX proposes that "wherein a search of said repository acquires said location" and "searching of said repository based on said locational address" should be given their plain and ordinary meanings and do not require special construction by the Court. Phillips, 415 F.3d at 1312-13 ("We have frequently stated that the words of a claim 'are generally given their ordinary and customary meaning.' Vitronics, 90 F.3d at 1582. Accord Toro Co. v. White Consolidated Industries, Inc., 199 F.3d 1295, 1299 (Fed. Cir. 1999); Renishaw PLC v. Marposs Societa per Azioni, 158 F.3d 1242, 1249 (Fed. Cir. 1998).

Defendants propose that both of these phrases "require that the locational address be used to conduct the search of the repository." (Dkt. No. 349, at p. 20).

15

Defendants' construction is inconsistent with the plain language of claims 27 and 41. Claim 27 does not say that the locational address itself is used to conduct the search, only that the search request received by the receiver includes a locational address. (A01115, '692 patent claim 27). Similarly, claim 41 does not say that the locational address itself is used to conduct the search, only that the search for acquiring the location is based on the locational address.

In both claims the locational address can be converted, transformed or translated into something else (such as a code or character string) for use in searching the repository. In fact, there could be any number of intermediate steps between the users' search request and the display of search results to the user. Defendants are rewriting the claims to require that the locational address itself is used in to conduct the search that acquires the location.

For the foregoing reasons, these phrases should be given their plain and ordinary meaning and should not be construed to "require that the locational address (ULA or PLA) be used to conduct the search of the repository."

### B.     <u>"Location"</u>

Here is an example of how "location" is used in the claims:

27.     A locational information system capable of being used to provide a ***location***, said locational information system comprising:

> a repository capable of receiving and storing said ***location***;

> a receiver capable of receiving a request including a locational address, wherein a search of said repository acquires said ***location***; and

> wherein said locational address is defined based on a latitude/longitude.

CIVIX proposes that "location" should be construed as ***"a position or site occupied or available for occupancy or marked by some distinguishing feature."*** Defendants propose that the term should be construed to mean "physical position denoted by locational address (ULA or PLA)." (Dkt. No. 349, at p. 15).

16

CIVIX's proposed construction of "location" is consistent with the plain and ordinary meaning of the term. (Exhibit B, Merriam Webster's Collegiate Dictionary, at p. 701). The intrinsic record of the '692 patent does not dictate an alternative meaning.

The problem with Defendants' proposed construction is the phrase, "denoted by locational address (ULA or PLA)." This is an unnecessary and unwarranted limitation. While the '692 patent does require a relationship between a "location" and a "locational address," the plain language of the claims specifies this relationship; there is no need to describe the relationship between "location" and "locational address" in the definition of "location."

As noted above, claim 27 recites "a receiver capable of receiving a request including a locational address, wherein a search of said repository acquires said location." (A01115, '692 patent claim 27). This does not require that the location is "denoted by" the locational address, only that the request for a location include a locational address. Claim 41 recites the steps of: "receiving a request including a locational address"; "searching said repository based on said locational address"; "acquiring said location"; and "transmitting said location to a user." (A01115, '692 patent, claim 41). Again, this does not require that the location is "denoted by" the locational address, only that the search used to acquire the location is based on the locational address.

The specification supports CIVIX's construction, and contradicts Defendants' construction, of "location." For example, the specification describes an embodiment of the invention that is used in emergency situations where a "location" of someone in need of emergency assistance is determined *with reference to* a PLA. (A01108, '692 patent, col. 6, lines 50-54). This same point is made in the prosecution history of the '692 patent. (See, e.g., A01235-36).

Defendants' construction of "location" imposes limitations that are not required by the intrinsic record. The Court should adopt CIVIX's construction of "location," which is "a position or site occupied or available for occupancy or marked by some distinguishing feature."

## VIII.  TERMS PREVIOUSLY CONSTRUED BY THE COURT THAT ARE CONTESTED BY DEFENDANTS

The parties dispute two terms – "Internet" and "PLA" – that were disputed and extensively briefed and argued parties, and construed by the Court, in the <u>Expedia</u> suit. The term "Internet" appears in claims 6, 12, 20, 26, 29, 38, 61 and 63 of the '622 patent and independent claims 1 and 14 of the '291 patent and their dependent claims. The term "PLA" is part of the agreed upon definition of "locational address" and appears in independent claims 1, 27 and 41 of the '692 patent and their dependent claims.

The Court construed "Internet" to mean "a system of linked computer networks, worldwide in scope, that typically is associated with using TCP/IP as a standard protocol." (Exhibit C, 4/6/05 Memorandum Opinion and Order, at pp. 17, 29). And the court construed "PLA" to mean:

> a proprietary locational address which is a name, unique within the district, that distinctly defines a location within the district. A proprietary address is created by selecting a name, capturing positional information about the location associate with the name, checking that the name is unique within the district and storing the name with its associated locational information and feature data. Once stored, the name and the associated information may be selective disseminated to users of locational systems.

