IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| CIVIX-DDI, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 05 C 6869 |
| v. | ) | |
| | ) | Honorable Amy St. Eve |
| NATIONAL ASSOCIATION OF | ) | |
| REALTORS, HOMESTORE, INC., | ) | |
| HOTELS.COM, L.P., HOTELS.COM GP | ) | |
| LLC, and YAHOO! INC., | ) | |
| | ) | |
| Defendants. | ) | |

## CIVIX'S REPLY BRIEF ON CLAIM CONSTRUCTION

Raymond P. Niro
Paul K. Vickrey
David J. Sheikh
Gregory P. Casimer
David J. Mahalek
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
(312) 236-0733

**Attorneys for Plaintiff, CIVIX-DDI, LLC**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. CLAIM TERMS IN THE '622, '307 AND '291 PATENTS . . . . . . . . . . . . . . . . . . . . . . . 2

    A. "Internet" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        1. The Court's Construction Of "Internet"
           Comports With The Phillips Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        2. The Intrinsic Record Dictates
           The Court's Prior Construction Of "Internet" . . . . . . . . . . . . . . . . . . . . . . 3

        3. Defendants' New Evidence
           Does Not Justify A New Construction Of "Internet" . . . . . . . . . . . . . . . . . 4

    B. "Geographic Location" / "Geographical Location"/
       "Geographic Position" / "Geographical Position" . . . . . . . . . . . . . . . . . . . . . . 5

        1. Hotels.com Mischaracterizes The Prosecution History . . . . . . . . . . . . . . . 6

        2. Yahoo! Mischaracterizes The Written Description of The CIVIX Patents . 8

    C. "Request Signal Representative Of A
       Selected Category And Geographic Vicinity" . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    D. "Video" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    E. "Associated Category" / "Category Associated With The Items Of Interest" . . . 16

    F. "Database" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    G. "Information Controller" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    H. "User Interface" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    I. "Selected" And "Supplying" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    J. "Connected To" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    K. "Position," "Remote Port" And "Port For Remotely Accessing" . . . . . . . . . . . . 22

i

L. "User" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

III. CLAIM TERMS IN THE '692 PATENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    A. "Location" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    B. "PLA" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    C. "Repository" / "Repository Capable Of Receiving And Storing" . . . . . . . . . . . . 27

    D. "Wherein A Search Of Said Repository Acquires Said Location" /
       "Searching Of Said Repository Based On Said Locational Address . . . . . . . . . . . 28

    E. "Request" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

    F. "User" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# TABLE OF AUTHORITIES
## FEDERAL CASES

AbTox, Inc. v. Exitron Corp.,
122 F.3d 1019 (Fed. Cir. 1997) ................................................................................ 10

Baldwin Graphic System, Inc. v. Siebert, Inc.,
2005 U.S. Dist. LEXIS 15527 (N.D. Ill. 2005) ....................................................... 10

In re Bass,
314 F.3d 575 (Fed. Cir. 2002) .................................................................................. 15

Bell & Howell Document Management Products Co. v. Altek System, Inc.,
132 F.3d 701 (Fed. Cir. 1997) .................................................................................... 4

In re Braat,
937 F.2d 589 (Fed. Cir. 1991) .................................................................................... 6

CCS Fitness, Inc. v. Brunswick Corp.,
288 F.3d 1359 (Fed. Cir. 2002) ................................................................................ 13

CIVIX-DDI, LLC v. Microsoft Corp.,
84 F. Supp. 2d 1132 (D. Colo. 2000) .............................................................. 7, 9, 18

CIVIX-DDI, LLC v. Microsoft Corp.,
2001 U.S. App. LEXIS 19597 (Fed. Cir. 2001) ........................................................ 9

Comark Communications Inc. v. Harris Corp.,
156 F.3d 1182 (Fed. Cir. 1998) ........................................................................ 7, 8, 12

Elkay Manufacturing Co. v. Ebco Manufacturing Co.,
192 F.3d 973 (Fed. Cir. 1999) .................................................................................. 11

In re Goodman,
11 F.3d 1046 (Fed. Cir. 1993) .................................................................................... 6

Insituform Technologies, Inc. v. Cat Contracting, Inc.,
99 F.3d 1098 (Fed. Cir. 1996) .................................................................................. 10

Jones v. Hardy,
727 F.2d 1524 (Fed. Cir. 1984) ................................................................................ 12

KCJ Corp. v. Kinetic Concepts, Inc.,
223 F.3d 1351 (Fed. Cir. 2000) .......................................................................... 12, 19

Lampi Corp. v. American Power Products, Inc.,
228 F.3d 1365 (Fed. Cir. 2000) ................................................................................ 15

Leapfrog Enterprises v. Fisher-Price, Inc.,
485 F.3d 1157 (Fed. Cir. 2007) ................................................................................ 23

In re Longi,
759 F.2d 887 (Fed. Cir. 1985) .................................................................................... 6

iii

Nilssen v. Motorola, Inc.,
80 F. Supp. 2d 921 (N.D. Ill. 2000) ............................................................. 13

Norian Corp. v. Stryker Corp.,
432 F.3d 1356 (Fed. Cir. 2005) ................................................................... 10

PPG Industries v. Guardian Industries Corp.,
156 F.3d 1351 (Fed. Cir. 1998) ..................................................................... 8

Papst Licensing Gmbh & Co. v. Sunonwealth Electric Machine Ind. Co.,
2004 U.S. Dist. LEXIS 4402 (N.D. Ill. 2005) ............................................ 13

Phillips v. AWH Corp.,
415 F.3d 1303 (Fed. Cir. 2005) ............................................. 1, 2, 3, 4, 24, 26

Roton Barrier, Inc. v. Stanley Works,
79 F.3d 1112 (Fed. Cir. 1996) ....................................................................... 4

Scanner Technologies Corp. v. ICOS Vision System Corp. N.V.,
365 F.3d 1299 (Fed. Cir. 2004) ................................................................... 12

Sjolund v. Musland,
847 F.2d 1573 (Fed. Cir. 1988) ..................................................................... 8

Solomon v. Kimberly-Clark Corp.,
216 F.3d 1372 (Fed. Cir. 2000) ..................................................................... 4

Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders in Het Kapitaal Van
Saybolt International B.V. v. Schreiber,
407 F.3d 34 (2nd Cir. 2005) ........................................................................ 13

Synopsys, Inc. v. Magma Design Automation, Inc.,
2007 U.S. Dist. LEXIS 6814 (N.D. Cal. 2007) .......................................... 15

Texas Digital Systems, Inc. v. Telegenix, Inc.,
308 F.3d 1193 (Fed. Cir. 2002) ................................................................ 2, 3

Transmatic, Inc. v. Gulton Industries, Inc.,
53 F.3d 1270 (Fed. Cir. 1995) ..................................................................... 12

Vitronics Corp. v. Conceptronic, Inc.,
90 F.3d 1576 (Fed. Cir. 1996) ....................................................................... 3

## FEDERAL STATUTES

35 U.S.C. § 101 ......................................................................................... 6, 7

35 U.S.C. § 271(a) ................................................................................... 23, 30

iv

## I.   **INTRODUCTION**

In tag team fashion, Defendants urge a significant deviation from the Court's claim construction rulings from the Expedia suit.  Some of the constructions proposed by Defendants are even at odds with the positions taken in their requests for reexamination.  Defendants also have used the claim construction process as a vehicle to disparage the CIVIX patents.  Yahoo!, for example, argues that "CIVIX did not invent anything."  (Yahoo! Brief, at p. 1).  For good measure, Yahoo! has submitted a six-page "expert" declaration that states nothing about any particular claim in dispute.

CIVIX briefly summarizes its positions on key terms at issue:

**"Internet":**  This Court's construction of "Internet" is in no way inconsistent with the Federal Circuit's ruling in Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005).  The intrinsic record directly supports the Court's construction.  For example, during prosecution, the Examiner indicated that "Internet" means the worldwide system of linked computer networks typically associated with the TCP/IP protocol.  Defendants rely on extrinsic evidence that actually supports the Court's construction.

**"Geographic location"/"geographical location"/ "geographic position" / "geographical position":**  Putting aside the effect of the Court's acceptance of an agreed construction in the Expedia suit, the construction proposed by Homestore/NAR and Hotels.com is based upon on a mischaracterization of the prosecution history. During prosecution of the '525 patent, CIVIX elected **relative** positioning, which is embodied in the term "positional coordinates."  During the prosecution of the '622 patent, the inventors deleted "positional coordinates" from the claims for the express purpose of claiming **absolute** positioning. Yahoo! commits the fundamental legal error of importing limitations of embodiments into the claims.

**"Request signal representative of a selected category and geographical vicinity":**  CIVIX's construction was ordered by the Colorado court after it considered and rejected the same arguments made by Defendants.  This Court rightly adopted this construction in the Expedia suit.  The intrinsic record, including clear and unambiguous claim language and prosecution history statements relying on the "single signal" construction to distinguish prior art, dictate that the "request signal" is limited to a single signal.

**"Video":**  Defendants' construction would embrace the display of any image, even a static image such as a single comma on a computer screen.  Such a construction defies common sense and the intrinsic record, and is directly at odds with Defendants' reexamination construction ("motion imaging").  It also would render the video dependent claims superfluous.

Defendants argue that the claim construction positions staked out in their requests for reexamination are "irrelevant" because the PTO applies broader constructions than apply in this proceeding.  (See, e.g., Hotels.com Brief, at p. 18, footnote 10).  But Defendants have done just the

1

opposite – they propose constructions of terms in *this* proceeding that are broader than the constructions proposed in the reexaminations. For example, in the reexaminations, Defendants assert that "video" is limited to "motion imaging," while in this proceeding they assert that the term extends to still images as well. Furthermore, Defendants' argument contradicts their previous assertion that the reexaminations are so relevant to the issues in this suit that the suit should be stayed pending resolution of the reexaminations.

