**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CIVIX-DDI, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 6869 |
| | ) | |
| HOTELS.COM, L.P., HOTELS.COM GP LLC, | ) | |
| and YAHOO! INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendants Hotels.com, L.P., Hotels.com GP, LLC (collectively "Hotels.com"), and

Yahoo! Inc. ("Yahoo") move the Court for leave to file Second Amended Answers and

Counterclaims pursuant to Federal Rule of Civil Procedure 15(a).  In response, Plaintiff CIVIX-

DLI, LLC's ("Civix") filed a motion for judgment on the pleadings regarding Defendants'

inequitable conduct claims pursuant to Rule 12(c).  The Court presumes familiarity with its

previous orders in this litigation and the related *Expedia* litigation.  *See Civix-DDI, LLC v.

Cellco P'ship,* 387 F.Supp.2d 869 (N.D. Ill. 2005).  For the following reasons, the Court, in its

discretion, grants Defendants' motions.  The Court denies Civix's motion for judgment on the

pleadings.

## BACKGROUND

On August 24, 2006, Civix filed a Second Amended Complaint in this matter alleging

that Defendants infringed U.S. Patent Nos. 6,385,622 (the "'622 patent"), 6,408,307 (the "'307

patent"), 6,415,291 (the "'291 patent"), and 6,473,692 (the "'692 patent").  On September 17,

2007, the Court stayed the present litigation pending the Patent and Trademark Office's ("PTO")

ex parte reexamination of these four patents. On September 25, 2009, Civix advised the Court that – as a result of the re-examination proceedings – it would pursue its infringement allegations only as to the '622 patent and the '291 patent.

In its motion for leave to amend, Hotels.com seeks to (1) add an affirmative defense of patent exhaustion based on the Federal Circuit's recent decision in *TransCore, L.P. v. Electronic Transaction Consultants Corp.*, 563 F.3d 1271 (Fed. Cir. 2009) and (2) update its existing counterclaim for a declaratory judgment of unenforceability to account for Civix's alleged inequitable conduct during the recently concluded reexamination proceedings. In its motion to amend, Yahoo also seeks to (1) add an affirmative defense of patent exhaustion based on the Federal Circuit's recent decision in *TransCore* and (2) update its existing inequitable conduct defense and related counterclaim to reflect Civix's alleged misconduct during the reexamination proceedings.

In response to Defendants' motions for leave to amend, Civix solely objects to the claims of inequitable conduct maintaining that Defendants' new inequitable conduct allegations based on the PTO's reexamination fall short of the pleading standard articulated in *Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312 (Fed. Cir. 2009). In its motion for judgment on the pleadings, Civix also argues that previously alleged inequitable conduct defenses and counterclaims based on Civix's conduct during the prosecution of the original patent applications similarly fail under the *Exergen* standard.

## LEGAL STANDARDS

Although this is a patent case, the law of the Seventh Circuit controls procedural issues that are not unique to patent law. *See Exergen ,* 575 F.3d at 1318 ("a motion to amend a

pleading under Rule 15(a) is a procedural matter governed by the regional circuit"); *see also Imation Corp. v. Koninklijke Philips Elec. N.V.,* 586 F.3d 980, 984 (Fed. Cir. 2009) ("In reviewing a grant of judgment on the pleadings, this court applies the procedural law of the regional circuit.").

Defendants' motions for leave to file amended answers and counterclaims are governed by Federal Rule of Civil Procedure 15(a)(2), which states that after a responsive pleading is filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). "Although Federal Rule of Civil Procedure 15(a) instructs that leave to amend shall be freely given 'when justice so requires,' a district court may deny a plaintiff leave to amend if 'there is undue delay, bad faith[,] or dilatory motive.'" *Sound of Music Co. v. Minnesota Mining & Mfg. Co.*, 477 F.3d 910, 922 (7th Cir. 2007) (citations omitted). The Court may also deny a plaintiff's motion for leave to amend if either "undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment" would occur. *Id.* at 922-23 (citations omitted); *see also Arreola v. Godinez,* 546 F.3d 788, 796 (7th Cir. 2008). An amendment is "futile if it sets forth facts or legal theories that are redundant, immaterial, or unresponsive to the allegations in the complaint." *Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust,* 290 F.3d 843, 850 (7th Cir. 2002). "[T]he district court's decision to grant or deny a motion for leave to file an amended pleading is 'a matter purely within the sound discretion of the district court.'" *Guise v. BWM Mortgage, LLC,* 377 F.3d 795, 801 (7th Cir. 2004) (citation omitted); *see also Schor v. City of Chicago,* 576 F.3d 775, 780 (7th Cir. 2009).

