**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CIVIX-DDI, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 05 C 06869 |
| | ) | |
| v. | ) | Hon. Amy J. St. Eve |
| | ) | |
| HOTELS.COM, L.P. and HOTELS.COM | ) | |
| GP LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

Plaintiff Civix-DDI, L.L.C., accuses Defendants, Hotels.Com, L.P., and Hotels.Com GP, L.L.C., of infringing U.S. Patents Nos. 6,385,622 (the '622 patent) and 6,415,291 (the '291 patent). (R. 203.) The parties have jointly stipulated to the meaning of ten terms, namely "advertising information about a business," "geographic vicinity," "information controller," "items of interest," "port," "remotely," "request signal representative of a selected category and geographic vicinity," "spatial detail," "supplying," and "user interface." (R. 612 at 1-2; R. 642 at 4-7.) They contest the meaning of eight terms that are of importance to the asserted claims of the '622 and '291 patents. The disputed terms are "associated category," "connected to," "database," geographic/geographical position," "internet," "user," "video," and "within a radius about the one port." (R. 642 at 4-7.) The parties have tendered their respective claim-construction briefs and the Court is now prepared to rule on the legal meaning of the relevant terms.

For the reasons explained below, the Court construes the contested claims as follows:

- "Associated category" means "a classification both stored in the database and provided or selected by a user that divides particular items of interest into subgroups"

- "connected to" means "joined together or linked to, in a direct or indirect manner"

- "database" means "a collection of related information organized for convenient access"

- geographic/geographical position" means "a place within a geographic vicinity"

- "internet" means "a system of linked computer networks, worldwide in scope, that is typically associated with using TCP/IP as a standard protocol"

- "user" means "a human being"

- "video" means "a presentation of multiple sequential frames of image data"

- "within a radius about the one port" means "within a circular area the center of which is the user's present physical location"

## BACKGROUND

The Court presumes familiarity with its previous orders in this litigation and the related *Expedia* litigation, s*ee Civix-DDI, L.L.C. v. Hotels.Com, L.P. et al.*, 711 F. Supp. 2d 839 (N.D. Ill. 2010); *Civix-DDI, L.L.C. v. Cellco P'ship*, 387 F. Supp. 2d 869 (N.D. Ill. 2005), but nevertheless provides the following account of the proceedings leading up to the this opinion.

On August 24, 2006, Civix filed a Second Amended Complaint, alleging that Defendants had infringed the '291 and '622 patents, as well as other intellectual-property rights that are no longer pertinent to the present case. (R. 203.) On September 17, 2007, the Court stayed the present litigation pending the Patent and Trademark Office's ("PTO") *ex parte* reexamination of the '291, '622, and other patents. (R. 493 at 1.) Reexamination certificates were issued for the

'622 and '291 patents, which cancelled many, though not all, of the claims. (R. 494-2; R. 494-3.) As a result, Civix now asserts only claims 18, 22, and 23 of the '291 patent, as well as claims 20 and 26 of the '622 patent, against Defendants. (R. 625 at 8.) As noted above, the Court has accepted a joint stipulation of the parties as to ten terms relevant to these claims. (R. 612 at 1-3.) The parties remain at issue as to eight terms that are pertinent to the asserted claims. The matter being fully briefed, the Court now adopts the appropriate construction of the relevant claims.

## LEGAL STANDARD

It is, of course, well established that innovators receive patent protection not for what they actually invent, but what they claim. *See, e.g.*, Dan L. Burk & Mark A. Lemley, *Fence Posts or Sign Posts? Rethinking Patent Claim Construction?*, 157 U. PA. L. REV. 1743, 1744 (2009). Determining the boundaries of a patentee's exclusive rights depends necessarily on how the relevant claims are construed, which, since 1996, has been a question of law for the courts. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996).

Although "claim construction frequently poses difficult questions over which reasonable minds may disagree," (*Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010)), district courts are not bereft of guidance. The Federal Circuit issued its definitive opinion, *en banc*, on the subject of claim construction in 2005. *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In that decision, the Federal Circuit reoriented the claim-construction process toward intrinsic evidence, including the specification and the words of the claims themselves, giving them their ordinary and customary meaning. That construction, the court explained, is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313. The person of ordinary skill in the art is

assumed to read the claim terms "in the context of the entire patent, including the specification." *Id.* Unless the meaning of the claim language is "readily apparent even to lay judges" (*id.* at 1314), the court should "rely heavily" on the written description. *Id.* at 1317. In addition to reading the claims in the context of the specification, district courts may also consider the prosecution history. *Id.* at 1317. Courts must, however, be mindful that the prosecution history represents an "ongoing negotiation," such that it "often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* Extrinsic evidence, such as dictionaries, treatises, expert testimony, and inventor testimony, can be useful in claim construction. *Id.* at 1317-18. Nevertheless, such evidence is, "in general[,] . . . less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* at 1318. Despite acknowledging the soundness of the purpose underlying the *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002) line of cases, which was "to avoid the danger of reading limitations from the specification into the claim," the *en banc* court declined to follow the *Texas Digital* methodology because of its "greater emphasis to dictionary definitions of claim terms" and its granting "a less prominent role to the specification and the prosecution history." *Id.* at 1319-24.

## ANALYSIS

I.     **"Associated Category" Means "A Classification Both Stored In The Database And Provided Or Selected By A User That Divides Particular Items Of Interest Into Subgroups"**

The first disputed term is "associated category." Plaintiff propounds the construction: "A class within which items of interest have an established relationship in a database." (R. 642 at 4.) Hotels.com advocates an opposing construction: "A classification both stored in the database

and provided or selected by a user that divides particular items of interest into subgroups." (*Id.*) The Court adopts Hotels.com's construction.

In construing the term, the Court looks to the intrinsic evidence. *Phillips*, 415 F.3d at 1311-12. The relevant question is the meaning that a person of ordinary skill in the art would ascribe to "associated category" "not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313.

## A.     "Associated Category" As Used Within the Patent Document

The relevant patents' "summary of the invention" provides that, "[i]n one aspect, the invention provides a system for remotely determining the position of a selected category of items of interest in a selected geographic vicinity from a database. A database stores information about a plurality of items of interest, including, for each of the items of interest, positional coordinates, a geographic vicinity, and at least one associated category." (R. 627-2 at 29; R. 626-2 at 17.)[1]

_____

[1] The patents' "detailed description" specifies that "the information within the database . . . includes . . . at least one associated category. . . . the associated category in this example is "computer products." (R. 627-2 at 31; R. 626-2 at 18-19.) The detailed description continues: "In one preferred aspect of the invention, the display 30 is centered relative to the location of the user . . . in this embodiment, the display 30 is generated with the hotel 36 at the center of the display . . . and the selected items of interest in the associated category are displayed on streets relative to the hotel 36." (R. 627-2 at 31; R. 626-2 at 19.) It further provides: "[W]hen the user is located within the geographic vicinity . . . a user can locate any of the items of interest relative to the hotel 36 and display items of interest in the associated category, e.g., computer products, through a street map connecting streets to and from the hotel 36." (R. 627-2 at 31; R. 626-2 at 19.) The role of the written description is considered in more detail below.