(Exhibit C, 4/6/05 Memorandum Opinion and Order, at pp. 25, 29).

There is no legitimate need or basis to revisit the Court's construction of these terms. The Court's claim construction rulings are consistent with the intrinsic record, which is the same today as it was in the <u>Expedia</u> suit, and were based on the application of proper and correct legal standards. The only discernible reason Defendants want the Court to consider different

constructions of these terms is to fit their non-infringement or invalidity positions which, of course, is not a legitimate reason to modify the prior rulings.

Defendants' position on "Internet" provides a good example of this. In this proceeding, Defendants assert that the term "Internet" should have the same meaning as the term "internet" (***lower case "i"***). (Dkt. No. 349, at p. 7). The Court construed "internet" (***lower case "i"***) to mean: " a group of networks that have been connected by means of a common communications protocol." (Exhibit C, 4/6/05 Memorandum Opinion and Order, at p. 29). Yet the Request for Reexamination of the '692 patent, which all Defendants have adopted, applies the Court's and CIVIX's construction of "Internet" and concedes that the specification of the '622, '307 and '291 patents discloses an "Internet" link as so construed. (Exhibit D, Request for Reexamination of the '692 patent, at p. 48).

## IX. AGREED TERMS FROM THE EXPEDIA SUIT

Defendants also dispute the following terms that were agreed upon in the Expedia suit:

- "associated category"/"category associated with the items of interest" in independent claims 1 and 47 of the '622 patent and their dependent claims; independent claim 1 of the '307 patent and its dependent claims; and independent claims 1 and 14 of the '291 patent and their dependent claims (Dkt. No. 349, at p. 2);

- "connected to" in independent claim 1 of the '307 patent and its dependent claims; and independent claim 14 of the '291 patent and its dependent claims (Dkt No. 349, at p. 3);

- "database" in independent claims 1, 33, 47 and 58 of the '622 patent and their dependent claims; independent claim 1 of the '307 patent and its dependent claims; and independent claims 1 and 14 of the '291 patent (Dkt. No. 349, at p. 4);

- "geographic location"/"geographical location"/"geographic position"/"geographical position" in independent claims 1, 33, 47 and 58 of the '622 patent and their dependent claims; independent claim 1 of the '307 patent and its dependent claims; and independent claims 1 and 14 of the '291 patent (Dkt. No. 349, at p. 5);

- "information controller" in independent claims 1 and 33 of the '622 patent and their dependent claims (Dkt. No. 349, at p. 6);

19

- "position" in independent claims 1, 33 and 58 of the '622 patent and their dependent claims; and independent claims 1 and 14 of the '291 patent and their dependent claims (Dkt. No. 349, at pp. 10-11);

- "request signal representative of a selected category and geographic vicinity" in independent claims 1, 33 and 47 of the '622 patent and their dependent claims (Dkt. No. 349, at p. 11);

- "selected" in independent claims 1, 33 and 47 of the '622 patent and their dependent claims (Dkt No. 349, at p. 12);

- "user"/"user of the system" in independent claims 1, 47 and 58 of the '622 patent and their dependent claims; claim 25 of the '307 patent; independent claim 1 of the '291 patent and its dependent claims; claim 16 of the '291 patent; and independent claim 41 of the '692 patent and its dependent claims (Dkt. No. 349, at pp. 13-14);

- "repository capable of receiving and storing" in independent claim 27 of the '692 patent and its dependent claims (Dkt. 349, at p. 18); and

- "request" in independent claims 27 and 41 of the '692 patent and their dependent claims (Dkt. No. 349, at p. 19).

Defendants' position is that these terms have never been addressed or construed by the Court, as set forth in the repetitive footnote that they included in their portion of the Joint Claim Chart. (Dkt. No. 349, at pp. 2-5, 9-13, 18-19, notes 1-14).

Defendants' position is contradicted by the Court's April 6, 2005 Memorandum Opinion and Order:

> The parties agree upon the constructions for many of the terms from the disputed claims in the asserted patents. With the exception of the terms "remote" and "remotely,"[3] the Court adopts the agreed-upon constructions from the Jointly Submitted Chart of Agreed Claim Terms and Claim Terms Remaining in Dispute, filed on March 1, 2005. (R 264-1; Jointly Submitted Chart.)

(Exhibit C, 4/6/05 Memorandum Opinion and Order at pp. 4-5).

Thus the Court did not simply ignore the terms on which the parties agreed as Defendants suggest. The Court independently determined whether the agreed upon constructions of the terms were correct as a matter of law. This is apparent from the fact that the Court refused to

adopt the parties' agreed upon construction of "remote"/"remotely."  Cf. <u>Exxon Chemical Patents, Inc.</u> v. <u>Lubrizol Corp.</u>, 64 F.3d 1553, 1555 (Fed. Cir. 1995).