Defendants attempt to divert attention from their tergiversations by claiming that it is CIVIX that is taking inconsistent positions: "Indeed, in one notable instance, CIVIX provides a construction directly opposite to and narrower than what it offered in a previous case." (Yahoo! Brief, at p.1). This is a serious accusation, and it is not until much later, in a footnote, that one can figure out what Yahoo! is talking about. (Yahoo! Brief at p. 13, footnote 10). CIVIX is guilty of proposing the construction ordered by the district court in Colorado and adopted by this Court in the <u>Expedia</u> suit!

In the final analysis, Defendants' proposed constructions are driven by their invalidity and non-infringement theories, and not by the intrinsic record.

## II. <u>CLAIM TERMS IN THE '622, '307 AND '291 PATENTS</u>

### A. <u>"Internet"</u>

No term in the <u>Expedia</u> suit was the subject of more debate than "Internet." So much debate was generated that the Court aptly closed the discussion at the claim construction hearing with the comment: "I think we have beaten a dead horse." (Exhibit E, 3/14/05 Transcript, at p. 142). The horse is dead and buried and should not be exhumed.

Yet through Hotels.com, Defendants argue that a completely new analysis of "Internet" is required by intervening law because the Court purportedly relied on a repudiated methodology. Interestingly, Defendants also contend that the same case law does not require reconsideration of the term "internet."

#### 1. The Court's Construction Of "Internet" <br> Comports With The Phillips Decision

Two months after the Court's claim construction order issued in the <u>Expedia</u> suit, the Federal Circuit issued its decision in <u>Phillips</u>. The Federal Circuit commented extensively on its prior opinion in <u>Texas Digital Systems, Inc.</u> v. <u>Telegenix, Inc.</u>, 308 F.3d 1193 (Fed. Cir. 2002); however, actual criticism of <u>Texas Digital</u> was confined to a particular methodology which was not used by the Court in the <u>Expedia</u> suit:

In effect, the Texas Digital approach limits the role of the specification in claim construction to serving as a check on the dictionary meaning of a claim term if the specification requires the court to conclude that fewer than all the dictionary definitions apply, or if the specification contains a sufficiently specific alternative definition or disavowal.... That approach, in our view, improperly restricts the role of the specification in claim construction.

Assigning such a limited role to the specification, and in particular requiring that any definition of the claim language in the specification be express, is inconsistent with our rulings that the specification is "the single best guide to the meaning of a disputed term," and that the specification "acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication."

Phillips, 415 F.3d at 1320.

In the Expedia opinion, reliance on Texas Digital was limited to two claim construction principles which were ***affirmed*** in Phillips:

| The Court's Claim Construction Opinion In The Expedia Suit | The Phillips Opinion |
|---|---|
| "In construing claims, the analytical focus must begin, and remain centered, on the language of the claims themselves." Texas Digital, 308 F.3d at 1201-1202. | "'[W]e look to the words of the claims themselves ... to define the scope of the patented invention.'" Phillips, 415 F.3d at 1312 (citing Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). |
| "The court may consult dictionaries, encyclopedias and treatises to determine the ordinary meaning of a word." Texas Digital, 308 F.3d at 1202-1203. | "We have especially noted the help that technical dictionaries may provide to a court 'to better understand the underlying technology' and the way in which one of skill in the art might use the claim terms." Phillips, 415 F.3d at 1318 (citing Vitronics, 90 F.3d at 1584 n.6). |

There was no error in the Court's methodology. "Internet" and "internet" were expressly considered within the context of their separate appearances in the claims (Exhibit C, 4/6/05 Order, at p.14), and in the specification. Id. at p. 15. Technical dictionaries were consulted for the permitted purpose of understanding how persons of ordinary skill in the art used the terms in the mid 1990s. Id. at pp.15-17. There is no indication that the specification of the CIVIX patents was used as a check on the dictionary definitions considered by the Court.

## 2. The Intrinsic Record Dictates The Court's Prior Construction Of "Internet"

Defendants argue that "Internet" describes any two networks connected to each other that share

a common communications protocol. See Hotels.com Brief, at p. 12. Defendants' position cannot be reconciled with the prosecution history. Specifically, in addressing the "Internet" term the Examiner stated :

> The use of TCP/IP protocol is believed to be general knowledge available to a person of ordinary skill since the Internet has been in use, although in limited scope, since 1969 with the introduction of the ARPANET of the U.S. Department of Defense.

(A1000, '291 File History). The Examiner consistently used "Internet," not "internet," in referring to these requirements. (See, e.g., A1062; A1064, '291 File History).

This leaves no doubt that the "Internet" term recited in the claims was the worldwide system of linked computer networks typically associated with the TCP/IP protocol as determined by the Court (Exhibit C, 4/6/05 Order, at p. 17), and not any group of networks connected by a means of a common communications protocol.

Defendants argue that an implication should be drawn from the intrinsic record that "Internet" and "internet" are interchangeable. Even if that were true, Defendants do not explain why the "internet" construction should be the common definition. Regardless, such a conclusion would contradict the intrinsic record.

### 3. Defendants' New Evidence Does Not Justify A New Construction Of "Internet"

Defendants present new evidence in the form of the deposition testimony of Steven Oxman (one of the inventors of the '622, '307 and '291 patents) and Curtis Vock, who prosecuted these patents. This purportedly "highly relevant" new evidence is wholly extrinsic. As such, it cannot be used to contradict the intrinsic record. Phillips, 415 F.3d at 1318-19.

Mr. Oxman's testimony has no relevance at all. The Federal Circuit has consistently rejected the notion that inventor testimony has any meaningful bearing on patent claim interpretation. See, e.g., Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys., Inc., 132 F.3d 701, 706 (Fed. Cir. 1997) ("The testimony of an inventor and his attorney concerning claim construction is thus entitled to little or no consideration."); Roton Barrier, Inc. v. Stanley Works, 79 F.3d 1112, 1126 (Fed. Cir. 1996) ("We have previously stated that an inventor's 'after-the-fact testimony is of little weight compared to the clear import of the patent disclosure itself.'"); Solomon v. Kimberly-Clark Corp., 216 F.3d 1372, 1379 (Fed. Cir. 2000) (Inventory testimony about claim construction is "of little or no probative weight in determining the scope of a claim.").

Furthermore, Defendants incorrectly characterize Mr. Oxman's testimony as admissions of

CIVIX. Mr. Oxman's interest is aligned with Defendants, not CIVIX. (Exhibit F, 5/17/07 Oxman Dep. at pp. 275-76). In fact, Mr. Oxman is being **paid by Defendants** to do research in support of their case. Id. at pp. 325-26).

The testimony of Mr. Vock is even less useful than that of Mr.Oxman. Mr. Vock is not an inventor, he is the attorney who served as prosecution counsel for CIVIX. Mr. Vock is not a person of ordinary skill in the art. Defendants cite no authority for the novel proposition that the opinion of prosecution counsel is relevant to claim construction. Even if such testimony were relevant, Mr. Vock merely testified that, as far as he was concerned, the terms "Internet" and "internet" are interchangeable. Mr. Vock did not testify that "Internet" means what Defendants say it means. Mr. Vock's testimony actually supports the Court's construction of "Internet":

> Q: Right. And the internet -- well, you tell me, what do you -- what -- strike that. What importance are you ascribing to the article adjective the before internet in column six, line five of the '525 patent?
>
> A: I'm still not -- I'm not an expert on the internet but, you know, to me it means the – the -- the -- **a network of networks**, you know, the -- **that allows everything that we do today on the Internet**.
>
> Q: Okay. So --
>
> A: **Worldwide.**

(Exhibit G, 5/25/07 Vock Dep. at p. 147, emphasis added).

The Court's prior construction of "Internet" should stand: **"A system of linked computer networks, worldwide in scope, that typically is associated with using TCP/IP as a standard protocol."**

### B. "Geographic Location" / "Geographical Location"/ "Geographic Position" / "Geographical Position"

Defendants disagree with CIVIX's contention that the prior construction of "geographic location" / "geographical location" / "geographic position" / "geographical position" from the Expedia suit is correct. In fact, Defendants disagree among themselves on the proper construction of these terms. Homestore/NAR side with Hotels.com. Homestore/NAR Brief, at pp. 9-10. Yahoo! proposes an alternative construction. Yahoo! Brief, at pp. 14-15. Furthermore, Yahoo! has modified the contention it made at the time the Joint Claim Construction Chart was filed. Compare Dkt. No. 349, at p. 5, with Yahoo! Brief, at p. 14. Regardless, there is no justifiable reason to modify the prior claim construction provided by the court.

5

The parties' current positions are summarized as follows:

| CIVIX | Hotels.com/NAR | Yahoo! |
|---|---|---|
| A place within a geographic vicinity. | A location that is identified in relation to an arbitrary reference point. | A place within a geographic vicinity, as designated, for example, by icons on a map, landmark information , a street address, or latitude and longitude information. |

### 1.    Hotels.com Mischaracterizes The Prosecution History

The crux of Hotels.com's argument is that "positional coordinates" (which does not appear in the claims) and "geographic position"[1] must have the same meaning because the Examiner assigned the same meaning to both terms in making a double patenting rejection based on the '525 patent, which uses the term "positional coordinates," during prosecution of the '622 patent, and CIVIX acquiesced to that construction. Hotels.com contends that because the terms were literally equated, the construction the Colorado court determined for the term "positional coordinates" must apply to the term "geographic position."  Hotels.com  is wrong on both counts.