Rule 12(c) motions for judgment on the pleadings differ from Rule 12(b) motions to dismiss because they are brought after the pleadings are closed. *See* Fed. R. Civ. P. 12(c); *Buchanan-Moore v. County of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009). Despite the difference in timing, the Court reviews Rule 12(c) motions under the same standards that apply to motions to dismiss under Rule 12(b)(6). *See Buchanan-Moore,* 570 F.3d at 827; *Pisciotta v. Old Nat'l Bancorp,* 499 F.3d 629, 633 (7th Cir. 2007). Under Rule 12(c), the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Buchanan-Moore*, 570 F.3d at 827; *Pisciotta,* 499 F.3d at 633. A motion for judgment on the pleadings should be granted "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Buchanan-Moore,* 570 F.3d at 827 (citation omitted).

## ANALYSIS

The present motions concern Yahoo's and Hotels.com's allegations that the patents-in-suit are unenforceable due to Civix's inequitable conduct in prosecuting these patents. To clarify, "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO], which includes a duty to disclose to the [PTO] all information known to that individual to be material to patentability...." 37 C.F.R. § 1.56(a). The elements of inequitable conduct in breach of this duty can be shown if a patent applicant: (1) made an affirmative misrepresentation of material fact, submitted false material information, or failed to disclose material information; and (2) intended to deceive the PTO. *See Rentrop v. Spectranetics Corp.,* 550 F.3d 1112, 1119 (Fed. Cir. 2008); *Praxair, Inc. v. ATMI, Inc.,* 543 F.3d 1306, 1314 (Fed. Cir. 2008).

In its present motion, Civix argues that the Court should deny Defendants' motions to amend their answers and counterclaims because any amendment would be futile and that the Court should grant judgment on the pleadings in its favor as to Defendants' inequitable conduct claims and defenses. In particular, Civix maintains that the newly alleged inequitable conduct counterclaims and affirmative defenses, as well as the earlier inequitable conduct counterclaims and affirmative defenses, do not meet Rule 9(b)'s heightened pleading requirements. *See Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312 (Fed. Cir. 2009). Thus, at issue is whether Defendants have alleged their inequitable conduct counterclaims and defenses with sufficient particularity under Rule 9(b). *See id.* at 1318 ("Whether inequitable conduct has been pleaded with particularity under Rule 9(b) is a question governed by Federal Circuit law"); *Central Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions, P.C.,* 482 F.3d 1347, 1356 (Fed. Cir. 2007) (same).

Federal Rule of Civil Procedure 9(b) requires that a plaintiff plead "the circumstances constituting fraud" with "particularity," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). Although inequitable conduct is a "broader concept than fraud," the Federal Circuit has long held that a party must plead inequitable conduct with particularity. *See Central Admixture*, 482 F.3d at 1356-57; *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC,* 350 F.3d 1327, 1344 (Fed. Cir. 2003). In *Exergen*, the Federal Circuit reiterated the requirements of Rule 9(b) – a "pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Id.* at 1326-27. The Federal Circuit further explains, as "the Seventh Circuit has held, the

'circumstances' in Rule 9(b) must be set forth with 'particularity,' i.e., they 'must be pleaded in detail' – '[t]his means the who, what, when, where, and how' of the alleged fraud." *Id.* at 1327 (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990)); *see also Rao v. BP Prods. N. Am., Inc.,* 589 F.3d 389, 401 (7th Cir. 2009). Indeed, the *Exergen* decision adopts the Seventh Circuit's Rule 9(b) standard, holding that "pleading inequitable conduct in patent cases [] requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327.

The *Exergen* decision further explains that "Rule 9(b) also states that '[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally' [and that the] relevant 'conditions of mind' for inequitable conduct include: (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO." *Id.* at 1327. "Although 'knowledge' and 'intent' may be averred generally, our precedent, like that of several regional circuits, requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id.* (citing *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP,* 475 F.3d 824, 833 (7th Cir. 2007)). "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Exergen Corp.,* 575 F.3d at 1329 n.5. Meanwhile, in "contrast to the pleading stage, to prevail on the merits, the accused infringer must prove both materiality and intent by clear and convincing evidence." *Id.; see also Vita-Mix Corp. v. Basic Holding, Inc.,* 581 F.3d 1317, 1332 (Fed. Cir. 2009) ("Both intent and materiality must ultimately be proven by clear and convincing evidence."). Finally, the *Exergen* decision instructs that "[p]leading on 'information and belief'

is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Id.* at 1330-31.