**B.      The Court Is Not Bound By The *Expedia* Litigants' Stipulation As To The Meaning Of "Associated Category," Since Hotels.com Was Neither A Party, Nor Privy To Parties, In That Case**

In prior litigation, Civix accused Expedia, Inc., Travelscape, Inc., and Verizon Information Servs., Inc., of infringing the '622 and '291 patents.  Pursuant to that lawsuit, the parties stipulated to the construction of "associated category," which they agreed meant "[a] class with which items of interest have an [sic] relationship in a database."  (Civix-DDI, L.L.C. v. Expedia, Inc., et al., 03-CV-3792, R-264 at 3.)  The Court accepted that agreed, proposed construction.  *Civix-DDI, L.L.C. v. Cellco P'ship*, No. 03-CV-3792, 2005 WL 831307, at *2 (N.D. Ill. Apr. 6, 2005).

Civix urges the Court to adhere to that prior stipulation.  (R. 633 at 17.)  In considering the proper construction of "associated category," the Court places little weight on that earlier agreement because Defendants in the present case were neither parties in *Expedia* nor were they in privity with those parties.  *See Nilssen v. Motorola*, 80 F. Supp. 2d 961, 924 n.4 (N.D. Ill. 2000); *see also Fuji Photo Film Co., Int'l Trade Comm'n*, 386 F.3d 1095, 1101 (Fed. Cir. 2004); *cf. Verizon California, Inc. v. Ronald A. Katz Tech. Licensing, P.A.*, 326 F. Supp. 2d 1060, 1069 (C.D. Cal. 2003) (noting that another district court's prior claim construction did not have issue-preclusive effect as asserted against a nonparticipant in the earlier litigation, but nevertheless concluding that "to the extent that the AT & T Order addresses identical or similar issues of claim construction, it can be viewed as persuasive and highly relevant, rather than binding, authority").

### C. The Intrinsic Evidence Supports Defendants' Proposed Construction

The intrinsic evidence, in particular the specification, supports Defendants' proposed construction of "associated category." In contrast, the definition advocated by Civix is somewhat indeterminate and ultimately begs the question that the claim-construction process is supposed to answer. Specifically, what is the meaning of "relationship" in "[a] class with which items of interest have an established relationship in a database"? Hotels.com proffers a construction that fits with the claims and specification. The Court therefore construes the term to mean "a classification both stored in the database and provided or selected by a user that divides particular items of interest into subgroups."

### 1. "Associated Category" Means a Classification That Is "Stored" In The Database

The first issue is whether "associated category" involves, as Defendants contend, a classification that is "stored" in the database. (R. 642 at 4.) The summary of the invention provides that "[a] database *stores* information about . . . items of interest, including, for each of the items of interest, . . . at least one associated category." (R. 626-2 at 17; 627-2 at 29.) This provision clearly implies that "associated category" is information stored for each item of interest. *See PSN Illinois, L.L.C. v. Ivoclar Vivadent, Inc.*, 525 F.3d 1159, 1166 (Fed. Cir. 2008) (placing significant weight on the summary of the invention in engaging in claim construction).

### 2. "Associated Category" Means A Classification That Is "Provided or Selected By A User"

The second question is whether "associated category" involves a classification that is "provided or selected by a user." The Court concludes that it does. Civix seeks to negate this construction, contending that "Hotels.com's position that a user provides or selects the

'associated category' contradicts the plain language of the claims[,] which separately recite 'at least one associated category' and 'a selected category.'"  (R. 633 at 18.)

Civix's argument is foreclosed by the detailed written description of the '622 and '291 patents, which explicitly states: "FIG. 5 illustrates one embodiment of the invention wherein *a user selects the associated category* for the items of interest from a display menu of possible items of interest."  (R. 626-2 at 20; R. 627-2 at 32) (emphasis added).)  *See, e.g.*, *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1318 (Fed. Cir. 2006) (finding that the patentee was "not entitled to a claim construction divorced from the context of the written description"); *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1359-60 (Fed. Cir. 2005).

Although the claims speak separately of "associated category" and "selected category," (s*ee, e.g.*, R. 626-2 at 23 (claim 1)) this does not disprove Defendants' proposed construction because "selected category" refers to the "associated category" that the user has in fact selected.  Not only does the specification explicitly envision a user's selecting the associated category for the items of interest (R. 626-2 at 20; R. 627-2 at 32), it explains that the database stores information, including at least one "associated category," for each of the items of interest.  (R. 626-2 at 17; R. 627-2 at 29.)  It then states that "[t]he system also provides for transmitting a portion of the information . . . to a user . . . upon receipt of a request signal representative of a request signal representative of a selected category."  (*Id.*)  The Court agrees with Hotels.com that "the 'selected category' that is being requested and then transmitted to the user refers back to the 'associated category' that is stored in the database."  (R. 637 at 15.)

### 3. "Associated Category" Is A Classification "That Divides Particular Items Of Interest Into Subgroups"

The final question is whether "items of interest" are "divided into subgroups." Plaintiff says no; Defendants say yes. (R. 625 at 20.) Civix is correct to point out that neither the claims nor the specification contains the term "subgroup." (R. 633 at 18.) Defendants, however, characterize "items of interest" as groups and "associated categories" as subgroups. (R. 637 at 16.)

The specification supports Defendants' reading. As the summary of invention makes clear, a database stores information about items of interest and, for each of those items, that information includes at least one associated category. (R. 626-2 at 17; 627-2 at 29.) The fact that an "associated category" constitutes information about an item of interest certainly suggests the former may be regarded as a subset of the latter.

This reading is strengthened by the specification. The parties agree that items of interest include "stores," "products," and "restaurants." (R. 642 at 5.) Figure 5 identifies "hotels," "restaurants," "music stores," "computer products," "sporting-goods stores," and "jewelry stores" as "categories of items of interest." (R. 626-2 at 8.) The written description makes clear that these categories are "associated categories" that can be selected by the user. (R. 626-2 at 20; R. 627-2 at 32.) If "items of interest" are groups and "associated categories" are subgroups, then the two are not coterminous, even though the latter are subsumed within the former. This reading is borne out by the specification, which reveals that a user may select an associated category and so obtain information about a subset of items of interest that are within the user's geographic vicinity. An associated category may be thought of as the items of interest that are within the user's vicinity. In that respect, they are a subset (or subgroup) of broader items of

interest.