Accordingly, these terms should be treated the same as the terms addressed in section VIII above.  The Court has addressed and construed these terms, and there is no legitimate need or basis to rehash them here.  The Court's prior claim construction rulings, set forth below, should govern here:

- "associated category" and "category associated with the items of interest" mean "a class with which items of interest have an established relationship in a database" (Dkt. No. 349, at p. 2);

- "connected to" means "joined together, conjoined: esp. joined in sequence, coherent; related; having relationships or associations (of a specified nature." (Dkt. No. 349, at p. 3);

- "database" means "a collection of related information organized for convenient access" (Dkt. No. 349 at p. 4);

- "geographic location," "geographical location," "geographic position" and "geographical position" mean "a place within a geographic vicinity." (Dkt. No. 349, at p. 5);

- "information controller" means "one or more devices that manage the transfer of data into or out of a database, where the information controller may be implemented as software running on the database hardware." (Dkt. No. 349, at p. 6);

- "position" means "the place occupied by a thing, person, etc. or in which a thing, etc. is put; (a) situation; (a) site; (a) station." (Dkt. No. 349, at pp. 10-11);

- "request signal representative of a selected category and geographic vicinity" means "a single electronic representation of a user's selection of at least one category and at least one geographic vicinity." (Dkt. No. 349, at p. 11);

- "selected" means "1) chosen or picked out in preference to another or others. 2) Chose or picked out something from a number; made a selection." (Dkt. No. 349, at p. 12);

- "supplying" means "supply – 1) help, assist; relieve; support, maintain.  3a) Make up (a whole) by adding something; fill up, complete. 5b) Fulfill or perform (an office or function). 6) Provide or make available (something needed or wanted); furnish for use or consumption, esp. commercially; yield; afford; add (something missing).  7) provide with a thing needed or wanted (Foll. by with)" (Dkt. No. 349, at p. 12);

- "user" and "user of the system" mean "a human being" (Dkt. No. 349, at pp. 13-14, 19);

- "repository capable of receiving and storing" means "an electronic storage device." (Dkt. No. 349, at p. 18);

- "request" means "a communication indicating the desire to obtain information."  (Dkt. No. 349, at p. 19).

## X.     CONCLUSION

For the foregoing reasons, the Court should adopt the claim construction positions that have been agreed upon by the parties, and CIVIX's proposed constructions for disputed terms. Furthermore, the Court's claim construction ruling from the Expedia suit should govern here.

Respectfully submitted,

_____*s/David J. Sheikh*_____
Raymond P. Niro
Paul K. Vickrey
David J. Sheikh
Gregory P. Casimer
David J. Mahalek
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, IL 60602
(312) 236-0733
Fax: (312) 236-3137
Attorneys for Plaintiff, CIVIX-DDI, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **CIVIX'S OPENING BRIEF ON CLAIM CONSTRUCTION** was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses on this 2nd day of July 2007:

S. Benjamin Pleune (sbpleune@alston.com)
Bruce J. Rose (bruce.rose@alston.com)
ALSTON & BIRD LLP
Bank of America Plaza
101 S. Tryon Street, Suite 4000
Charlotte, North Carolina  28280-4000
(704) 444-1000
Fax: (704) 444-1111

Charles A. Laff (calaff@michaelbest.com)
Steven E. Cyranoski (secyranoski@michaelbest.com)
Gretchen M. Hosty (ghkotleba@michaelbest.com)
MICHAEL BEST & FRIEDRICH
Two Prudential Plaza
180 North Stetson Avenue, Suite 2000
Chicago, Illinois 60601
(312) 222-0800
Fax: (312) 222-0818
**Attorneys for National Association of Realtors, Homestore, Inc.**

Jonathan F. Putnam (jputnam@kirkland.com)
Abigail M. Diaz-Pedrosa (adiaz-pedrosa@kirkland.com)
Atif Khawaja (akhawaja@kirkland.com)
Shima Baradaran-Robinson (sbaradaran@kirkland.com)
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, NY 10022
(212) 446-4963
Fax: (212) 446-4900

Craig D. Leavell (cleavell@kirkland.com)
Aaron D. Charfoos (acharfoos@kirkland.com)
KIRKLAND & ELLIS, LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
(312) 861-2105
Fax: (312) 861-2200
**Attorneys for Hotels.com, L.P. and Hotels.com GP LLC**

Marcus D. Fruchter (fruchter@sw.com)
Todd H. Flaming (flaming@sw.com)
SCHOPF & WEISS LLP
One South Wacker Drive, 28th Floor,
Chicago, Illinois 60606-4617
(312) 701-9300
Fax: (312)701-9335

Michael A. Jacobs (mjacobs@mofo.com)
Richard S. Hung (rhung@mofo.com)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
(415) 268-7455
Fax: (415) 268-7522

Sunil R. Kulkarni (skulkarni@mofo.com)
Timur S. Engin (tengin@mofo.com)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304
(650) 813-5600
Fax: (650) 494-0792
**Attorneys for Yahoo! Inc.**

_s/David J. Sheikh_