Double patenting comes in two varieties – statutory and non-statutory. Statutory double patenting also goes by the name "same invention" double patenting and is governed by 35 U.S.C. § 101 which states that only one patent ("a" patent) may be obtained for a new and novel invention. In re Goodman, 11 F.3d 1046, 1052 (Fed. Cir. 1993)("If the claimed inventions are identical in scope, the proper rejection is under 35 U.S.C. § 101 because an inventor is entitled to a single patent for an invention."); In re Longi, 759 F.2d 887, 892 (Fed. Cir. 1985).  Non-statutory double patenting is more commonly referred to as "obviousness-type" double patenting.  Obviousness-type double patenting "is a judicially created doctrine ... prohibiting the issuance of claims in a second patent which are not 'patentably distinct' from the claims of a first patent." In re Braat, 937 F.2d 589, 592 (Fed. Cir. 1991).

The rejection addressed by Hotels.com  was an *obviousness-type* double patenting rejection. (A422, '622 File History).   Accordingly, the Examiner did not determine that the "positional coordinates" claims in the '525 patent and the "geographic position" claims in the '622 patent defined the same invention.  On the contrary, the Examiner expressly stated that the claims *"are not identical."*

---

[1]  For simplicity, "geographic position" is used in this section as a shorthand reference to the terms "geographic location," "geographical location," "geographic position" and "geographical position" which all parties agree should be given the same construction.

Id. He went on to conclude that it would have been obvious to substitute coordinates defining "geographic locations" for "positional coordinates." (A423, '622 File History). If "positional coordinates" and "geographic position" defined the same invention, the Examiner would have made a statutory (or "same invention") double patenting rejection and the claims would have been rejected under 35 U.S.C. §101. This did not occur, indicating a material distinction between "positional coordinates" and "geographic position."

Because Hotels.com's understanding of the Examiner's rejection is in error, its assertions that "the Examiner understood 'geographical position' and 'geographical positional coordinates' to be [sic] have the same meaning" (see Hotels.com Brief, at p. 8) is fatally flawed. The Examiner recognized a material distinction between the terms, which is reflected in the Court's construction of "geographic position."

Hotels.com's reliance on the Colorado court's claim construction order is misplaced because the Colorado court was addressing "positional coordinates," a term that does not appear in the claims of the patents-in-suit. And although "positional coordinates" and relative positioning are embodiments of the invention described the specification, the limitations of these embodiments cannot be incorporated into the claims, <u>Comark Communications Inc.</u> v. <u>Harris Corp.</u>, 156 F.3d 1182, 1186 (Fed. Cir. 1998).

Independently, Hotels.com's attempt to incorporate the concept of "positional relativity" into the construction of "geographic position" is inconsistent with CIVIX's overt selection of "absolute positioning" in the prosecution history applicable to the '622 patent. During the prosecution of the parent '525 patent, the Examiner required the inventors to direct their claims to either "absolute" or "relative" positional coordinate systems. (A153, '525 File History). In the '525 patent, the inventors added claim language to require positional relativity (A163-164, '525 File History), as subsequently determined by the Colorado court. See <u>CIVIX-DDI, LLC</u> v. <u>Microsoft Corp.</u>, 84 F.Supp. 2d 1132, 1154-55 (D. Colo. 2000). The inventors filed their application for the '622 patent after the Colorado court's ruling, and **excluded** the positional relatively language from the claims for the purpose of directing the claims to "absolute" positioning. (A360-366, '622 File History).

### 2.     Yahoo! Mischaracterizes The Written Description of The CIVIX Patents

Yahoo!'s problem with the Court's prior construction of "geographic position" is that it is purportedly not helpful to the jury. Setting aside the combined wisdom of the Court and the parties in the Expedia suit who collectively concluded that the current construction was correct, understandable and would not cause jury confusion, there are two problems with Yahoo!'s proposed construction.

First, Yahoo!'s proposed construction raises a greater risk of error in that it leads the jury toward the false belief that it must find examples within the description of the preferred embodiments of the CIVIX patents in order to find infringement. This is a common claim construction error which must be avoided. Comark Communs. Inc. 156 F.3d at 1186 ("We have previously stated that 'while...claims are to be interpreted in light of the specification and with a view to ascertaining the invention, it does not follow that limitations from the specification may be read into the claims.'") (quoting Sjolund v. Musland, 847 F.2d 1573, 1581 (Fed. Cir. 1988)) . This error is not saved by Yahoo!'s eleventh hour inclusion of "for example" in its construction, because the examples (which have other flaws) are drawn only from the embodiments.

Second, Yahoo!'s proposed construction oversteps the boundaries of claim construction and invades the province of the jury. Whether "icons on a map," "landmark information," "a street address" or "latitude/longitude information" fall within the scope of "geographic position" is an issue for the finder of fact – the jury in this case – to decide. By its examples, Yahoo! seeks to resolve this issue of fact. See PPG Industries v. Guardian Industries Corp., 156 F.3d 1351, 1355 (Fed. Cir. 1998) ("[A]fter the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact."). Here, the current construction of "geographic position" is sufficiently clear and specific; there is no need to provide more precision – particularly when doing so would confuse the jury into believing that the examples are limiting. The jury will be able to understand what is and is not a "place," within a "geographic vicinity." Indeed, the jury will be told what a "geographic vicinity" is -- "a geographic region that includes and surrounds selected items of interest."

Yahoo!'s request amounts to a petition not just to reinvent the wheel, but to reinvent it as a 16 inch steel belted radial whitewall. There is nothing unclear or incorrect about the current construction, and nothing to be gained from Yahoo!'s proposed modification. The term "geographic position" (and its synonyms) should be construed to mean ***"a place within a geographic vicinity."***

8

### C. "Request Signal Representative Of A Selected Category And Geographic Vicinity"

The term "a request signal representative of a selected category and geographic vicinity" as used in the CIVIX patents has been addressed in two prior proceedings. The term appears in the claims of the '525 patent, which is the parent of the '622, '307 and '291 patents. CIVIX asserted the '525 patent against Microsoft and others in 1999. Following a Markman hearing and extensive briefing, the Colorado district court ruled that "a request signal representative of a selected category and geographic vicinity" means "a single electronic representation," and that both category and geographic selections "must be in a single request signal." CIVIX-DDI, LLC v. Microsoft Corp., 84 F. Supp. 2d 1132, 1159 (D. Colo. 2000). The court granted summary judgment of non-infringement, Id. at 1165-68, which was affirmed by the Federal Circuit. See Exhibit H, CIVIX-DDI, LLC v. Microsoft Corp., 2001 U.S. App. LEXIS 19597 (Fed. Cir. 2001). The Colorado court's construction was agreed to by the parties and adopted by the Court in the Expedia suit.

Now Defendants propose different constructions. These are set forth below alongside CIVIX's proposed construction, with the differences between CIVIX's proposed construction and Defendants' proposed constructions in bold:

| CIVIX | NAR/Homestore/ Hotels.com | Yahoo! |
|---|---|---|
| A ***single*** electronic representation of a user's selection of at least one category and at least one geographic vicinity. | An electronic representation of a user's selection of at least one category and at least one geographic vicinity. | An electronic representation ***of one or more queries constituting*** a user's selection of at least one category and at least one geographic vicinity. |

The only difference between CIVIX's and NAR/Homestore/Hotels.com's constructions is that the Hotels.com/NAR/Homestore construction is not limited to a ***single*** electronic representation of a user's selection of at least one category and at least one geographic vicinity. Yahoo!'s proposed construction also is not limited to a "single" electronic representation, but goes on to specify that the electronic representation can constitute "***one or more queries***." Despite the differences in wording between the constructions proposed by NAR/Homestore/Hotels.com and Yahoo!, Defendants' constructions apparently are intended to capture the same concept – that the "request signal representative of a selected category and geographic vicinity" can constitute multiple transmissions, such as one transmitting containing a category and a separate transmission containing a geographic vicinity.

9

CIVIX disagrees with this construction.

Claim 1 of the '622 patent recites in relevant part:

an information controller for transmitting a portion of the information in the database to the user via the link upon receipt of *a request signal representative of a selected category and geographic vicinity*....

a port for remotely accessing the portion of information via the link, the port generating *the request signal in response to inputs by the user which are representative of the selected category and geographic vicinity*....

(A302-303, '622 patent, claim 1).

The claim does *not* say "request signal**s**"). Instead, the singular is used throughout. Furthermore, the second reference to "request signal" says "*the* request signal." This indicates that the claim is limited to a *single* signal. See Insituform Technologies, Inc. v. Cat Contracting, Inc., 99 F.3d 1098, 1105 (Fed. Cir. 1996) (claim reference to "a cup" followed by "the cup" indicated that the claim was limited to a single cup); AbTox, Inc. v. Exitron Corp., 122 F.3d 1019, 1024 (Fed. Cir. 1997) (usage of the term "said chamber" signified a single chamber); Exhibit I, Baldwin Graphic Sys., Inc. v. Siebert, Inc., 2005 U.S. Dist. LEXIS 15527, at * 11-14 (N.D. Ill. 2005) (use of "said fabric roll" implied that "a fabric roll" should be read as a single roll). The consistent singular usage of "request signal" contrasts with the consistent plural usage of "item**s** of interest" and "*at least one of the items* of interest." (A302-304, '622 patent, claims 1, 33, 47, emphasis added). See Norian Corp. v. Stryker Corp., 432 F.3d 1356, 1359 (Fed. Cir. 2005) (contrasting usage of the phrases "at least one" and "a" in the claim at issue to find that the term "a sodium phosphate" was limited to a single sodium phosphate).

Dependent claims in the '622 patent reinforce the singular nature of the "request signal." Claim 15 of the '622 patent, which depends from claim 1, recites the system of claim 1 "wherein the port interprets the inputs by the user and formulates the inputs into *the* request signal." (A303, '622 patent, claim 15). Again, the claim does not specify the formulation of inputs into "request signal**s**"; it refers to "the" request signal. Claim 41, which depends from claim 33, likewise refers to "*the* request signal." (A303, '622 patent, claim 41).