## I.      Previously Raised Bases for Inequitable Conduct[1]

### A.      NavTech Litigation

Defendants maintain that Civix failed to disclose, or inadequately disclosed, to the PTO material information relating to litigation with Navigation Technologies ("NavTech"), which concerned the parent patent – U.S. Patent No. 5,682,525 (the "'525 patent") – to the '622, '307, and '291 patents while the prosecutions of these patent applications were pending.  First, Hotels.com specifically alleges:

> Just prior to the *NavTech* litigation, NavTech attempted to provoke an interference at the PTO between itself and CIVIX by filing U.S. Patent Application No. 09/179,299 (the "Interference Application").  NavTech sought to have itself declared as the first and true inventor of certain mapping technologies described in both the Interference Application and the issued '525 patent.

(R. 515-1, Hotels.com Amend. Ans., Affirm. Def./Countercl. ¶ 18.)  Similarly, Yahoo alleges:

> On October 27, 1998, NavTech attempted to provoke a patent interference at the Patent Office between it and CIVIX by filing U.S. Patent Application no. 09/179/299 (the "'299 application").  The purpose of the application was to have NavTech declared the first inventor of certain mapping technologies described in the '299 application, owned at the time by NavTech, and U.S. Patent No. 5,682,525 (the "'525 patent"), owned by CIVIX.

(529-1, Yahoo Amend. Ans., Affirm. Def. ¶ 42.)

---

[1]  Civix divided Defendants' inequitable conduct claims into six categories, and, although there is overlap within these categories, the Court will address Civix's six separate arguments in turn.

Second, Defendants allege that Civix possessed the NavTech conception documents. In particular, Yahoo alleges:

> In order to settle the lawsuit and contemplated interference, CIVIX and NavTech entered into a settlement agreement on January 18, 2000. Under the settlement agreement, NavTech agreed to assign the '299 application to CIVIX, and to provide documents to CIVIX relating to NavTech's conception and reduction to practice of the invention described in the '299 application and '525 patent (the "NavTech Conception Documents"). On information and belief, NavTech fulfilled both of these commitments.

(Yahoo Affirm. Def. ¶ 46.) Yahoo further alleges:

> The prosecution histories of the '622, '307, and '291 patents show no record that: a) CIVIX told the Patent Office examiner who was handling the prosecution of these patents about the CIVIX – NavTech lawsuit, the contemplated interference, or the settlement; b) CIVIX provided the Patent Office examiner with the settlement agreement or the NavTech Conception Documents; and c) the Patent Office examiner otherwise knew about the CIVIX – NavTech lawsuit, the contemplated interference, the settlement, or the NavTech Conception Documents.

(*Id.* ¶ 47.) Likewise, Hotels.com alleges:

> The '622, '291, and '307 patents ("the CIVIX patents") are unenforceable because CIVIX, W. Lincoln Bouve, William T. Semple, Steven W. Oxman, and the prosecuting attorneys, including Curtis Vock, failed to comply with their duties of candor and good faith. Breach of the duties of candor, good faith, and honesty when prosecuting patent applications constitutes inequitable conduct. Thus, CIVIX engaged in inequitable conduct, and in doing so intentionally deceived the United States Patent and Trade Office ("PTO") and its examiners into issuing patent claims that are unenforceable. Intent to deceive is generally inferred from the facts and circumstances surrounding a knowing failure to disclose material information.
>
> According to section 2001.06(c) of the Manual of Patent Examining Procedure ("MPEP"), "[w]here the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom *must be brought to the attention of the [PTO]*." (emphasis added). Nevertheless, the prosecution histories of the '622, '307, and '291 patents contain no evidence that CIVIX informed the PTO about the *NavTech* litigation or the Interference Application.

(Hotels.com Affirm. Def./Countercl. ¶¶ 16, 19; *see also* ¶ 20.)

Viewing these well-pleaded allegations as true and construing all reasonable inferences in a light most favorable to Defendants – as the Court is required to do at this procedural posture – Yahoo and Hotels.com have alleged the who, what, when, where, and how concerning Civix's alleged failure to disclose material information concerning the NavTech litigation to the PTO during the prosecution of the '622, '307, and '291 patents. *See Makor Issues & Rights, Ltd. v. Tellabs Inc.,* 513 F.3d 702, 705 (7th Cir. 2008) ("Even when a plaintiff is required by Rule 9(b) to plead facts (such as the when and where of an alleged fraudulent statement), the court must treat the pleaded facts as true and 'draw all reasonable inferences in favor of the plaintiff.'") (citation omitted); *see also Pisciotta,* 499 F.3d at 633. Specifically, Defendants have alleged that the prosecuting attorneys, including Curtis Vock, along with Civix inventors – W. Lincoln Bouve, William T. Semple, and Steven Oxman – failed to disclose material information, namely, the existence of the Nav-Tech litigation, the interference application, the Nav-Tech settlement, and the conception documents, to the PTO while Civix was prosecuting the '622, '307, and '291 patents during the time period of 1999 and 2000.