For instance, the description provides: "a user who is leaving Boston Logan Airport for Los Angeles International Airport (LAX) can access a port . . . at Logan and display, selectively, items of interest in an associated category relative to LAX. For example, if a user of the invention wishes to locate music stores upon arrival in Los Angeles, she can command the display of music stores relative to LAX so that they are easily located." (R. 626-2 at 20.) Similarly, the description states, with respect to Figure 2, that "a user can locate any of the items of interest relative to the hotel . . . and display items of interest in the associated category, e.g., computer products, through a street map connecting streets to and from the hotel." (R. 626-2 at 19.) Computer products are clearly an associated category. Yet, the parties' stipulated construction (as well as the summary of the invention) would provide that they are also items of interest, which are defined to include "products" and "other items which a user of the invention may wish to locate.' (R. 642 at 5; R. 626-2 at 17.) The paradox of the computer products' being both an associated category and items of interest is resolved by noting that, in Figure 2, the associated category relates only to those computer products that are relative to the hotel. In other words, associated category divides items of interest into subgroups.[2]

_____

[2] Elsewhere, the specification reveals that the items of interest contained within the associated category are a subset of the larger items of interest that may be available. It provides that, "[i]n one preferred aspect of the invention, . . . the *selected* items of interest in the associated category are displayed on streets relative to the hotel 36." (R. 626-2 at 19) (emphasis added). This implies that the "associated category" is larger than the *selected* items of interest, which by virtue of the qualifier "selected" are but a subset of other items of interest. The description also refers to Figure 2, which "shows one exemplary display . . . of information locating computer products in downtown Boston, Mass. Accordingly, the associated category in this example is 'computer products,' and in the illustrated display . . ., the geographic vicinity includes the selected items of interest, including . . . the two computer stores." (R. 626-2 at 19). Finally, the description states that "it is preferred, according to the invention, that a user's

## II.    "Connected To" Means "Joined Together Or Linked To, In A Direct Or Indirect Manner"

The parties contest the meaning of "connected to."  Civix argues that the term means "[j]oined together or linked to, in a direct or indirect manner."  (R. 642 at 4.)  Hotels.com submits instead that the term should simply be construed to mean "[d]irectly joined together." (*Id.*)  The Court agrees with Civix that "connected to" means "joined together or linked to, in a direct or indirect manner."

First, the term "connected" is unmodified in Claim 14 of the '291 patent (from which asserted Claim 23 depends).  (R. 633 at 21; R. 627-2 at 36.)  Hotels.com argues that "[t]he patents' specification illustrates that the invention's port must be directly connected to the database."  (R. 625 at 22.)  The Federal Circuit, however, has made clear that a construing court "must not go so far as to 'import limitations into claims from examples or embodiments appearing only in a patent's written description unless the specification makes clear that the patentee intends for the claims and the embodiments in the specification to be strictly coextensive.'"  *Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 792 (Fed. Cir. 2010) (quoting *Phillips*, 415 F.3d at 1323).  Hotels.com fails to demonstrate that the specification makes such an intention clear, and so the Court declines to import such a limitation.  *See also Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999) ("Canons of claim construction require that general descriptive terms will ordinarily be given their full meaning; modifiers will not be added to broad terms standing alone.").

Second, the claim language of which the disputed term is a part implies that either a

---

selected display of items of interest within an associated category and geographic vicinity is accessed hierarchically within the database."  (R. 626-2 at 20.)

direct or indirect connection will suffice.  Claim 23 provides:

> A method for determining the position of one or more items of interest in a
> selected category, comprising: . . . supplying information about at least one of the
> items of interest to one of a plurality of ports, connected to the database *at least in
> part through the Internet*, in response to inputs at the one port, wherein a user at
> the port may locate the one item of interest.

(R. 627-2 at 36) (emphasis added).  The Court agrees with the position incorporated by Civix

that this language suggests that other communications links, apart from the Internet, can be part

of the connection.  This, in turn, would seem to imply that indirect connections are permitted.

*Accord Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1270 (Fed. Cir. 2010) (holding

that "coupled to . . . should be construed broadly so as to allow an indirect attachment").

Defendants next argue that Civix's position before the PTO during reexamination

establishes that the disputed term "requires the port's direct connection to the database itself,

without an intermediary information exchange."  (R. 625 at 22-23.)  It is black-letter law that

prosecution disclaimer only applies to unambiguous disavowals.  *See Abbott Labs. v. Sandoz,

Inc.*, 566 F.3d 1282, 1289 (Fed. Cir. 2009).  Reviewing the evidence cited by Hotels.com, any

purported disclaimer by Civix was equivocal, at best.  Defendants point to Civix's statement that

"remote database access patentably distinguishes the present claims over [alleged prior-art

references]" because "[t]he host and the user search their own respective 'databases,' and upload

data therefrom into data files that are then exchanged over phone lines without direct access or

connection to the other's database."  (R. 625 at 23.)  This statement likely means that the prior-

art system operated "without direct access or connection to the other's database," while the

claimed invention allows both direct and indirect connections.

For these reasons, the Court concludes that "connected to" means "joined together or linked to, in a direct or indirect manner."

III.    **"Database" Means "A Collection Of Related Information Organized For Convenient Access"**

Plaintiff urges the Court to adopt the same construction for "database" that it did previously in *Expedia* and that the U.S. District Court for the District of Colorado reached in 2000, namely "a collection of related information organized for convenient access." (R. 633 at 19-20.) Defendants urge an opposing construction, to the effect that "database" be read to mean "a single device for storing a collection of related information comprised of each of the items specified by the claims." (R. 625 at 24-26.) The Court agrees with Civix.

Defendants place dispositive weight on their interpretation of the language found in the abstract and the claims. The former provides that "[a] user can access a common database . . . . The database contains information . . . ." (R. 627-2 at 6.) Defendants assert that the phrase "a common database" requires that the database constitute a single, unitary device. (R. 625 at 25.) Defendants also look to the language of Claim 14 of the '291 patent: "[S]toring information about the items of interest in a database, the information including, for each of the items of interest, at least one associated category and spatial detail defining a geographic position." (R. 627-2 at 36.)

While Defendants are correct to rely on this intrinsic evidence, their interpretation of this language fails. The use of the indefinite article preceding "database" implies that there may be one or more databases that a user can access. *See Cat Tech, L.L.C. v. TubeMaster, Inc.*, 528 F.3d 871, 886 (Fed. Cir. 2008) (observing that "the indefinite article 'a' has been construed to mean 'one or more'") (citing *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 966 n.4

13

(Fed. Cir. 2000)). The abstract does use the definite article when referring to "[t]he database contains information," but this proceeds the prior introduction of database with the indefinite article. (R. 627-2 at 6.) Once a user has accessed "a" common database (that is, one of potentially one or more common databases), the abstract's explanation of a chosen database as containing information representing the items of interest is necessarily directed to the database that has been chosen—hence, the use of the definite article.

Defendants seek to bolster their advocated construction by looking to certain of Civix's statements during reexamination. (R. 625 at 25-26.) Specifically, Hotels.com focuses on Civix's assertion that a rejection in light of the "Ohkawa" reference was mistaken because, in part, "[i]f the memory of the Center Station were a database consistent with the specification of the '291 [patent] and claimed subject matter . . . there would be no reason for Ohkawa to design a system comprising so many Center Stations in Ohkawa, since a single database could serve multiple locales." (*Id.* at 25-26.) Defendants read too much into this statement. The use of the language "so many" suggests that Ohkawa would still have had to have multiple, albeit a lesser number of, Center Stations. More importantly, Civix's statement that "a single database could serve multiple locales" is not equivalent to saying that a single database under the '291 patent could serve all (as opposed to multiple) relevant locales.