Additional intrinsic evidence indicating the singular nature of "request signal" is found in the '307 patent. Claim 1 is directed to a method for locating items of interest relative to a first location and requires the steps of "selecting the first location at a port situated at a port situated at a second location"; "selecting, at the port, a category associated with the items of interest"; and "communicating the first location and the category to a database." (A497, '307 patent, claim 1). The claim does not recite "a

request signal." Defendants agree with CIVIX that the step of communicating the first location and the category can be done in multiple transmissions. (See Dkt No. 349, at p. 4).

Claim 5 depends from claim 1 and requires that "the step of communicating the first location and the category comprises the step of ***generating a request signal to the database***." (A498, '307 patent, claim 5, emphasis added). Thus, while claim 1 recites two separate transmissions – a first transmission of the location, and a second transmission of the category – claim 5 adds the requirement that the category and the location be consolidated into a ***single*** transmission, i.e., "a request signal." Applying Defendants' proposed construction of "request signal" to claim 5 would render the claim superfluous because claim 1 involves separate transmissions for geographic and category selections.

This reading of "a request signal" in claim 5 is directly supported by the prosecution history of the '307 patent. During prosecution, the Examiner rejected claim 5 (which was numbered claim 42) as anticipated by a published European patent application to Nobe. (A681-682, '307 File History). In response, the CIVIX inventors argued that "Nobe does not teach generating ***a signal*** indicative of a category ***and*** location." (A742, '307 File History, emphasis added). See Elkay Manufacturing Co. v. Ebco Manufacturing Co., 192 F.3d 973, 978 (Fed. Cir. 1999) (relying on patentee's prosecution argument to overcome a prior art rejection to find that the phrase "an upstanding feed tube" was limited to a single tube).

The specification supports CIVIX's construction. For example, the "Summary of the Invention" section explains that

> the port generates ***the*** request signal in response to inputs by a user of the system; ***that signal*** being representative of the selected category and geographic vicinity.

(A491, '307 patent, col. 2:25-27, emphasis added). NAR/Homestore and Hotels.com rely on this passage as well, pointing out that the request signal includes multiple inputs. NAR/Homestore Brief, at p. 13. Multiple inputs do not require or even suggest multiple signals. The multiple inputs could be using a keyboard to type a city, a state, a country and a category into a form, and then transmitting this information to a database in a single signal. Or, the multiple inputs could be the hierarchical selection of a vicinity from a series of maps, culminating in a single signal transmitted to the database that represents both a vicinity and a category.

Yahoo! emphasizes Figure 4 of the CIVIX patents. See Yahoo! Brief, at pp. 10-11. Figure 4 "illustrates ***one embodiment of the invention*** showing a process flow…for providing information about selected items of interest to a user at the remote port." (A299, '622 patent, col. 8:8-10, emphasis

added). Indeed, the specification expressly distinguishes the "hierarchical" embodiment of the invention shown in Figure 4 from an alternative embodiment that uses a "request signal." (A297, '622 patent, col. 3:3-22). The requirements of Figure 4 cannot be imported into the claims. Comark Communs., Inc., 156 F.3d at 1186; Transmatic, Inc. v. Gulton Industries, Inc., 53 F.3d 1270, 1277-78 (Fed. Cir. 1995). And although Figure 4 may depict the process flow used in some of the claims, this does not mean that the flow is a requirement of *all* of them. The CIVIX Patents include 116 claims, each of which defines a separate invention. Jones v. Hardy, 727 F.2d 1524, 1528 (Fed. Cir. 1984). Many of the claims do not require a "request signal" and, accordingly, allow for the transmission of a location and a category in separate signals. Claim 58 of the '622 patent provides a good example: The location and the category can be communicated from the remote port to the database in separate signals. Claim 1 of the '307 patent provides an even better example: The location and the category can be communicated to the database separately, as described in Figure 4. (A497, '307 patent, col. 14:54-64). As discussed above, claim 5, which depends from claim 1, imposes the additional requirement of a single signal containing the location and category. (A498, '307 patent, col. 15:12-15). None of the claims of the '291 patent include the requirement of a "request signal."

Yahoo!'s cases are distinguishable. In KCJ Corp. v. Kinetic Concepts, Inc., 223 F.3d 1351 (Fed. Cir. 2000), the court applied the general rule that an indefinite article "a" or "an" in patent parlance presumptively means "one or more" in open-ended claims containing the transitional phrase "comprising." The claim at issue recited "means defining a lower, continuous, inflatable chamber having an air-permeable, flexible wall portion." Id. at 1353. The Federal Circuit found that nothing in the claim, the specification or the prosecution history suggested that "a...continuous...chamber" was limited to a single, non-interrupted chamber. Id. at 1357. Here, in contrast, the intrinsic record dictates that "a request signal..." means a single signal. The claims repeatedly and consistently use the term in the singular, the specification uses the term in the singular, dependent claim 5 of the '307 patent indicates that a "request signal" is a single signal and the inventors emphasized the singular nature of the "request signal" to distinguish prior art during prosecution of the '307 patent.

Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V., 365 F.3d 1299 (Fed. Cir. 2004), is distinguishable for these same reasons. There, the claim recited "an illumination apparatus." 365 F.3d at 1301. This was the only reference to "illumination apparatus." Unlike our case, nothing in the claim or elsewhere in the intrinsic record indicated that the "illumination apparatus" element was limited to an apparatus containing a single illumination source. Id. at 1304-05.

12

The issue in <u>CCS Fitness, Inc.</u> v. <u>Brunswick Corp.</u>, 288 F.3d 1359 (Fed. Cir. 2002), was whether the term "reciprocating member" encompassed a curved structure consisting of one or more components. 288 F.3d at 1365. The court concluded that the term did encompass such a structure, principally because common and technical dictionaries defined "member" to include multi-component structures. <u>Id.</u> at 1367. The court also determined that the intrinsic record contained no indication that the "member" was limited to single-component structures. <u>Id.</u> at 1368-69. Here, in contrast, the issue whether "a request signal..." is limited to a single signal cannot be determined by consulting dictionaries and, as explained above, the intrinsic record indicates that "request signal" is a single signal.

Yahoo! summarily dismisses the Colorado court's decision on "request signal" as "incorrect" because the court did not consider the "black letter law" concerning indefinite articles cited by Yahoo!. See Yahoo! Brief, at p. 13, footnote 10. Yahoo! is wrong. The ***same rule of law*** concerning indefinite articles and arguments based on this rule was ***expressly*** presented to the Colorado court in CIVIX's response to brief on claim construction. (Exhibit J, C0024040-41). The Colorado court considered and rejected these arguments.[2]

Yahoo! cites <u>Nilssen</u> v. <u>Motorola, Inc.</u>, 80 F. Supp. 2d 921 (N.D. Ill. 2000), for the proposition that the Court should disregard the Colorado court's decision. In <u>Nilssen</u>, Judge Shadur acknowledged and considered Judge Kennelly's prior claim construction rulings, and merely determined that he was not "compelled to reach the same conclusions" as Judge Kennelly. 80 F. Supp. 2d at 924, footnote 4. CIVIX does not argue that the Court is compelled to adopt the Colorado court's claim construction, only that Defendants must provide a clear and justifiable basis for deviating from that ruling – particularly because this Court has already considered and adopted the Colorado court's construction in the <u>Expedia</u> litigation.

---

[2]Yahoo! urges the Court to rely on CIVIX's arguments on the construction of "a request signal" in briefs filed in the Colorado suit, characterizing these arguments as "admissions." See Yahoo! Brief, at p. 12-13. Legal arguments made to a court – and arguments on claim construction certainly fall into this category – are not admissions. See <u>Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders in Het Kapitaal Van Saybolt International B.V.</u> v. <u>Schreiber</u>, 407 F.3d 34, 45 (2nd Cir. 2005). See also Exhibit K, <u>Papst Licensing Gmbh & Co.</u> v. <u>Sunonwealth Electric Machine Ind. Co.</u>, 2004 U.S. Dist. LEXIS 4402, at * 31, footnote 15 (N.D. Ill. 2005) (refusing to treat legal arguments on claim construction as "admissions"). And this is not a situation where CIVIX benefitted from its prior arguments: the Colorado court ***rejected*** them, which is a result that CIVIX believes should not be disturbed without clear justification. Yahoo!'s restatement of the rejected arguments in this proceeding do not justify reaching a different result.

For the foregoing reasons, the term "a request signal representative of a selected category and geographic vicinity" should be construed as "a ***single*** electronic representation of a user's selection of at least one category and at least one geographic vicinity."

**D.** **"Video"**

In its opening brief on claim construction, CIVIX proposed that the term "video" should be construed to mean "a digitized presentation of multiple sequential frames of image data." CIVIX Opening Brief, at p. 10. CIVIX arrived at this construction after revisiting the intrinsic record in view of Defendants' position. See CIVIX Opening Brief, at pp. 9-10. Defendants propose that the term should be construed to mean "a visual display of textual or graphical information on a computer monitor." NAR/Homestore Brief, at p. 17. See also Hotels.com Brief, at p. 20 and Yahoo! Brief, at pp. 2-3 (adopting NAR/Homestore's arguments).

There are two substantive differences between CIVIX's and Defendants' proposed constructions of "video": 1) CIVIX's proposed construction requires that "video" is "digitized" media while Defendants' proposed construction does not include this limitation, and 2) CIVIX's proposed construction requires "multiple sequential frames of image data" whereas Defendants' proposed construction encompasses any display of textual or graphical information on a computer monitor.