Moreover, Yahoo and Hotels.com have sufficiently alleged circumstances concerning Civix's overall conduct in prosecuting the '622, '307, and '291 patents from which the Court can reasonably infer that Civix acted with the requisite intent. *See Exergen*, 575 F.3d at 1327, 1330. In particular, Defendants allege that based on NavTech's assertion that it was the first inventor of the subject matter covered by the '622, '307, and '291 patents, Civix, through its inventors and prosecuting attorneys, knew the NavTech litigation information was highly material. *See Bruno Indep. Living Aids, Inc. v. Acorn Mobility Serv., Ltd.,* 394 F.3d 1348, 1354 (Fed. Cir. 2005)

("intent to deceive is generally inferred from the facts and circumstances surrounding a knowing failure to disclose material information"); *see also Praxair,* 543 F.3d at 1313-14 (inference to deceive appropriate when highly material information is withheld and applicant knew of information).  In other words, Defendants' factual allegations support a reasonable inference that Civix's inventors and prosecuting attorneys knew of the materiality of the NavTech litigation, yet withheld it.  *See Exergen,* 575 F.3d at 1330.  Because Defendants have sufficiently alleged this basis for their inequitable conduct counterclaims and affirmative defenses pursuant to the mandates of *Exergen* and Rule 9(b), the Court denies Civix's Rule 12(c) motion for judgment on the pleadings and grants Defendants' motion for leave to file amended answers and counterclaims on this basis.

### B. Microsoft Litigation

Next, Yahoo and Hotels.com allege that Civix engaged in inequitable conduct by withholding materials from Civix's prior litigation with Microsoft – known as the "Microsoft litigation" or the "Colorado litigation" – from the PTO during the prosecution of the '622, '307, and '291 patents.  The Microsoft litigation involved the '525 patent.

In its inequitable conduct claims and defenses, both Hotels.com and Yahoo allege that Civix failed to inform the PTO examiner about the Microsoft litigation, including the fact that the Colorado court construed terms of the '525 patent that are also present in the '622, '307, and '291 patents.  *See CIVIX v. Microsoft Corp.*, 84 F. Supp. 2d 1132 (D. Colo. 2000).  Hotels.com further alleges that Civix's failure to disclose the Microsoft litigation to the PTO examiner violates section 2001.06(c) of the MPEP.  Hotels.com specifically alleges that:

> CIVIX similarly failed to disclose the court's opinion granting defendants'
> motion for summary judgment on the issue of non-infringement of the '525

patent.  In fact, CIVIX apparently tried to hide those rulings:  the Information Disclosure Statements ("IDS") provided by CIVIX in connection with the prosecution of the '622, '307, and '291 patents fail to disclose the *Microsoft* litigation.  And although CIVIX may claim to have discussed the *Microsoft* litigation in oral conversations with the Examiner, the MPEP specifically provides that disclosures to the PTO must be in writing.  *See* MPEP § 2002.02.  What is more, even the written interview summaries of those oral conversations do not refer to any discussion of the *Microsoft* litigation.  Further, CIVIX had an opportunity to enter a written record of their alleged discussions with the Examiner into the prosecution history, but never did so.  CIVIX did not disclose, or did not adequately disclose, the *Microsoft* litigation to the PTO.

...

In the fall of 1999, the defendants in the *Microsoft* litigation filed motions for summary judgment of patent invalidity regarding the '525 patent.  Microsoft itself filed one such motion on November 5, 1999, which motion identified three specific pieces of prior art that Microsoft alleged invalidated various claims of the '525 patent.  CIVIX's previous IDS's had not identified any of that prior art.

(Hotels.com Affirm. Def./Countercl. ¶¶ 21, 22, 25; *see also* ¶¶ 16, 17.)

In its proposed Amended Answer and Counterclaims, Yahoo similarly sets forth the following allegations concerning the Microsoft litigation:

After construing terms in the '525 and '170 patents, the district court denied CIVIX's motion for summary judgment of infringement of both patents, and granted, in two separate orders, the defendants' summary judgment motions for non-infringement of both patents.  The district court did not rule on the defendants' invalidity summary judgment motions, finding them moot.