Next, the Court agrees with Civix that "for storing" is superfluous and unnecessary in light of the fact that Claim 1 of the '291 patent recites "a database for storing information." (R. 627-2 at 35.)

Thus, the Court adopts Civix's proposed construction of database -- "A collection of related information organized for convenient access." As the District of Colorado aptly noted,

that definition is consistent with that given by the specification: "[A] database, e.g., client server, which stores information for access by a user of the invention from a port." *Microsoft*, 84 F. Supp. 2d at 1157. In addition, that meaning comports with the specification's statement that "[t]he database is, typically, a personal computer, mainframe, workstation, mini-computer, or digital data processor." (R. 627-2 at 29.)

## IV. "Geographic/Geographical Position" Means "A Place Within A Geographic Vicinity"

The parties agree that there is no difference between "geographic position" and "geographical position." (R. 625 at 28.) Their dispute concerns the single meaning of these two terms. Civix contends that the terms mean "[a] place within a geographic vicinity." (R. 642 at 4.) Defendants argue that the proper construction is: "A location that is identified in relation to an arbitrary reference point, not by its absolute location." (*Id.* at 4.) In construing these terms, it is important to note the parties' agreed construction of "geographic vicinity," which is "[a] geographic region that includes and surrounds selected items of interest." (*Id.* at 5.) Civix's definition would therefore define a geographic position as "a place within a geographic region that includes and surrounds selected items of interest." The Court adopts this construction.

Defendants' principal argument is that the Examiner's rejection of all claims during the '622 prosecution forecloses Civix's proposed definition. That rejection was on account of the fact that "the geographical position" limitation in the asserted patents was not patentably distinct from the "positional coordinates" limitation disclosed in the '622 and '291 patents' parent application. (R. 625 at 30-32.) Civix's action in filing a terminal disclaimer, Hotels.com contends, resulted in its conceding the Examiner's conflation of the two limitations. (*Id.*) Thus, the construction given "positional coordinates" by the U.S. District Court for the District of

Colorado—"a set of coordinates defining a single reference point within a corresponding geographic vicinity which operates to determine the corresponding geographic vicinity" (*Civix-DDI, L.L.C. v. Microsoft Corp.*, 18 Fed. App'x 892, 893 (Fed. Cir. 2001) (*per curiam*))—must apply equally to "geographic position." (R. 625 at 30-32.) The Court respectfully disagrees.

In rejecting the claims during the '622 patent prosecution based on the '525 patent's use of the term "positional coordinates," the Examiner did not literally equate that term with the '622 patent's "geographical position" limitation. Indeed, the Examiner stated that, "[a]lthough the conflicting claims are not identical, they are not patentably distinct . . . ." (R. 625 at 31.) The Examiner therefore rejected them based on nonstatutory (or "obviousness-type") double patenting. Thus, the Examiner was of the opinion that the 622 patent's use of "geographical position" was obvious in light of the '525 patent's use of 'positional coordinates." The fact that one limitation may be obvious in light of another does not mean that the two limitations are indistinguishable. In fact, and as noted, the Examiner explicitly recognized that "the conflicting claims are not identical." Since the Examiner did not issue a rejection on the basis of statutory double patenting, and because the term "positional coordinates" construed by Colorado court and the Federal Circuit does not appear in the '291 or '622 patent claims, the Court declines to credit Defendants' argument.

Civix, however, proffers little evidence in favor of its proposed construction. (R. 633 at 12-15.) It does direct the Court to the construction given "geographic position" in the related *Expedia* litigation. (*Id.* at 15.) In that case, the parties (which did not include Hotels.com) stipulated that "geographic vicinity" should carry the meaning that Civix now propounds. (Civix-DDI, L.L.C. v. Expedia, Inc., et al., 03-CV-3792, R-264 at 3.) The Court accepted that

proposed agreed construction in *Expedia*.  *Expedia*, 2005 WL 831307.  The fact that Hotels.com

was neither a party to that case nor privy to one, however, precludes it from being bound by that

stipulation.  Although the Court notes the prior construction and deems the agreed definition to

be somewhat relevant, it does not regard the stipulation as controlling here.  *See Motorola*, 80 F.

Supp. 2d at 924 n.4; *see also Fuji*, 386 F.3d at 1101; *cf. Verizon*, 326 F. Supp. 2d at 1069.  The

Court therefore looks to intrinsic evidence to aid its construction of the relevant term.

Both Claims 1 and 14 of the '291 patent speak of "spatial detail['s] defining a geographic

position" and the former claim states that each port indicates "to the user the geographic position

of one or more of the items of interest."  (R. 627-2 at 35-36.)[3]  The parties have stipulated that

"spatial detail" means "[g]eographic information relating to an area or region."  (R. 642 at 6.)

Thus, the claims require that "geographic position" be defined by "geographic information

relating to an area or region."  "A place within a geographic vicinity" fits the definition of

"geographic position" as used in the claims.  If "spatial detail" defines a geographic position, as

Claims 1 and 14 of the '291 patent provide, then the specification's explanation that spatial detail

includes a map of the items of interest and street and landmark information relative to the user's

position suggests that Civix's proposed construction is accurate.  Such spatial detail would

define a position within "a geographic region that includes and surrounds selected items of

interest."

This conclusion is bolstered by the fact that "positional coordinates," which appear in the

asserted patents' specification, though not the claims, and "operate to locate the geographic

---

[3] Claim 13 of the same patent (which is dependent on Claim 1) claims a system "wherein
at least one of the ports comprises a GPS receiver for defining a geographic position."  (*Id.* at
36.)

vicinity," should be distinct from "geographic position." This is not to say, of course, that they are not closely related. It is to hold, however, that the "positional coordinates" are embodiments of the invention that are described in the specification, but do not appear in the claims, and so should not be read to limit those claims. *See Comark Comm's, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998).

Finally, the Court notes that the adopted construction is consistent with the one that it accepted in the related *Expedia* lawsuit.

**V.     "Internet" Means "A System Of Linked Computer Networks, Worldwide In Scope, That Is Typically Associated With Using TCP/IP As A Standard Protocol"**

Although the parties dispute the proper construction of eight claim terms, they devote the most time to contesting the meaning of "Internet." (R. 625 at 13-19; R. 633 at 6-12; R. 637 at 5-11.) Defendant contends that the Court should construe the term to mean "[a] group of networks that have [sic] been connected by means of a common communications protocol." (R. 642 at 5.) Plaintiff, by contrast, urges that the Court construe "Internet" as "[a] system of linked computer networks, worldwide in scope, that is typically associated with using TCP/IP as a standard protocol." (*Id.*) The dispute entails two issues. First, is there identity between the claims' intermittent use of "Internet" and "internet," such that the upper- and lower-case does not indicate a substantive difference between the two terms? Second, if "Internet" and "internet" are indeed synonymous for the purpose of the '622 and '291 patents, what is their common meaning? The Court concludes that "Internet" and "internet" carry the same meaning in the asserted patents and that that meaning is "a system of linked computer networks, worldwide in scope, that is typically associated with using TCP/IP as a standard protocol."