Defendants criticize CIVIX's inclusion of "digitized" media in the construction of "video" on the ground that this would exclude non-digital embodiments of the invention (see NAR/Homestore Brief, at pp. 17-18). At the same time, Defendants impose the requirement of a "computer monitor" which would exclude embodiments such as those employing a "television interface." (See A296, '622 patent, col. 2:38-45). Nothing in the intrinsic record requires that "video" be displayed "on a computer monitor" as proposed by Defendants.

Defendants' insistence that the "video" is displayed "on a ***computer monitor***" is actually consistent with CIVIX's inclusion of "***digitized***" media. Regardless, further consideration of the intrinsic record suggests that neither "digitized" nor "computer monitor" is a required limitation in the construction of "video."[3]

This leaves CIVIX's "presentation of multiple sequential frames of image data" versus

---

[3]We do ***not*** understand Defendants to be arguing that the term "video" ***excludes*** digitized media, only that the term is ***not limited to*** digitized media. The intrinsic record clearly encompasses digital video. (See, e.g., A875, '291 patent, col. 14:14-21 (stating that a "video clip" can be captured, stored, edited and displayed using "digital devices")).

Defendants' "visual display of textual or graphical information." The bone of contention here is whether "video" encompasses virtually any textual or graphical image, including a single, still image, as proposed by Defendants, or requires a sequence of frames of image data (e.g., motion imaging), as proposed by CIVIX.

In the request for reexamination of the '622 patent, Defendants concede that "video" requires "motion imaging." Defendants now attempt to run from this concession, arguing that in accordance with In re Bass, 314 F.3d 575, 577 (Fed. Cir. 2002), they have properly asserted the "broadest reasonable meaning" of "video" in the reexamination and a narrower construction in this proceeding. See NAR/Homestore Brief, at p. 19. This argument contradicts Defendants' interrogatory responses that *expressly incorporate* the reexamination claim charts, statements and arguments into this proceeding. (See e.g., Exhibit L, 8/17/07 Homestore Supplemental Response to Interrogatory No. 3, at p.383; Exhibit M, 5/7/07 Yahoo! Supplemental Response to Interrogatory No. 3, at pp. 4-5). Independently, Defendants' argument cannot withstand scrutiny because the construction of "video" argued in Defendants' briefs is actually *broader* than the construction asserted in the reexamination. Defendants' construction of "video" in the reexamination is properly confined to "motion imaging" and would exclude still images, while the construction argued in Defendants' briefs does not require this limitation, and would encompass both still and motion imaging.

Defendants should be estopped to deny that "video" requires "motion imaging." The doctrine of judicial estoppel is an equitable concept that prevents a party who obtains a favorable ruling in a legal proceeding from taking an inconsistent position in a subsequent legal proceeding. Lampi Corp. v. American Power Products, Inc., 228 F.3d 1365, 1376-77 (Fed. Cir. 2000). The doctrine applies to statements made in PTO proceedings. Id. See also Exhibit N, Synopsys, Inc. v. Magma Design Automation, Inc., 2007 U.S. Dist. LEXIS 6814, at *74-75 (N.D. Cal. 2007) ("[T]he Court finds the doctrine of judicial estoppel is applicable to cases in which the prior statements at issue were made to the PTO."). Defendants convinced the PTO to order reexamination of the '622, '307 and '291 patents by asserting that the term "video" means "motion imaging." Having benefitted from that position, Defendants cannot take a contrary position in this proceeding simply because their interests have changed.

Defendants simply ignore the parts of the intrinsic record discussed at pages 10-11 of CIVIX's opening brief that draw a distinction between still images and "video." To reiterate, the specification describes "a short *video clip*" embedded in data associated with items of interest. (A875, '291 patent,

col. 14:14-21, emphasis added) and describes "video" and "digital pictures" as different types of multimedia information. (A869, '291 patent, col. 2:65-67). The specification separately describes embodiments of the invention that display fixed, textual and graphic information and embodiments that display "video." (Compare A872, '291 patent, col. 7:50 through col. 8:5, which describe fixed textual and graphic information, with A875, '291 patent, col. 14:14-21, describing "video clips"). Claim 23 of the '291 patent recites the step of "supplying one or more video clips **and** digitized images related to the one item of interest." (A876, '291 patent, claim 23, emphasis added). Claim 14 of the '307 patent states that the step of transmitting additional detail "comprises transmitting multi-media information including at least one of video, prerecorded music, advertising information **and** digital pictures." (A498, '307 patent, col. 15:52-54, emphasis added). Claim 19 of the '622 patent requires that the "additional detail" provided to users of the system comprises "video" (A303, '622 patent, col. 15:58-59) while claim 25 requires that this **same** "additional detail" comprises "digital pictures. (A303, '622 patent, col. 16:3-4).

Defendants rely on a dictionary in support of their proposed construction. See NAR/Homestore Brief, at p. 17. The irony in this is palpable given Defendants' criticisms of this Court's claim construction rulings on various terms (e.g., "Internet") because dictionaries were consulted. Moreover, Defendants' reliance on an extrinsic **computer** definition of "video" is inconsistent with non-computer embodiments of the invention described in the specification. The intrinsic record settles this issue, and dictates that "video" requires motion imaging. This concept is captured in CIVIX's "presentation of multiple sequential frames of image data" verbiage and is ignored in Defendants' proposed construction.

For the foregoing reasons, the term "video" should be construed to mean "*a presentation of multiple sequential frames of image data*."

### E. "Associated Category" / "Category Associated With The Items Of Interest"

Defendants' arguments on the construction of "associated category" and "category associated with the items of interest" are set forth at pages 4-6 of Hotels.com's brief. The competing constructions are as follows:

| CIVIX | Defendants |
|---|---|
| A class with which items of interest have an established relationship in a database. | A classification or group that divides items of interest within a database. |

Defendants do not assert that there is any difference between their "classification or group" and CIVIX's "class." The issue is whether it is appropriate to define an "associated category" by the function of "dividing."

Defendants contend that the specification requires this dividing function, but none of the specification excerpts they cite contains the term "divide" or attributes the function of dividing to an associated category. The plain language of the phrase "category associated with an item of interest" describes a relationship or link between a database element called a "category" and another database element called an "item of interest." Indeed, Defendants concede this point, stating that "[e]ach item of interest in the database must therefore be linked to at least one associated category." Hotels.com Brief, at p. 5.

Defendants extend this straightforward result to an improper end by claiming that this relationship mandates that all associated categories must perform a "dividing" function within the database. The claim language itself does not require this extra limitation. For example, claim 1 of the '622 patent requires, for each item of interest, that "at least one associated category" be stored in the database. (A302-303, '622 patent, claim 1). If an item of interest has more than one associated category (as contemplated by claim 1), then it would not make sense to say that an associated category divides items of interest because that would require a single item of interest to be divided from itself.

Because Defendants have pointed to no intrinsic evidence that would support attaching a "dividing" function to the definition of "associated category," and because the importation of a dividing function would be internally inconsistent with the use of "associated category" as it appears in the claims, there is no reason to modify the prior claim construction. The terms "associated category" and "category associated with the items of interest" should be construed as **_"a class with which items of interest have an established relationship in a database"_** as proposed by CIVIX.

F. **"Database"**

Yahoo! and Hotels.com adopt the construction of "database" and arguments in support of that constructions presented by NAR. See Yahoo! Brief, at pp. 2-3, footnote 5; Hotels.com Brief, at pp. 6-7. Yahoo! fails to mention that it agreed with CIVIX's construction at the time the Joint Claim Construction Chart was filed (Dkt. 349, at p. 4). CIVIX contends that there is no reason to modify the prior claim construction provided by the court. The competing constructions are follows:

| CIVIX | Defendants |
|---|---|
| A collection of related information organized for convenient access. | A device for storing a collection of related information organized for convenient access. |

The term "database" was addressed in both the Colorado suit and the Expedia suit. Although two federal district judges have determined that CIVIX's construction of "database" is neither overbroad nor confusing to a jury, Defendants argue that further consideration of the term is required.

Defendants' argument is far fetched because it ignores the context of the claims. For example, claim 1 of the '291 patent recites "a plurality of ports for accessing the database *through the Internet*." (A875-876, '291 patent, claim 1). No juror will be confused about whether a filing cabinet, a Rolodex or a sock drawer can be accessed by a plurality of ports through the Internet.

Further, Defendants' proposed construction contradicts the plain language of the claims. For example, claim 1 of the '291 patent recites "a database *for storing information*." Defendants' inclusion of the phrase "for storing" into the construction of database would make the actual appearance of "for storing" in claim 1 mere surplusage.

The specification excerpts cited by Defendants do not dictate that the "database" is a "device." The specification says a client server is an *example* of a type of database. (See, e.g., A296, '622 patent, col. 2:2-4 ("a database, *e.g.,* a client server....")). In fact, the Colorado court expressly recognized this in construing "database" as proposed by CIVIX here. See CIVIX-DDI, LLC v. Microsoft Corp., 84 F. Supp.2d 1132, 1157 (D. Colo. 2000).

Defendants offer no legitimate reason to repeat the work of two federal judges. The current construction of "database" should stand: **"a collection of related information organized for convenient access."**

Finally, to the extent the Court accepts Defendants' invitation to revisit the construction of "database" (which it should not), the term should not be limited to a single hardware structure as Defendants suggest. See, e.g., Homestore/NAR Brief, at p. 9 (referring to "a piece of computer hardware"). To avoid this unwarranted limitation, the phrase "one or more devices" should be used instead of "a device."

**G.**      **"Information Controller"**

Defendants disagree among themselves on the proper construction of "information controller." The dispute is whether the term should be limited to a single device or can comprise of multiple devices. Homestore/NAR and Hotels.com contend that the "information controller" should be limited to a

18

single device. Yahoo! agrees with CIVIX that the construction applied by the Court in the Expedia suit – "one or more devices that manage the transfer of data into or out of a database, where the information controller may be implemented as software running on the database hardware" -- should govern. (Dkt. No. 349, at p. 6).