The prosecution histories of the '622, '307, and '291 patents show no record that: a) CIVIX informed the Patent Office examiner who was handling the prosecution of these patents about the existence of the Colorado case; the invalidity summary judgment motions which cited pertinent prior art concerning the '525 patent, the parents of the patents at issue here; or the district court's claim construction/summary judgment order; and b) the Patent Office examiner otherwise knew about the Colorado case, the summary judgment motions, or the district court's order.

...

On information and belief, CIVIX, including its principal Mr. Semple, knew this information, and knew it was material and noncumulative.  As the principal behind CIVIX, Mr. Semple was involved with the Colorado case.

On information and belief, CIVIX, including its principal Mr. Semple, intended to mislead or deceive the Patent Office by withholding or inadequately disclosing this material, noncumulative information.

(*See* Yahoo Affirm. Def. ¶¶ 50-57.)

Construing these well-pleaded allegations as true and all reasonable inferences in Defendants' favor, Yahoo and Hotels.com have sufficiently alleged that Civix withheld highly material litigation documents in which a federal judge had construed the meaning of terms that appeared in the relevant claims before the PTO examiner. *See* Manual of Patent Examining Procedure ("MPEP") Section 2001.06(c) ("Where subject matter for which a patent is being sought is, or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the Patent and Trademark Office"). As the Federal Circuit explains, the existence of such litigation "is important because it signals the examiner that other material information relevant to patentability may become available through the litigation proceedings." *Nilssen v. Osram Sylvania, Inc.,* 504 F.3d 1223, 1234 (Fed. Cir. 2007). Moreover, Defendants sufficiently allege that the Civix inventors – Semple, Bouve, and Oxman and the prosecuting attorneys, including Curtis Vock (who) – knew of the Microsoft litigation, including the district court's interpretation of the relevant claims terms (what), as well as the materiality of the Microsoft litigation, yet they failed to disclose this information to the PTO examiner. *See Exergen,* 575 F.3d at 1330; *see also Civix-DDI, LLC,* 387 F.Supp.2d at 908 ("Civix [was] undeniabl[y] familiar[] with the events in the Colorado and NavTech litigation.").

In addition, Yahoo and Hotels.com also have sufficiently alleged the when, where, and how concerning Civix's alleged failure to disclose material information concerning the

Microsoft litigation to the PTO during the prosecution of the '622, '307, and '291 patents. *See*

*Exergen,* 575 F.3d at 1327. Specifically, the "when" is between 1999 and 2002, the "where" is

in the District Court in Colorado and at the PTO, and the alleged "how" is that Microsoft

litigation documents would have informed the PTO examiner's interpretation of prior art and

enabled the PTO examiner to compare it to the alleged invention in the '622, '307, and '291

patents. *See id.* at 1329-30. As such, the Court denies Civix's motion for judgment on the

pleadings and grants Hotels.com's and Yahoo's motions for leave to amend their counterclaims

and affirmative defenses based on Civix's alleged failure to disclose the Microsoft litigation to

the PTO examiner.

### C. Burying References

During the prosecution of the '291 and '307 patents, Yahoo and Hotels.com maintain that

Civix submitted Information Disclosure Statements ("IDS") to the PTO containing

approximately 598 prior art references, thus burying the Microsoft-cited prior art in what the

Examiner described as "a mountain of material including approximately 244 U.S. patents, 64

published patent applications, and 290 non-patent references." (*See* Hotels.com Affirm.

Def./Countercl. ¶ 26). Specifically, Hotels.com alleges that Civix intended to deceive or mislead

the PTO when it either "(i) submitted a mountain of largely irrelevant material to the Examiner

and then failed to inform the Examiner which material was most relevant, or (ii) submitted no

IDS at all." (*Id.* ¶ 30.)

Furthermore, Yahoo alleges that Civix initially failed to disclose to the PTO the prior art

references discussed in the invalidity summary judgment motions from the Microsoft litigation.

Instead, Civix subsequently filed lengthy IDSs in the '307 and '291 prosecution that buried the

relevant prior art.  Civix, according to Yahoo, never filed an IDS in the '622 prosecution.  In particular, Yahoo alleges:

> In an office action on August 21, 2001, the Patent Office examiner noted that:  Since [the CIVIX] applicants have filed the IDS, it can be reasonable [sic] inferred that they are more likely to know which of the 598 references are relevant to the claimed invention.

> The Patent Office examiner also noted in that office action that:  a[n] applicant's duty of disclosure of material information is not satisfied by presenting a patent examiner with "a mountain of largely irrelevant [material] from which he is *presumed* to have been able . . . to have found the critical [material].  It ignores the real world conditions under which examiners work." (italics in case examiner is quoting.)
> ...