18

**A.      The Court's Prior Construction of "Internet" and "internet"**

The Court previously considered the terms "Internet" and "internet" in the context of the

'622 and '291 patents, in the related case of *Expedia*. *Civix*, 2005 WL 831307. In an April 6,

2005, memorandum opinion and order, the Court accepted the stipulation of Civix (Plaintiff in

the instant case) and the defendants (which are not parties in the present lawsuit) that "internet"

means "a group of networks that have been connected by means of a common communications

protocol." *Id.* at *6. The parties disagreed, however, about the proper construction of "Internet."

*Id.* Relying on technical dictionaries, which drew a distinction between "Internet" and

"internet," the Court concluded that, "around the time of the invention, 'internet' and 'Internet'

had different plain and ordinary meanings." *Id.* In construing "Internet," the Court noted that,

although one technical dictionary suggested that the term requires TCP/IP protocol, "the

specification contemplates using protocols other than TCP/IP." *Id.* at *7. After considering

further extrinsic materials, including a 1994 book by William Semple entitled "*The Internet

Directory*," the Court concluded that "the Internet will typically utilize TCP/IP, although it does

not have to." *Id.* The Court also determined that "the numerous definitions of Internet discussed

above all refer to the Internet as worldwide, or global in some way." *Id.* Prefacing its

conclusion with the observation that the global nature of the "Internet" "is material to

differentiating the Internet from a potentially smaller collection of networks constituting an

internet," the Court construed "Internet" as "a system of linked computer networks, worldwide

in scope, that typically is associated with using TCP/IP as a standard protocol." *Id.*

### B. The Parties' Respective Positions

Civix's position is straightforward -- it believes that the Court should adhere to its prior construction of "Internet" as being "a system of linked computer networks, worldwide in scope, that typically is associated with using TCP/IP as a standard protocol." (R. 633 at 6-12.) Civix emphasizes the protracted debate that preceded the Court's ultimate construction, which, Plaintiff urges, the Court need not revisit. (*Id.* at 6-7.) Even if the Court were to revisit that prior construction, however, Civix contends that the same result should inure. It points to the prosecution history, in which the examiner noted that "[t]he use of TCP/IP protocol is believed to be general knowledge available to a person of ordinary skill since the Internet has been in use." (*Id.* at 8.) Civix also seeks to undermine the evidence relied upon by Defendants. (*Id.* at 9-12.)

Defendants, in turn, argue that the Federal Circuit's 2005 opinion in *Phillips*, which issued after the Court's claim-construction ruling in *Expedia*, requires the Court to revisit its prior construction of "Internet" and "internet." (R. 625 at 13-15 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*).) They submit that the prior claim-construction holding cannot be reconciled with *Phillips*, on the ground that the former decision placed excessive reliance on extrinsic evidence. (*Id.*) Defendants then proffer evidence from the reexamination of the '622 and '291 patents, as well as deposition testimony, to the effect that "Internet" and "internet" have the same meaning as used in the asserted patents. (*Id.* at 15-17.) Finally, Defendants marshal evidence that they believe establishes that the proper construction of "Internet" is "[a] group of networks that have [sic] been connected by means of a common communications protocol." (*Id.* at 17-19.) They focus particular attention on Civix's filing a

"swear-behind" declaration to avoid a piece of prior art that disclosed a "wired network," not global in scope, which was deemed by the examiner to be an Internet.  (*Id.* at 17-18.)

C.    **The Court Will Revisit Its Construction Of "Internet" and "internet" in Light Of The Federal Circuit's *En Banc* Opinion in *Phillips***

As explained in the "Legal Standard" section above, in 2005 the Federal Circuit superseded the *Texas Digital* line of cases, the claim-construction methodology of which had placed considerable reliance on dictionaries and related forms of extrinsic evidence.  *Phillips*, 415 F.3d at 1303, *passim*.  This Court's prior construction of "Internet" in *Expedia* was rendered pursuant to the *Texas Digital* approach, and thus the opinion placed significant weight on technical dictionaries and books when ascertaining whether "Internet" and "internet" in the '622 and '291 patents have distinct meanings, whether the former required TCP/IP, and whether the former is necessarily of a global character.  *Civix*, 2005 WL 831307, at *passim*.

Observing that the Court's prior claim construction was rendered pursuant to a now-displaced methodology, Defendants argue that the Court should revisit the meaning of "Internet" and "internet" in the asserted patents.  (R. 625 at 13-15.)  Civix contends that the pertinent aspects of the Court's prior claim construction are consistent with *Phillips*.  (R. 633 at 7-8.)  The Court agrees with Civix that its appeal to dictionary evidence in its 2005 claim-construction order was not in itself improper.  *See Phillips*, 415 F.3d at 1318 ("Because dictionaries, and especially technical dictionaries, endeavor to collect the accepted meanings of terms used in various fields of science and technology, those resources have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology to those of skill in the art of the invention.").  Nevertheless, it is apparent from the April 6, 2005, order that such extrinsic evidence constituted the focal point of the Court's

analysis.

In light of *Phillips*, the Court will consider the evidence proffered by the parties as to the meaning of "Internet" and "internet" in the '622 and '291 patents and revisit its prior construction. *See Pinpoint, Inc. v. Amazon.com, Inc.*, 369 F. Supp. 2d 995, 998 (N.D. Ill. 2005) (Posner, J.); *see also Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352 (Fed. Cir. 2002) ("District courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves."). In doing so, however, it regards its prior analysis of extrinsic evidence as relevant in light of *Phillips*, which does allow a legitimate, albeit noncontrolling, role for such evidence in construing contested claims.

### D. "Internet" and "internet' Should Be Construed To Have The Same Meaning In The '622 And '291 Patents

Defendants contend that "Internet" and "internet" have the same meaning in the '622 and '291 patents. (R. 625 at 15-17.) Civix does not take an explicit stance on the issue, but appears to implicitly oppose Defendants' position. (R. 633 at 9; R. 637 at 5-6.) The Court agrees with Defendants and thus declines to adhere to its earlier determination that the two terms carry different meanings.[4] *Cf. Civix*, 2005 WL 831307, at *6.

It is, of course, true that the claims' explicit use of "internet" in upper and lower case suggests that a distinction exists and is meaningful. *See id.* at 6 (quoting *CAE Screenplates, Inc.*

---

[4] In *Expedia*, Civix argued that "internet" is distinct from "Internet" in the context of the relevant patents. *Id.* at *6. As with Defendants in the instant case, the defendants in that lawsuit were of the view that the terms were synonymous. In *Expedia*, the Court found that the upper- and lower-case use of the term carried distinct meanings. It did so because the claims' explicit use of upper and lower case gave rise to a presumption of different meanings and because technical dictionaries drew a distinction between the two terms. *Id.* at *6.