Homestore/NAR and Hotels.com rely on the fact that the claims recite "an" information controller. As Yahoo! points out, because the claims use the "comprising" transitional phrase, they presumptively encompass "one or more" of each recited element. See Yahoo! Brief, at p. 17 (citing KCJ Corp. v. Kinetic Concepts, Inc., 223 F.3d 1351, 1356 (Fed. Cir. 2000)). Unlike the term "a request signal..." discussed above, where the intrinsic record overcomes this presumption and dictates a single signal, nothing in the intrinsic record dictates that the "information controller" is confined to a single device.

Homestore/NAR and Hotels.com argue that "nowhere does the specification of the CIVIX patents indicate that the information controller can be multiple devices." NAR Brief, at p. 10. This is wrong. As Yahoo! explains, the specification describes an embodiment of the "information controller" comprising the combination of a display manager, a map manager, a data manager and a print manager. See Yahoo! Brief, at p. 17 (citing A301, '622 patent, col. 12:44-46).

Homestore/NAR and Hotels.com's only other argument is that the construction proposed by CIVIX and agreed to by Yahoo! "incorporates limitations...that find no support anywhere in the claims, specification or prosecution histories of the CIVIX patents." Homestore/NAR Brief, at p. 11. It is surprising that Homestore/NAR and Hotels.com make this assertion given that they attempt to incorporate into "information controller" the limitations of an embodiment described in the "Detailed Description" of "Illustrated Embodiments" portion of the specification. See Homestore/NAR Brief, at pp 10-11 (relying on A297, '622 patent, col. 4:56-59). The CIVIX/Yahoo! construction properly does not include these extraneous limitations.

The term "information controller" should be construed to mean **"one or more devices that manage the transfer of data into or out of a database, where the information controller may be implemented as software running on the database hardware"** as it was in the Expedia suit, and as proposed by CIVIX and Yahoo!.

### H. "User Interface"

The parties' competing constructions of "user interface" are similar. The construction proposed by CIVIX in the Joint Claim Construction chart is: "Hardware and/or software features that facilitate

the exchange of information between a user and a computer." (Dkt. No. 349 at p. 14). Defendants propose "equipment or programs designed to communicate information from or to a person utilizing the system." (Id.).

Defendants take issue with the requirement of a **computer** in CIVIX's proposed construction, arguing that the intrinsic record does not dictate such a limitation. For example, the specification describes alternative user interfaces, such as televisions, telephones, fax machines and speakers. See NAR/Homestore Brief, at 14-16. Defendants make a valid point, and upon further consideration CIVIX will agree that the "user interface" may comprise, but does not require, a computer.

Most of the remaining differences between CIVIX's and Defendants' proposed constructions of "user interface" are non-substantive. CIVIX does not believe there is a material difference between the "hardware and/or software features" of its proposal versus the "equipment or programs" of Defendants' proposal. Accordingly, CIVIX will adopt Defendants' wording. CIVIX will also agree with Defendants that the "user interface" involves " a person utilizing the system."

The remaining difference between CIVIX's and Defendants' proposed constructions concerns how to express what the "user interface" does. CIVIX contends that the "user interface" "facilitate[s] the exchange of information." This is supported by the intrinsic record. (See, e.g., A874, '291 patent, col. 11:29-30 ("software architectures configured to allow user interaction...."); A177, '525 File History ("encourage use and user interaction")). Defendants contend that the "user interface" "communicate[s] information." The problem with Defendants' wording is it encompasses separate claim elements, such as the "communications link..." and the "information controller...." that communicate information in the system but do not necessarily relate to the user's interaction with the system. See CIVIX Opening Brief, at p. 14. The "user interface" links a user of the system (a human being) with these communication elements; the "user interface" is not the same thing as these elements as suggested by Defendants' proposed construction. Accordingly, CIVIX's "facilitate the exchange of information" wording should be adopted over Defendants' "communicate information from or to" wording.

For the foregoing reasons, the term "user interface" should be construed as follows: "***Equipment or programs designed to facilitate the exchange of information between the system and a person utilizing the system***."

## I.      "Selected" And "Supplying"

These terms were agreed upon and adopted by the Court in the <u>Expedia</u> suit, but were identified by the defendants as disputed terms in this suit. See Dkt. No. 349, at p. 12 ("selected"), and Dkt. No.

20

349, at pp. 12-13 ("supplying"). Defendants state that they "do[] not disagree with the basic meaning of CIVIX's proposed constructions" of these terms; Defendants believe that their "proposed constructions state these meanings more directly and will help the Court and jury." Yahoo! Brief, at p. 19. See also NAR/Homestore Brief, at pp. 13-14 and Hotels.com Brief, at p. 19 (adopting Yahoo!'s brief on these terms).

CIVIX shares an interest in providing constructions that will assist the Court and the jury, and also believes the parties should not expend their resources, or those of the Court, addressing claim terms on which no real dispute exists. Based on Defendants' statement that they do not disagree with the substance of CIVIX's proposed constructions of "selected" and "supplying," CIVIX will agree to the wording proposed by Defendants, which is as follows:

**"Selected" means: "Chosen or picked out in preference to another or others."**

**"Supplying" means: "Providing or making available."**

**J.     "Connected To"**

Although Defendants state that they do not disagree with the meaning of CIVIX's proposed construction of "connected to" (see Yahoo! Brief, at p. 19), their proposed construction of the term indicates otherwise. CIVIX's proposed construction of "connected to," which was adopted by the Court in the Expedia suit, is "joined together, conjoined: esp. joined in sequence, coherent; related; having relationships or associations (of a specified nature)." (Dkt. No. 349, at p. 3). Defendants' proposed construction ("joined together or linked to") incorporates part, but not all of, CIVIX's proposal, leaving the incorrect impression (perhaps inadvertently, perhaps not) that "connected to" requires a **direct** joining or linkage. The ordinary and accustomed meaning of "connected to," as reflected in CIVIX's proposed wording which includes the concept of "having relationships or associations of a specified nature," properly does not require a direct joining or linkage.

The Court rejected the notion of a direct joining or linkage in its order denying summary judgment of non-infringement in the Expedia suit. (Exhibit O, 9/14/05 Order, at pp. 24-25 (stating that "the plain language of the claims does not limit the process to directly communicating" and "the mere fact that Expedia's website first transmit to a web server, and then to a database, does not avoid infringement").

Accordingly, Defendants' proposed construction of "connected to" is improper and should not be adopted. At the same time, CIVIX shares Defendants' interest in using wording that will help the Court and jury. In this connection, CIVIX proposes the following construction of "connected to":

21

"***Joined together or linked to, in a direct or indirect manner.***"

This proposed construction accomplishes the goal of usable, understandable wording and encompasses the proper scope of "connected to."

### K. **"Position," "Remote Port" And "Port For Remotely Accessing"**

Defendants argue that the term "position" does not need to be construed because every reference to "position" in the asserted claims refers to "geographic position," which is being addressed separately.[4] Similarly, Defendants argue that the terms "remote port" and "port for remotely accessing" need not be construed because the terms "remote/remotely" and "port" are not disputed. Yahoo! Brief, at pp. 18-19. See also NAR/Homestore Brief, at p. 12 and Hotels.com Brief, at p. 18 (adopting Yahoo!'s brief on these terms). Upon further consideration, CIVIX will agree with Defendants that the term "position" does not need to be addressed separately from "geographic position" and that the terms "remote port" and "port for remotely accessing" do not need to be construed because the parties agree on the terms "remote/remotely" and "port."

### L. **"User"**

Defendants do not dispute that a "user" must be a "human being" as proposed by CIVIX (and as agreed to by the parties and adopted by the Court in the <u>Expedia</u> suit). See NAR/Homestore Brief, at pp. 14-15 (which has been adopted by Yahoo! and Hotels.com). The bone of contention is whether the construction of "user" should include language specifying that the user "utilizes the system" or "utilizes the method." Defendants contend that this language should be included. CIVIX disagrees.

The language proposed by Defendants is superfluous. The claims themselves specify the relationship between a "user" and the system or method. For example, as Defendants themselves acknowledge, claim 1 of the '291 patent recites "a user ***of the system***...." (A875, '291 patent, col. 14:65-67). There is no need to define "user" as someone who "uses the system" because the claim already says this. See also claim 1 of the '622 patent (expressly reciting "a user ***of the system***"). (A302, '622 patent, col. 14:64-65).

Method claim 16 of the '291 patent specifies the display of geographic information at the port "***in response to user inputs at the port***." (A876, '291 patent, col. 16:13-15). Thus, the claim itself makes clear that the user is providing inputs. See also claim 58 of the '622 patent (expressly stating that

---

[4]The parties disagree on the term "geographic position." This term is addressed at pages 5-7 of CIVIX's Reply Brief.

information from the database is transmitted "*to the user*") (A304, '622 patent, col. 18:17-21), claim 22 of the '307 patent (expressly stating that "*a user of the port can select the category*") (A498, '307 patent, col. 16:25-27), claim 23 of the '307 patent (expressly stating that "*a user of the port can select the second location*") (A498, '307 patent, col. 16:28-30) and claim 41 of the '692 patent (expressly stating that the location is transmitted "*to a user*"). (A1115, '692 patent, col. 20:19-27).