> The prosecution histories of the '622, '307, and '291 patents show no record that:  a) CIVIX identified specifically the most relevant prior art references to the Patent Office examiner who was prosecuting these patents, either by clarifying its IDSs or otherwise; b) CIVIX discussed specifically with the Patent Office examiner the prior art identified in the invalidity summary judgment motions; and c) the Patent Office examiner knew which specific prior art CIVIX thought was the most relevant, based on CIVIX's IDSs or otherwise.

> ...

> On information and belief, CIVIX, including its principal Mr. Semple, knew this information, and knew it was material and noncumulative.  As the principal behind CIVIX, Mr. Semple was involved with the Colorado case. On information and belief, CIVIX, including Mr. Semple, intended to mislead or deceive the Patent Office by withholding or inadequately disclosing this material, noncumulative information.

(*See* Yahoo Affirm. Def. ¶¶ 58-68, *see also* Hotels.com Affirm. Def./Countercl. ¶¶ 25, 27-29.)

In its motion for judgment on the pleadings, Civix argues that Defendants do not identify the references which Civix buried or the who, what, where, why, and how as to the specific information in those references.  Civix also argues that its prosecuting attorney had no obligation to inform the PTO examiner which material was most relevant – which is an argument

concerning the underlying merits of Defendants' allegations – not whether Defendants sufficiently alleged their counterclaims and affirmative defenses under Rule 9(b). *See Alexander v. City of Chicago,* 994 F.2d 333, 336 (7th Cir. 1993) ("appropriate standard" when attempting "to dispose of the case on the basis of the underlying substantive merits" is "that applicable to summary judgment"). Indeed, Civix attempts to make other arguments based on the merits of Defendants' allegations throughout its Rule 12(c) motion, which are best left for summary judgment or trial. *See id.*

In any event, despite Civix's argument to the contrary, Defendants have sufficiently alleged with particularity that Civix's prosecuting attorney, Curtis Vock, filed a February 12, 2007 IDS and a January 17, 2002 IDS in connection with the prosecution of the '307 and '291 patents that contained approximately 598 prior art references in which Civix failed to identify the relevant prior art pertaining to invalidity, namely, the Microsoft-cited prior art. In fact, Civix was on notice that the Colorado pleadings would have pinpointed the most pertinent of the prior art for the examiner to consider. *See Civix-DDI, LLC,* 387 F.Supp.2d at 906. Further, Yahoo and Hotels.com allege that the PTO examiner specifically requested a clarification or explanation of the prior art references, and thus sufficiently allege with particularity the materiality of submitting a "mountain" of prior art. *See id.* at 907-08. Last, Defendants sufficiently allege that Civix intended to deceive or mislead the PTO during the prosecution of the '622, '307, and '291 patents because it submitted a mountain of largely irrelevant material to the PTO examiner and then failed to inform the PTO examiner which material was relevant, and, in the case of the '622 patent, submitted no IDS at all. In sum, Defendants' factual allegations support a reasonable inference that prosecuting attorney Vock attempted to deceive the PTO

examiner by burying the highly relevant Microsoft-cited prior art in its submissions to the PTO. *See Exergen,* 575 F.3d at 1330.  The Court thus denies Civix's motion for judgment on the pleadings and grants Defendants' motions for leave to amend on this basis.

> ### D.      Misrepresentation of Prior Art

In its motion for judgment on the pleadings, Civix argues that the Court should dismiss Yahoo's allegations that Civix was untruthful to the PTO about the factual teachings of the approximately 598 prior art references with regard to the prosecution of the '307 patent.  Yahoo alleges that Civix's patent attorney had an interview with the PTO examiner on October 17, 2001 regarding the prosecution of the '307 patent in which he provided false "indications" about the prior art references.  According to the PTO examiner's interview summary:

> The examiner . . . indicated that the fetching of spatial data from a remote database through a remote port for directional purposes and link is not taught by the applied prior art of record.  The examiner suggested that the Applicant file [an] amendment by incorporating these features.

(Yahoo Affirm. Def. ¶ 70.)

Yahoo also alleges that following the interview the Patent Office examiner issued a Notice of Allowance for the '307 patent on December 17, 2001, stating:

> The prior art of record, as discussed at length in the interview dated October 17, 2001, teaches the retrieval of spatial item[s] of interest, however, [it] does not teach the fetching of the item from a remote database as claimed.