*v. Heinrich Fiedler GmbH & Co. K.G.*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings."))  Furthermore, as explored in the Court's *Expedia* ruling, 1995 editions of certain technical dictionaries may suggest that a distinction existed between "internet" and "Internet."  *Id.* at *6.  Nevertheless, the Court is mindful of *Phillips*'s instruction that one should avoid assigning "a less prominent role to the specification and the prosecution history" and giving "greater emphasis to dictionary definitions of claim terms."  *Phillips*, 415 F.3d at 1319.  Defendants point to important evidence from reexamination of the patents in suit, which is intrinsic evidence.  *See St. Clair Intellectual Property Consultants, Inc. v. Matsushita Elec. Indus. Co.*, 691 F. Supp. 2d 538, 550 (D. Del. 2010) ("Statements by patentees and Examiners are part of a patent's prosecution history, which is intrinsic evidence a court should consider in construing patent claims.")

First, Defendants proffer the sworn declaration of William Semple, a named inventor of the relevant patents and Civix's manager.  During reexamination proceedings, Mr. Semple informed the PTO that, "at the time of our invention, there was no clear distinction made between the usage of 'Internet' versus 'internet.'"  (R. 625 at 15 (citing PA 00573).  He further declared:

> In the early 1990s, including 1994, as the Internet was becoming more well
> known, it was common to use the two different versions
> (capitalized/noncapitalized) of the word 'internet' interchangeably when making
> reference to the publicly accessible, global interconnection of computer networks
> which is today more consistently referred to using the capitalized version, 'the
> Internet.' This is not only my opinion as an inventor and person of ordinary skill
> in the art, but is also consistent with and supported in literature from that period[.]

(R. 625 at 15 (citing PA 00573.)

Second, Curtis Vock, a Civix member and the attorney who drafted and prosecuted the relevant patents, testified at his deposition that the claims' intermittent use of "Internet" and "internet" was inadvertent and that the two terms were meant to signify the same thing.  (R. 625 at 16-17.)  Defendants also point to the deposition testimony of Steven Oxman, another named inventor of the '622 and '291 patents, to the effect that "there's no difference between the capital I and the little i."  (R. 625 at 15-16.)

Civix opposes this evidence on numerous grounds.  First, with respect to Mr. Semple's declaration to the PTO during reexamination concerning his understanding that "internet" and "Internet" were synonymous as used within the '622 and '291 patents, Civix's position is simply that Mr. Semple's view is not controlling.  (R. 633 at 11 ("Of course, it is black letter law that, in the claim construction process, the inventor's individual understanding is not dispositive unless he has expressly acted as his own lexigrapher.") (citing *Phillips*, 415 F.3d at 1316).)  The fact that a particular piece of intrinsic evidence may not be dispositive, however, is a far cry from its not being relevant or even highly persuasive.

Second, Civix characterizes Mr. Oxman's testimony as possessing "minimal, if any, relevance," on the ground that inventor testimony is not pertinent to claim construction.  (R. 633 at 9-10.)  To support this assertion, Civix cites three Federal Circuit cases.  (*Id.* at 9 (citing *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys., Inc.*, 132 F.3d 701, 706 (Fed. Cir. 1997), *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1126 (Fed. Cir. 1996); *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379 (Fed. Cir. 2000)).)  These cases stand for the well-established principle that courts cannot construe terms in a manner inconsistent with the claim language and the specification, whether by offering inventor testimony or otherwise.  *See Bell & Howell*, 132

F.3d at 706 (noting the purported irrelevance of inventor testimony by reference to the principle that, "[w]hen the intrinsic evidence is unambiguous, it is improper for the court to rely on extrinsic evidence, such as expert testimony for purposes of claim construction") (internal citations omitted); *Roton Barrier*, 79 F.3d at 1126 (noting that an inventor's after-the-fact testimony is of less importance than the patent disclosure itself); *cf. Solomon*, 216 F.3d at 1379 (noting that "the inventor may provide testimony explaining the claimed invention and its development"). These cases do not provide authority for the proposition that the testimony of an inventor is irrelevant to a court's construction of an ambiguous term.

It is well settled that "inventor testimony as to the inventor's subjective intent is irrelevant to the issue of claim construction." *Howmedica Osteonics Corp. v. Wright Medical Tech., Inc.*, 540 F.3d 1337, 1347 (Fed. Cir. 2008). It is also the case that "[t]he testimony of an inventor . . . may be pertinent as a form of expert testimony, for example, as to understanding the established meaning of particular terms in the relevant art." *Id.* at 1347 n.5 (citing *Phillips*, 415 F.3d at 1318). Defendants proffer Mr. Oxman's testimony for this precise permissible purpose.

Third, Civix disputes the relevance of Mr. Vock's testimony, contending that Defendants cite no authority that the opinion of prosecution counsel is relevant to claim interpretation. Ironically, Civix fails to cite any precedent itself. (R. 633 at 10.) In any event, Civix's characterization of Defendants' brief is inaccurate, as it did in fact cite pertinent authority. (R. 625 at 17 (citing *Amgen, Inc. v. Hoescht Marion Roussel*, 314 F.3d 1313, 1328 (Fed. Cir. 2003).) The Federal Circuit in *Amgen* deemed it relevant that "the prosecuting attorney testified in his deposition that to the best of his knowledge the error [a difference between the original application and the patents in suit] was a typographical error." *Amgen*, 314 F.3d at 1328.

In light of the preceding evidence, as read in the context of the patent claims and specification, the Court sees no need to adhere to its earlier determination in *Expedia* that the '622 and '291 patents draw a distinction between "Internet" and "internet."  The remaining question concerns the meaning common to these terms.

### E.  Defendants' Argument Of Prosecution Disclaimer Fails

Defendants contend that Civix's actions in filing supplemental "swear-behind" declarations to overcome the "Hershey" reference[5] by establishing an earlier priority date constituted a concession "that Hershey -- which discloses 'an Internet' but not a worldwide network using the TCP/IP protocol -- was prior art, were it not for CIVIX's claimed earlier invention date."  (R. 625 at 18.)  Thus, Defendants assert, "CIVIX waived the narrower definition of 'Internet' it now advocates."  (*Id.*)  This argument, which is founded on prosecution disclaimer, turns on the effect of swearing behind a prior-art reference.  As Plaintiff correctly point out, the doctrine does not apply "where the alleged disavowal of claim scope is ambiguous."  (R. 633 at 12 (quoting *Omega Engineering v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).)  Indeed, for prosecution disclaimer to occur, the patentee's affirmative statement must be "both so clear as to show reasonable clarity and deliberateness . . . and so unmistakable as to be unambiguous evidence of disclaimer."  *Omega*, 334 F.3d at 1325.