Moreover, the construction of "user" proposed by Defendants contradicts their arguments with respect to the "remote port," "port for remotely accessing" and "position" elements discussed above. With respect to those elements, Defendants argue (and CIVIX agrees) that "the Court should avoid adopting constructions that render claim limitations meaningless." See Yahoo! Brief, at p. 19, citing Leapfrog Enterprises v. Fisher-Price, Inc., 485 F.3d 1157, 1160 (Fed. Cir. 2007). Defendants' proposed construction of "user" would render meaningless express claim language defining the relationship between a "user" and the other elements of the system or method.

Defendants' proposed construction also invites confusion to the extent it conflates the term "user" in the claims with "use" under the infringement statute, 35 U.S.C. § 271(a). Section 271(a) states that "whoever, without authority...*uses*...any patented invention without the United States...during the term of the patent therefore, infringes the patent." As the Court found in the Expedia suit, a "user" for purposes of § 271(a) is not necessarily the same entity as the "user" recited in the claims. Exhibit O, 9/14/05 Order, at pp. 15-22. Thus, for example, Defendants may "use," and thereby infringe, claim 1 of the '291 patent even though they do not provide inputs to the system or receive information on the geographic positions of items of interest. The construction of "user" proposed by Defendants confusingly suggests otherwise.

For at least the above reasons, the term "*user*" in the patents in suit should be defined as "*a human being*" as proposed by CIVIX.

## III.    CLAIM TERMS IN THE '692 PATENT

### A.    "Location"

Defendants contend that "location" should be construed to mean "physical position denoted by locational address (ULA or PLA)." See Hotels.com Brief, at pp. 22-24. This construction invites legal error by improperly incorporating "locational address" – a separate and distinct claim element -- into the term "location."

An examination of the claims themselves reveals a fatal flaw with Defendants' proposed construction that would render the claims nonsensical. This is illustrated in the table below which

substitutes "locational address" for "location" as suggested by Defendants:

| Claim 27 As Written | Claim 27 With "Locational Address" "Substituted For The Term "Location" |
|---|---|
| 27.    A locational information system capable of being used to provide a **location**, said locational information system comprising: | 27.    A locational information system capable of being used to provide a **locational address (ULA or PLA)**, said locational information system comprising: |
| a repository capable of receiving and storing said **location**; | a repository capable of receiving and storing said **locational address (ULA or PLA)**; |
| a receiver capable of receiving a request including a locational address, wherein a search of said repository acquires said **location**; and | a receiver capable of receiving a request including a locational address, wherein a search of said repository acquires said **locational address (ULA or PLA)**; |
| a transmitter capable of transmitting said **location** to a user; | and a transmitter capable of transmitting said **locational address (ULA or PLA)** to a user; |
| wherein said locational address is defined based on a latitude/longitude. | wherein said locational address is defined based on a latitude/longitude. |

Defendants' construction would require the receiver to receive a request including a "locational address" while at the same time requiring that the same "locational address" be acquired and provided as a result of a search of the repository.  This is not the proper construction for obvious reasons.  The claims use different terminology – "location" and "locational address" – for a reason.  The system provides a "location" (i.e., a position or site occupied or available for occupancy or marked by some distinguishing feature) in response to a request that includes a "locational address" (i.e., a ULA or a PLA).

Furthermore, Defendants' argument about the meaning of "location" runs afoul of the doctrine of claim differentiation.   See Phillips, 415 F.3d at 1314-15 ("Differences among claims can also be a useful guide in understanding the meaning of particular claim terms.").  Independent Claims 27 and 41 both require a search of the repository that acquires a location that is ultimately transmitted to the user. Dependent claims specify that the "location" is "a structure" (claims 30 and 44), "an area" (claims 31 and 45), "an area defined based on a county and a city" (claims 32 and 46), "an area defined based on a PLA" (claims 33 and 47), "an area defined based on a ULA" (claims 34 and 48) and "an area defined based on a zip code" (claims 35 and 49).  In other words, a "location" as used in the independent claims (27 and 41) can be all of these things and more.  According to the doctrine of claim differentiation, the

"location" of independent claims 27 and 41 must encompass at least all of these types of locations. In particular, dependent claims 33 and 47 define the location as a PLA and dependent claims 34 and 48 define the location as a ULA. Restricting "location" to "locational address (ULA or PLA)" as Defendants argue would erroneously render these dependent claims meaningless. Finally, the specification excerpts quoted by Defendants miss the mark. These excerpts refer to "locational addresses" (ULA or PLA) and not "locations" as used in the '692 patent. The specification discusses "location" or "locations" as points of interest (A1111, '692 patent, col. 12:26-27); houses (A1107, '692 patent, col. 4:1-3); structures, lakes, or parks (A1107, '692 patent, col. 4:51-52); national monuments (A1108, '692 patent, col. 5:1-2); corporate franchised business (A1108, '692 patent, col. 5:10-24); fast food chains (A1111, '692 patent, col. 12:27-31); areas (A1111, '692 patent, col. 12:50-53); and geographical features (A1112, '692 patent, col. 13:15-40). In fact, the specification describes a preferred embodiment in which the user of the system enters ULAs or PLAs to find locations. (A1108, '692 patent, col. 6:5-30). CIVIX's proposed construction is consistent with the use of "location" in the specification of the '692 patent.

The term "location" as used in the '692 patent should be construed to mean **"a position or site occupied or available for occupancy or marked by some distinguishing feature"** as proposed by CIVIX.

## B. "PLA"

Hotels.com agrees with CIVIX that the Court properly construed the term "PLA" in the <u>Expedia</u> suit. (Hotels.com Brief, at p. 24). But Yahoo! and Homestore/NAR propose a different construction.

Yahoo! and Homestore/NAR provide no legitimate reason – such as an error of law or fact – to justify a deviation from the Court's prior construction of "PLA." The Court specifically addressed the meaning of "PLA" in the <u>Expedia</u> suit, and concluded that the proper construction of the term is set forth in the "Summary of the Invention" section of the specification. (Exhibit E, 3/14/05 Hearing Tr. at 34-40). The Court's construction of "PLA" tracks the Summary of the Invention:

> A PLA is a proprietary locational address which is a name, unique within the district, that distinctly defines a location within the district. A proprietary address is created by selecting a name, capturing positional information about the location associated with the name, checking that the name is unique within the district and storing the name with its associated locational information and feature data. Once stored, the name and associated information may be selectively disseminated to users of locational systems.

(Dkt. No. 349, at pp. 16-17).

Yahoo! and Homestore/NAR seek to append an additional requirement to "PLA" that "each district must have a name and reference point." (Dkt. No. 349, at pp. 16-17). This imports a limitation that is not found in the Summary of the Invention for "PLA," and is not otherwise dictated by the intrinsic record of the '692 patent. The superfluous language Yahoo! and Homestore/NAR seek to add is found in the description of a **"ULA."** (A1106, '692 patent, col. 2:14-21). A "ULA" is not a "PLA." The two terms have separate and distinct requirements. This is apparent from the text of the Summary of the Invention which states that the "PLA" is "a second, **separate** aspect of the invention." (A1106, '692 patent, col. 2:23). The definition of "PLA" in the Summary of the Invention says nothing about district names or reference points. (A1106, '692 patent, col. 2:23-34).

Yahoo! and Homestore/NAR cite to extrinsic evidence in hopes of bolstering their argument for a new construction of "PLA." But the cases cited regarding extrinsic evidence and inventor testimony predate the Federal Circuit's decision in <u>Philips</u>, which left no doubt that **intrinsic evidence** matters most in construing claims. <u>Phillips</u>, 415 F.3d at 1317. Moreover, as discussed in Section II(A)(3) above in connection with "Internet," the Federal Circuit has consistently rejected the notion that inventor testimony has any meaningful bearing on patent claim interpretation.

Setting aside the legal deficiencies in Yahoo!'s argument, there are factual problems with Yahoo!'s reliance on inventor testimony. Yahoo! relies on Peter Dana's testimony about the "foregoing aspect" referred to in the '692 patent. (Yahoo! Brief, at pp.22-23). But Dr. Dana testified that he did not know what the "foregoing aspect" means or refers to. (Exhibit P, 5/25/07, Dana Dep. at p. 201). On the other hand, Lee Hancock, a co-inventor of the '692 patent, **did** offer testimony about the "foregoing aspect" that contradicts Yahoo!'s and Homestore/NAR's position:

A.     You know, again, I don't necessarily think it's fair to characterize the proprietary – the description of a proprietary locational address as a subset or enhancement of the universal locational address. I think that's just speaking generally about a new piece of the invention, if you will.

(Exhibit Q, 5/31/07 Hancock Dep., at p. 221).

Yahoo! and Homestore/NAR ignore this testimony, and additional testimony of Mr. Hancock that undermines their position:

Q.     And the districts that are described in conjunction with the PLA and the summary of the invention, they would each have a name?

* * * *

A.     ...But, you know, as I look at this, I'm still – I'm not finding it in this – even in

26

this summary I don't think I find the language that talks about a district having to have a name. And I don't even recall that concept being part of the requirement, frankly.

Q.      Well, do the districts that are used in conjunction with the proprietary locational address, do they have reference points?

* * * *

A.      Well, I'm just reading this paragraph very carefully. You know, again, I'd have to go through this whole thing and look for language that you might be thinking about or referring to. But I don't see in this paragraph anything that says the district has to have a reference point. I think the PLA has to have a reference point [positional information] in this particular description, but I don't see anything that says the district has to have a reference point.

(Exhibit Q, 5/31/07 Hancock Dep., at pp. 222-23).

If inventor testimony is to be considered at all (and it is doubtful that it should be, given Federal Circuit precedent), then Mr. Hancock's (not Dr. Dana's) testimony more directly addresses whether "PLAs" have district names and reference points, and that testimony indicates that they do ***not***. The Court should adopt its prior construction of PLA as proposed by CIVIX and Hotels.com.

## C.      **"Repository" / "Repository Capable Of Receiving And Storing"**

Defendants propose a construction for "repository" and contend that the term "repository capable of receiving and storing" does not need to be construed separately. CIVIX will agree with Defendants on this point.