> Claim 38, the only pending independent claim recites "a port" that is located at a "second location" and a "database" of spatial information of interest that is "not located at the second location."  The claim is allowed as being [a] unique combination of elements as recited.  The notable distinction over the prior art of record is that the database that is providing the spatial details for the item of interest is not located at the second location where the retrieving port is located. The examiner believes this particular feature meets the suggestion provided in the October 17, 2001 interview with the Applicants and his representative.  *The Applicant have [sic] also indicated that none of the references in the Information*

16

*Disclosure Statement, filed on February 8, 2001, teach the fetching of spatial data from a remote database as recited in the claims.* (italics added; underlining in original.)

Yahoo further alleges that the false information regarding the reference in the IDS was material to the question of patentability. (*See* Yahoo Affirm. Def. ¶¶ 69-75.)

Viewing these allegations as true and all reasonable inferences in Yahoo's favor, Yahoo sufficiently alleges that Civix's prosecuting attorney, Curtis Vock (who), made false statements (what) at an interview with the PTO examiner (where) on October 17, 2001 (when) with the intent to mislead or deceive the PTO when he indicated that none of the references in the IDS filed on February 8, 2001 teach the fetching of spatial data from a remote database as recited in the claims (what). Vock's statements to the PTO examiner were material because Yahoo alleges that the prior art **did** teach the fetching of spatial data from a remote database through a remote port for directional purposes (how). *See Civix-DDI, LLC*, 387 F.Supp.2d at 907-08. Finally, Defendants' factual allegations support a reasonable inference that Vock knew of the materiality of his misstatements because he was withholding highly material information pertaining to the prior art references. *See Praxair,* 543 F.3d at 1313-14; *Bruno,* 394 F.3d at 1354. The Court therefore denies Civix's motion for judgment on the pleadings and grants Defendants' motions for leave to amend on this basis.

## II. Inequitable Conduct Allegations Based on Reexamination Conduct

### A. Declaration Containing Bouve Signature

Next, Yahoo and Hotels.com base their allegations of inequitable conduct on a declaration signed by Civix inventors William Semple and Lincoln Bouve, which Defendants contend amounts to a material misrepresentation made to the PTO with the intent to deceive the

PTO into granting reexamination certificates. Defendants specifically argue that the

Semple/Bouve declaration includes an inherent representation that, by signing the declaration,

Bouve was competent to affirm and attest to the facts in the declaration. During this litigation,

however, Defendants contend that Civix has represented to them, in writing, that Bouve had

suffered multiple strokes, and thus was incompetent to provide testimony about the Civix

patents. Defendants thus argue that Civix's failure to provide this information regarding

Bouve's condition to the PTO when Civix provided the sworn declaration constituted inequitable

conduct.

More specifically, in its proposed Amended Answer and Counterclaims, Yahoo alleges:

> By submitting a declaration with Mr. Bouve's signature, Mr. Druce [the prosecuting attorney on reexamination] represented to the Patent Office that Mr. Bouve was competent to affirm and attest to the facts set forth in the declaration. In the current litigation, however, CIVIX's litigation counsel represented to defendants on June 12, 2007 that Mr. Bouve had suffered "at least two strokes." CIVIX's counsel further represented that Mr. Bouve was incapacitated and unfit to be deposed on the CIVIX patents and the purported inventions:
>
>> ***Mr. Bouve has suffered substantial memory loss and has difficulty speaking intelligibly.*** Given these impairments, it is quite difficult to make even basic contact with him. Indeed, our firm has been unable to speak to him yet . . . .

(Yahoo Affirm. Def. ¶ 81.)

Yahoo further alleges that both prosecuting attorney Druce and Semple, who co-signed

the swear-behind declaration, must have known of Bouve's diminished mental capacity, yet they

failed to alert the PTO of Bouve's condition during reexamination. Moreover, Yahoo maintains

that Bouve's diminished mental capacity was material to the Patent Office's determination of

patentability because "a reasonable examiner would have considered it important in deciding

whether to rely on Mr. Bouve's declaration and because false or misleading affidavits are

inherently material." (*See* Yahoo Affirm. Def. ¶¶ 81-85.) Hotels.com's allegations are equally detailed and mirror Yahoo's allegations. (*See* Hotels.com Affirm. Def./Countercl. ¶¶ 32-38.) Hotels.com further alleges that the swear-behind declaration was material to the PTO because it "effectively removes Hershey, U.S. Patent 5,482,535 as a prior art reference." (*Id.* ¶ 37.)