A patent applicant, when confronted with a reference giving rise to a rejection, may antedate that reference by filing a declaration to establish prior invention.  *See* 37 C.F.R. § 1.131. Defendants contend that Civix's swearing behind the Hershey reference proved that Civix

---

[5] "Hershey" refers to U.S. Patent No. 5,481,535, entitled "Datagram Message Communication Service Employing a Hybrid Network."  During reexamination proceedings, the Examiner rejected the "Internet" claims based, in part, on the Hershey reference.  (R. 625 at 17.)

"conceded the Examiner's conclusion that Hershey disclosed the capital-I Internet, even though it was neither worldwide in scope nor used [sic] TCP-IP." (R. 637 at 10.)

The act of swearing behind a reference does not necessarily amount to an unambiguous concession that that reference anticipates the invention. A patent applicant may have a variety of reasons for wishing to avail of the swear-behind option. Indeed, swearing behind a cited reference may limit the degree of prosecution-history estoppel and thus have strategic advantages. *See* Dennis D. Crouch, *Is Novelty Obsolete? Chronicling the Irrelevance of the Invention Date in U.S. Patent Law*, 16 MICH. TELECOMM. & TECH. L. REV. 53, 96-97 (2009).

The Court therefore concludes that the mere act of filing a swear-behind declaration for the purpose of establishing priority falls short of the "unmistakable" character required of a communication that establishes prosecution disclaimer. In reaching this conclusion, the Court declines to rely on Civix's argument that the filing of a terminal disclaimer does not amount to prosecution disclaimer. Defendants do not point to the filing of such a disclaimer, but rather to a swear-behind declaration. (R. 625 at 18; R. 637 at 10.)[6]

---

[6] The Court notes, however, that the filing of a terminal disclaimer would not seem to amount to prosecution disclaimer. *See Ventana Medical Sys., Inc. v. Biogenex Labs, Inc.*, 473 F.3d 1173, 1184 n.4 (Fed. Cir. 2006) (rejecting an argument that prosecution estoppel followed the filing of a terminal disclaimer and holding that "the filing of a terminal disclaimer simply serves the statutory function of removing the rejection of double patenting, and raises neither presumption nor estoppel on the merits of the rejection") (quoting *Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 874 (Fed. Cir. 1991)).

**F.** **"Internet," As Understood By A Person Of Ordinary Skill In The Art At The Time Of The Invention," Means "A System Of Linked Computer Networks, Worldwide In Scope, That Is Typically Associated With Using TCP/IP As A Standard Protocol"**

As previously noted, the Court's construction of "Internet" in *Expedia* resulted from its careful analysis of pertinent extrinsic evidence, consisting primarily of expert dictionaries and relevant books, as to the meaning a person of ordinary skill in the art at the time of the invention would ascribe to the term. *Civix*, 2005 WL 831307, at *\*passim*. The Federal Circuit's decision in *Phillips* compels the Court to construe "Internet" once more, to ensure that the newly adopted claim-construction process yields the same construction.

Civix's first argument as to why "Internet" means "a system of linked computer networks, worldwide in scope, that is typically associated with using TCP/IP as a standard protocol" is purportedly based upon intrinsic evidence. Civix points to a single reference in the prosecution history, where the Examiner commented:

> The use of TCP/IP protocol is believed to be general knowledge available to a person of ordinary skill since the Internet has been in use, although in limited scope, since 1969 with the introduction of the ARPANET of the U.S. Department of Defense.

(R. 633 at 8-9.) This, Civix contends, is inconsistent with Defendants' position that "Internet" refers to "a group of networks that have [sic] been connected by means of a common communications protocol." (*Id.*) The Court is not convinced. The Examiner's comments quoted by Civix would also be consistent with Defendants' construction, which merely requires a common communications protocol. TCP/IP would clearly constitute such a protocol. The fact of its being general knowledge does not necessarily serve to promote Civix's proposed construction over that of Hotels.com.

28

Civix next focuses on the Examiner's statement that "'Internet' is a system of linked computer networks, worldwide in scope, being associated with TCP/IP as a standard protocol." (R. 633 at 12.) Yet, the Examiner's understanding of the term is not controlling before the Court. *See Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1273 (Fed. Cir. 2001); *Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1382 (Fed. Cir. 2001); *St. Clair*, 691 F. Supp. 2d at 550. Indeed, the PTO and district courts are subject to different legal standards when construing claims. Examiners, unlike district courts, are required to give claims their "broadest reasonable construction consistent with the specification." *See In re Suitco Surface, Inc.*, 603 F.3d 1255 (Fed. Cir. 2010) (quoting *In re ICON Health & Fitness, Inc.*, 496 F.3d 1374, 1379 (Fed. Cir. 2007)). Nevertheless, the Examiner's understanding is both relevant and helpful, even if it is not controlling given that this Court is required to construe claims *de novo*. *See Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005) ("Although unilateral statements by an examiner do not give rise to a clear disavowal of claim scope by an applicant, it does not necessarily follow that such statements are not pertinent to construing claim terms. Statements about a claim term made by an examiner during prosecution of an application may be evidence of how one of skill in the art understood the term at the time the application was filed.").

Plaintiff's proposed construction comports with that adopted by the Examiner, as well as the extrinsic evidence as determined by the Court in *Expedia*.[7] Defendants, however, offer little intrinsic evidence to support their construction. Hotels.com's primary contention based on

---

[7] Mr. Vock's testimony also supports the Court's prior definition of "Internet," since he said that internet meant a worldwide network of networks. (R. 633 at 10.)

intrinsic evidence is that Civix's filing a swear-behind declaration amounts to prosecution disclaimer. For the reasons explained above, that argument fails. In their reply brief, Defendants make cryptic reference to "the other intrinsic evidence" beyond their discussion of Civix's filing a swear-behind declaration, but fail to clarify this other intrinsic evidence. (R. 637 at 10.) Defendants refer to Mr. Semple's filing an internet declaration, which provided that he was "familiar" with TCP/IP services, including Archie, Veronica, and Gopher services. (R. 625 at 18.) Defendants also direct the Court's attention to Mr. Semple's deposition (which is extrinsic evidence), in which he testified that those services had the capability of using protocols other than TCP/IP. (*Id.* at 17-18.) This evidence, however, is equally consistent with Plaintiff's proposed construction of "Internet." "A system of linked computer networks, worldwide in scope, that is typically associated with using TCP/IP as a standard protocol" would still be an "Internet" if it happened to use a protocol other than TCP/IP in a particular instance. As long as the system is typically associated with TCP/IP, the claim term would be satisfied.