The parties dispute the construction of "repository." CIVIX proposes the construction applied in the Expedia suit, which is "an electronic storage device," and Defendants propose "an electronic storage device ***containing the names and positional information for locational addresses (ULA or PLA).***" (See Dkt. No. 359, at p. 18, emphasis added). Defendants' requirement that the repository contain certain data or information is unjustified.

Defendants' proposed construction contradicts the plain language of the claims. Claim 27 requires "a search of said repository [to] acquire[] said location." (A1115, '692 patent, col. 19:38-39). The claim does not mandate that the "repository" contain a particular type of information. The "repository" must contain information on locations that allows it to acquire a location in response to a search that includes a "locational address," but there is no requirement that the "repository" contain "names and "positional information for locational addresses." Claim 41 requires a search of the repository "based on" a locational address. (A1115, '692 patent, col. 20:23). While the "repository"

27

must contain information sufficient to accomplish the acquisition of a location, the claim does not mandate that the repository contain a particular type of information to do this. This is consistent with the phrase "searching of said repository based on said locational address" in claim 41 which (as explained below) does not require that the locational address (i.e., the ULA or PLA) itself be used to search the repository. There could be a translation, modification, or conversion to a representation of the location address that is used to search the repository for locations.

Defendants' proposed construction is also inconsistent with the specification of the '692 patent, which describes repositories that do not contain names or positional information for locational addresses. For example, the specification describes "database(s) 109 of grid definitions." (A1109, '692 patent, col. 7:47). Requiring the "repository" of claims 27 and 41 to contain names or positional information for locational addresses would improperly exclude these databases from the scope of "repository." Defendants rely on an excerpt from the "Description of the Preferred Embodiments" section of the specification. (See Homestore/NAR Brief, at pp. 21-22). No basis exists to incorporate the limitations of these embodiments into the claims.

If the inventors had wanted to limit their claims to a "repository" containing "the names and positional information for locational addresses" they could and would have put this phrase into the claims. Instead, they recited what the repository must do. They did not specify a particular type of information that must be in the database, and it would be improper to impose such a requirement here. Based on the intrinsic record of the '692 patent, the "repository" of claims 27 and 41 should be construed as ***"an electronic storage device"*** as proposed by CIVIX.

### D. "Wherein A Search Of Said Repository Acquires Said Location" / "Searching Of Said Repository Based On Said Locational Address

These two separate and distinct phrases appear in claims 27 and 41 of the '692 patent, respectively. Hotels.com's brief (pp. 21-22) sets forth Defendants' position on these two phrases. Defendants' assertion that CIVIX made no argument about the construction of these phrases is incorrect. In its opening brief, CIVIX argued that these phrases should be given their plain and ordinary meaning and should not require use of the location address to conduct the search of the repository. (CIVIX Opening Br. at 15-16). As anticipated by CIVIX, defendants argued that "both phrases require that the locational address be used to conduct the search of the repository." Defendants' proposed construction for these phrases is erroneous.

First, the claim language does not support defendants' construction requiring the locational

address to be used to conduct the search. A plain reading of the claim language supports CIVIX, not Defendants:

> 27.    A locational information system capable of being used to provide a location, said locational information system comprising:
>
> a repository capable of receiving and storing said location;
>
> a receiver capable of receiving **a request including a locational address**, wherein **a search of said repository acquires said location**; and
>
> a transmitter capable of transmitting said location to a user;
>
> wherein said locational address is defined based on a latitude/longitude.

(A1115, '692 patent, col. 19:31-43, emphasis added). Thus, two things are required with respect to the searching of the repository: First, there must be a request that includes a locational address. Second, there must be a search of the repository to acquire a location. That is all. Claim 27 does not state that the locational address **itself** is used to search the repository. Something other than the locational address could be used to search the repository to acquire the location. For example, the system could use a code, a text/character string, or a conversion or translation of the locational address. Claim 41 is similar, stating that the search of the repository is "**based on** said locational address." Again, this does not require that the search uses the locational address itself. By using the language "based on," the inventors left the door open for the locational address to be converted, translated, or modified in some way and then used to search the repository. As CIVIX stated in its opening brief, there could be any number of intermediate steps between entering of the locational address by the user and the search of the repository. The claims are not limited in any way to exclude those intermediate steps. Defendants' attempt to import improper limitations in claims 27 and 41 should therefore be denied. A plain reading of the claims does not require that the locational address be used to conduct the search of the repository.

The specification excerpts cited by Defendants have nothing to do with searching the repository. The first excerpt (A1108, '692 patent, col. 5:49-54) relates to the advertising of PLAs. The second excerpt (A1111, '692 patent, col. 12:36-40) discusses the inputting of a PLA by a user of the system. The specification describes a user interface that allows conversion of ULAs and PLAs into latitude/longitude coordinates and various searching methods for finding PLAs:

> A critical function of the front-end-interface is to **convert** ULAs and PLAs into lat/lon coordinates. Consequently, a user can input waypoints in terms of ULAs or PLA, and the FEI will **convert** the same to lat/lon coordinates for use by the unit in determining a

> directional and/or distance indicator (such as distance and bearing) from the waypoints. Additionally, positional information defined in terms of lat/lon coordinates can be displayed in terms of one ore more ULAs of the subject invention. The FEI also includes ***various searching capabilities*** to allow a user to search through the PLA database 110 for particular waypoints or waypoints with particular characteristics.

(A1109, '692 patent, col. 7:48-59). This excerpt from the specification, with its reference to the conversion of locational addresses and various searching capabilities, supports CIVIX's proposed construction that it is not necessary that the search use the locational address itself to conduct the search. Accordingly, the phrases, "wherein a search of said repository acquires said location," and "searching of said repository based on said locational address" should ***not*** be construed to require the locational address itself be used to conduct the search of the repository.

### E. "Request"

Upon further consideration, CIVIX will agree with the Defendants' position that the term "request" in the '692 patent does not need to be construed separately from the phrase "request including a locational address" because the term "request" appears only in the context of the phrase "request including a locational address," a phrase the parties have asked the Court to construe. The parties have agreed that "request including a locational address" should be construed as "a search request by a user, where the user indicates a locational address (ULA or PLA)." (Docket No. 349, at p.19).

### F. "User"

CIVIX agrees with the statement on page 22 of Homestore/NAR's brief that the term "user" is not used in a special way in the '692 patent and should be given its plain and ordinary meaning. But CIVIX does not agree with Defendants' proposed construction of "user," which appends language specifying that the user "utilizes the system" or "utilizes the method." CIVIX's arguments regarding "user" in the '622, '307 and '291 patents (see Section II(L), above) apply with equal force to the construction of "user" in the '692 patent. The language proposed by Defendants is superfluous and improperly conflates "user" in the patent with "use" in 35 U.S.C. § 271(a). The term "user" should be construed to mean ***"a human being."***

## IV. CONCLUSION

For the foregoing reasons, and the reasons set forth in CIVIX's opening brief on claim construction, the Court should adopt the claim constructions proposed by CIVIX. These are summarized in the tables attached as Exhibit R(for the '622, '307 and '291 patents) and Exhibit S(for the '692 patent).

Respectfully submitted,


_____*s/David J. Sheikh*_____
Raymond P. Niro
Paul K. Vickrey
David J. Sheikh
Gregory P. Casimer
David J. Mahalek
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
(312) 236-0733

**Attorneys for Plaintiff, CIVIX-DDI, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **CIVIX'S REPLY BRIEF ON CLAIM CONSTRUCTION** was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses on this 27th day of August 2007:

S. Benjamin Pleune (sbpleune@alston.com)
Bruce J. Rose (bruce.rose@alston.com)
ALSTON & BIRD LLP
Bank of America Plaza
101 S. Tryon Street, Suite 4000
Charlotte, North Carolina  28280-4000
(704) 444-1000
Fax: (704) 444-1111

Charles A. Laff (calaff@michaelbest.com)
Steven E. Cyranoski (secyranoski@michaelbest.com)
Gretchen M. Hosty (ghkotleba@michaelbest.com)
MICHAEL BEST & FRIEDRICH
Two Prudential Plaza
180 North Stetson Avenue, Suite 2000
Chicago, Illinois 60601
(312) 222-0800
Fax: (312) 222-0818

**Attorneys for National Association of Realtors, Homestore, Inc.**

Jonathan F. Putnam (jputnam@kirkland.com)
Abigail M. Diaz-Pedrosa (adiaz-pedrosa@kirkland.com)
Atif Khawaja (akhawaja@kirkland.com)
Shima Baradaran-Robinson (sbaradaran@kirkland.com)
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, NY 10022
(212) 446-4963
Fax: (212) 446-4900

Craig D. Leavell (cleavell@kirkland.com)
Aaron D. Charfoos (acharfoos@kirkland.com)
KIRKLAND & ELLIS, LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
(312) 861-2105
Fax: (312) 861-2200

**Attorneys for Hotels.com, L.P. and Hotels.com GP LLC**

Marcus D. Fruchter (fruchter@sw.com)
Todd H. Flaming (flaming@sw.com)
SCHOPF & WEISS LLP
One South Wacker Drive, 28th Floor,
Chicago, Illinois 60606-4617
(312)701-9300
Fax: (312)701-9335

Michael A. Jacobs (mjacobs@mofo.com)
Richard S. Hung (rhung@mofo.com)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105
(415) 268-7455
Fax: (415) 268-7522

Sunil R. Kulkarni (skulkarni@mofo.com)
Timur S. Engin (tengin@mofo.com)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California  94304
(650) 813-5600
Fax: (650) 494-0792
**Attorneys for Yahoo! Inc.**

_s/David J. Sheikh_