In its motion for judgment on the pleadings, Civix does not argue that Defendants have failed to sufficiently allege the who, what, when, where, and how or the requisite intent for inequitable conduct. Instead, Civix's argues that Defendants' position is based on a misrepresentation of Civix's letter to Yahoo, namely, that Bouve was not incapacitated or unfit to give a deposition. Civix's arguments, however, attack the veracity of Defendants' factual allegations, not whether Defendants sufficiently alleged this claim under the mandates of *Exergen* and Rule 9(b). At this juncture, the Court must view Defendants' allegations as true and construe all reasonable inferences in Defendants' favor. *See Makor Issues & Rights*, 513 F.3d at 705. Civix may challenge the merits of Defendants' inequitable conduct claims, as well as Defendants' factual allegations, at summary judgment or trial. *See Alexander,* 994 F.2d at 336. The Court denies Civix's motion for judgment on the pleadings and grants Defendants' motions for leave as to the Bouve Declaration.

### B.      Semple Internet Declaration

Finally, Yahoo and Hotels.com base their inequitable conduct defenses and counterclaims on Semple's declaration regarding the distinction between "internet" and "Internet." Defendants maintain that the Semple Internet declaration wrongfully represents to the PTO that "Internet" and "internet" have the same narrow meaning, contrary to positions Civix has advanced in the present litigation and the *Expedia* litigation.

19

Yahoo specifically alleges:

> "[O]n January 21, 2009, and again in connection with the reexamination proceedings for the '622, '307, and '291 patents, Mr. Semple signed a declaration (the "Internet declaration") on behalf of CIVIX to set forth his "intent and understanding as an inventor and person of ordinary skill in the relevant art. . . concerning the meaning and use of the capitalized version of 'Internet' versus the non-capitalized version, 'internet'" when the claimed inventions were allegedly conceived. The term "internet" is found throughout the common specification of all three patents. The term "Internet" is recited in the claims of the '622 and '291 patents that survived reexamination.

> In the Internet declaration, Mr. Semple alleged that the terms "internet" and "Internet" were used interchangeably at the time of the alleged invention:

>> In the early 1990s, including 1994, as the Internet was becoming ore well known, ***it was common to use the two different versions (capitalized/non-capitalized) of the word "internet" interchangeably when making reference to the publicly accessible, global interconnection of computer networks which is today more consistently referred to using the capitalized version, "the Internet."*** This is not only my opinion as an inventor and person of ordinary skill in the art, but is also consistent with and supported in literature from that period[.]

(Yahoo Affirm. Def. ¶¶ 87-88.)

Yahoo further alleges that Semple's positions in his Internet declaration directly contradicted Civix's arguments to the Court during claim construction in the *Expedia* litigation, in which the Court stated:

>> The parties agree that the Court should construe "internet" as "a group of networks that have been connected by means of a common communications protocol." The Court will adopt this construction. The parties disagree, however, on the construction of the term "Internet." In its briefing, ***CIVIX argues that a distinction exists between "internet" and "Internet.".*** . . Defendants, however, argue that both "internet" and "Internet" have the same construction.

(Yahoo Affirm. Def. ¶ 89.) Yahoo also maintains that during reexamination, Semple submitted

his Internet declaration to the PTO conflating the meanings of "Internet" and "internet" and that Civix's conflicting positions were highly material to patentability of the pending claims on reexamination. (*See* Yahoo Affirm. Def. ¶¶ 87-94.) Hotel.com's allegations concerning the Semple Internet declaration are similar and equally detailed. (*See* Hotels.com Affirm. Def./Countercl. ¶¶ 39-47.)

Again, Civix does not argue that Defendants failed to provide the who, what, when, where, and how supporting their allegations of inequitable conduct or that Defendants did not allege the requisite intent. Indeed, the Court would be hard-pressed to conclude that Yahoo and Hotels.com failed to sufficiently allege their inequitable conduct claim based on their detailed allegations concerning the Semple Internet declaration. Instead, Civix argues that Semple's Internet declaration is entirely consistent with his testimony during the claim construction in the *Expedia* litigation. Whether Semple's Internet declaration is consistent with his testimony in *Expedia* goes to whether Defendants' factual allegations are true, not whether Defendants have pleaded their inequitable conduct claims and defenses with particularity under Rule 9(b), which they have done. *See Exergen,* 575 F.3d at 1327; *Central Admixture,* 482 F.3d at 1356. Thus, the Court denies Civix's motion for judgment on the pleadings as to the Semple Internet declaration and grants Defendants' motions for leave to amend.

**CONCLUSION**

For the reasons discussed above, the Court denies Civix's motion for judgment on the pleadings (R. 531-1) and grants Yahoo's and Hotels.com's motions for leave to amend their answers and counterclaims.  (R. 514-1, 529-1.)

**Dated:**  February 1, 2010

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**