Having considered the intrinsic evidence proffered by the parties, the Court's prior construction of "Internet" stands. *Phillips* made clear that, "because extrinsic evidence can help educate the court regarding the field of the invention and can help the court determine what a person of ordinary skill in the art would understand claim terms to mean, it is permissible for the district court in its sound discretion to admit and use such evidence." *Phillips*, 415 F.3d at 1319. Here, there is no conflict between the extrinsic evidence, as analyzed by the Court in detail in *Expedia*, and the intrinsic evidence proffered by the parties. *Civix*, 2005 WL 831307, at *passim.* In such circumstances, it is appropriate to read that extrinsic evidence in light of the intrinsic evidence. That reading leads to a conclusion that comports with the Court's conclusion

in *Expedia* and thus the Court reiterates that "Internet" means "a system of linked computer networks, worldwide in scope, that is typically associated with using TCP/IP as a standard protocol."

## VI. "User" Means "A Human Being"

Civix and Hotels.com contest the meaning of an ostensibly straightforward term, "user." Civix contends that the term simply means "[a] human being." (R. 642 at 7.) Defendants advocate the construction: "[h]uman being who provides input into the system/method in order for the system/method to return output to that human being." (*Id.*) The Court adopts the former construction.

The Court considers the term "user" axiomatic when placed in the context of the claims. As Civix points out, Claim 1 of both the '291 and '622 patents recites "a user of the system." (R. 633 at 23.) The specificity of Defendants' construction "[h]uman being who provides input into the system . . ." seems unnecessary. The claim language specifies that which Hotels.com's construction would already provide. Claim 16 of the '291 patent, for example, refers to the display of geographic information at the port "in response to user inputs at the port." (R. 633 at 23.) This claim establishes that it is the user who is providing inputs. Similarly, Claim 58 of the '622 patent makes clear that information from the database is transmitted "to the user." (*Id.*) The Court therefore adopts Civix's construction of "user," which refers simply to "a human being."

## VII. "Video" Means "A Presentation Of Multiple Sequential Frames of Image Data"

The parties take divergent views on the proper meaning of "video" in the '291 and '644 patents. Hotels.com proposes that the Court construe the term to mean "[v]isual display of

textual or graphic information on a computer monitor." (R. 642 at 7.) Civix, by contrast,

contends that "video" means "[a] presentation of multiple sequential frames of image data."

(*Id.*) The Court is persuaded that Civix's proposed construction is correct.

Hotels.com supports its advocated interpretation of "video" by reference only to a single

piece of extrinsic evidence, the Microsoft Press Computer Dictionary (1991). (R. 625 at 39-40.)

Although the Court may place weight on such evidence in appropriate circumstances, the proper

place to start claim construction is not with such extrinsic sources, but with intrinsic evidence

such as the claims, specification, and prosecution history. *See Phillips*, 415 F.3d at 1322-23,

*passim*.

Interpreting "video" by reference to the specification of the '291 and '644 patents

supports Civix's advocated construction. The specification explains that "a display of additional

detail can, for example, include a digital picture of the layout of the dining room or bar." (R.

627-2 at 35; R. 626-2 at 23.) It then notes: "Thus, a further embodiment of the invention

includes a digitized, multi-media presentation . . . . Using a camrecorder and/or other video

capture . . . for example, a short video clip is embedded in the data associated with the

information about the items of interest." (*Id.*) This discussion supports that a "multi-media

presentation" may entail the use of both or either a "digital picture" and a "video clip." Further,

the "summary of invention" clarifies that "additional detail[s] can include other multimedia

information, such as video, prerecorded music, and digital pictures." (R. 627-2 at 29; R. 626-2 at

17.) Because the intrinsic evidence reveals that video and digital pictures are indeed distinct,[8]

---

[8] Further evidence of "digital picture" and "video clip" being distinct exists. For
example, claim 23 of the '291 patent speaks of "supplying one or more of video clips and
digitized images," thus suggesting a difference between the two terms. Claims 19 and 25 of the

Hotels.com's construction fails. Hotels.com's reading— "[v]isual display of textual or graphic information on a computer monitor"—would capture both, thus impermissibly contradicting the specification.

In light of this intrinsic evidence, which reveals a clear distinction between "video" and "digital picture," there is no need to appeal to extrinsic sources as to the meaning of "video." The Court concludes that "video" cannot entail a single digital picture and thus adopts Civix's construction that "video" means "[a] presentation of multiple sequential frames of image data."

## VIII. "Within a Radius About The One Port" Means "Within A Circular Area The Center Of Which Is The User's Present Physical Location"

The parties' final disputed claim term is "within a radius about the one port." (R. 625 at 40-41; R. 633 at 24; R. 637 at 21.) Civix contends that this term means "[w]ithin a fixed distance in any direction from the one port." (R. 642 at 7.) Defendants argue that the proper construction is "[w]ithin a circular area the center of which is the user's present physical location." (*Id.* at 7.) The Court adopts Hotels.com's proposed construction.

Civix argues that "[t]he patent is not directed to mathematicians and, thus, a strict mathematical definition of 'radius' doesn't apply." (R. 633 at 24.) Civix observes that Webster's Ninth New Collegiate Dictionary (1991) defines "radius" as a "bounded or circumscribed area" and contends that that definition is consistent with its proposed construction. Plaintiff. (*Id.*)

_____

'6222 patent reveal that "additional detail" includes both 'video' and "digital pictures," thus revealing that the two terms are qualitatively distinct. (PA 00024.)

The Court, however, agrees that Civix's reading of "radius," which is being "[w]ithin a fixed distance in any direction from the one port," necessarily requires one to be within a circular area the center of which is the user's present physical location. The Court can take judicial notice of the fact that "a fixed distance in any direction from the one port" constitutes a circular perimeter. *See Demos v. City of Indianapolis*, 302 F.3d 698, 706 (7th Cir. 2002) (noting that matters of common knowledge are proper subjects for judicial notice) (quoting *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977)).[9]

Neither party presents an argument that "the user's present physical location" would be separate "from the one port." Indeed, the '622 patent's "summary of the invention" provides that a "port" denotes a terminal "from which a user of the invention can access the database storing the information about the items of interest." (PA 00017.) That being the case, the Court adopts Defendants' proposed construction that "radius" means "[w]ithin a circular area the center of which is the user's present physical location."

## CONCLUSION

For these reasons, the Court concludes as follows:

- "Associated category" means "a classification both stored in the database and provided or selected by a user that divides particular items of interest into subgroups"

- "connected to" means "joined together or linked to, in a direct or indirect manner"

- "database" means "a collection of related information organized for convenient access"

- geographic/geographical position" means "a place within a geographic vicinity"

_____

[9] The law of the Seventh Circuit governs this point, since judicial notice is a procedural matter not unique to patent law. *See generally Showmaker v. Advanta USA, Inc.*, 411 F.3d 1366, 1367 (Fed. Cir. 2005).

- "internet" means "a system of linked computer networks, worldwide in scope, that is typically associated with using TCP/IP as a standard protocol"

- "user" means "a human being"

- "video" means "a presentation of multiple sequential frames of image data"

- "within a radius about the one port" means "within a circular area the center of which is the user's present physical location"

**Dated:** October 25, 2010

ENTERED

**AMY J. ST. EVE**
**United States District Judge**