**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CIVIX-DDI, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 05 C 06869 |
| | ) | |
| v. | ) | Hon. Amy J. St. Eve |
| | ) | |
| HOTELS.COM, L.P. and HOTELS.COM GP LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Civix-DDI, L.L.C., has filed a motion to strike what it characterizes as Defendants' "new defenses and witnesses." (R. 655.) The Court held a status hearing on October 26, 2010, and subsequently ordered the parties to supplement discovery by November 15, 2010.[1] (R. 652.) The instant motion concerns Defendants' supplemental objections and responses to Plaintiff's interrogatories 1-5, 8, 12-13, and 15. (R. 655 at 1.) Plaintiff specifically objects to Defendants' disclosure of five Hotels.com employees and "one or more persons associated with Google, Inc.," as well as to Defendants' invalidity defense based on the "T-III Real Estate System" and its license-and-patent-exhaustion defense based on a 2008 "Google Maps API Premier Purchase Agreement." (*Id.*) For reasons explained below, the Court grants Plaintiff's motion in part and denies it in part.

---

[1] Docket entry 652 mistakenly provides that the parties were to supplement discovery by "11/5/2010." The correct entry should have been "11/15/2010," as per the date agreed to at the status hearing of October 26, 2010.

## BACKGROUND

The Court presumes familiarity with its previous orders in this litigation. *See, e.g.*, *Civix-DDI, L.L.C. v. Hotels.Com, L.P. et al.*, No. 05-CV-6869, 2010 WL 4386475 (N.D. Ill. Oct. 25, 2010); *Civix-DDI, L.L.C. v. Hotels.Com, L.P. et al.*, No. 05-CV-6869, 2010 WL 431467 (N.D. Ill. Feb. 1, 2010). The Court issued its claim-construction ruling on October 25, 2010, and subsequently ordered the parties to supplement discovery by November 15, 2010. (R. 652.) On November 23, 2010, Civix filed the instant motion to strike the "new defenses and witnesses" that Defendants allegedly disclosed in their November 15, 2010, supplementation. (R. 655.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(e) provides that a "party who has . . . responded to an interrogatory . . . must supplement or correct its . . . response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court." Fed. R. Civ. P. 26(e)(1). Rule 37(c) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule . . . 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Under Rule 37(c)(1), "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Westefer v. Snyder*, 422 F.3d 570, 584 n.21 (7th Cir. 2005) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)).

2

**ANALYSIS**

**I.  Hotels.com Appropriately Supplemented its Response to Interrogatory No. 1**

Civix's Interrogatory Number 1 provided:

> Identify each person presently and/or formerly employed or otherwise associated with Hotels.com who has or had responsibility, in whole or in part, for the following functions at any time: (a) the conception, design and development of the accused Hotels.com services; (b) the conception, design and development of the databases, applications, software and hardware used in the accused Hotels.com services; (c) the implementation, operation and maintenance of the accused Hotels.com services; (d) the marketing of the accused Hotels.com services; (e) the sale of the accused Hotels.com services; and (f) the overall business of Hotels.com with respect to the accused Hotels.com services.

(R. 655-1 at 3.)  Hotels.com provided a supplemental response to this interrogatory on November 15, 2010, naming Matt Brown, Skip Masonsmith, Terry Meadows, Pascal Pissot, and John Sansom.  (*Id.*)  Defendant stated that it believed that these individuals "have information regarding the accused hotel location-searching service made available at the www.hotels.com and www.hoteles.com websites."  (R. 655-2 at 3.)

Civix observes that the above-named individuals are Hotels.com's own employees, questions why Hotels.com failed to identify those employees earlier, and submits that it would be unfairly prejudicial to allow Defendants to rely on them.  (R. 655 at 8-9.)  Civix also points out that it has not been able to depose the newly identified people.  (*Id.* at 9.)

In its response, Hotels.com explains that supplemental disclosure of the five employees is proper because its "technical team has experienced recent turnover, and the subject individuals were disclosed because they represent the new team that has now assumed the responsibilities of previously disclosed, but now departed, Hotels.com employees."  (R. 659 at 5-6.)  Defendants explain in more detail:

3

- In November 2010, Matt Brown assumed the responsibilities of previously disclosed and twice-deposed Philippe Tulula, who left the company on November 5, 2010;

- Pascal Pissot and John Sansom only recently assumed the responsibilities of previously disclosed Daniel Hugo, who is now leaving the company, and previously disclosed Keri Burke, who transferred to a different entity this year;

- Terry Meadows just weeks ago assumed the responsibilities of previously disclosed James Laird, who transferred to a different entity a few months ago;

- Finally, in September 2010, Skip Masonsmith assumed the relevant responsibilities of previously disclosed Mark Huyler, who left the company in July 2010 and who himself assumed the responsibilities of previously disclosed David McIntosh.

(*Id.* at 6.)

Defendants appropriately supplemented the names of its employees who now have responsibility for the functions described in Plaintiff's first interrogatory. Few, if any, companies have a static work force, comprised of employees who never leave and whose responsibilities never change. Plaintiff's interrogatory number one sought the identification of individuals within Hotels.com who possess information about specific functions. On October 26, 2010, this Court ordered the parties to supplement their disclosures. In naming the relevant individuals, Defendants did just that, complying with both the Court's order and Federal Rule of Civil Procedure 26(e). As Defendants noted, they "could not disclose these individuals earlier because, until now, they were not acting in capacities with knowledge of Hotels.com's technology and/or defenses." (R. 659 at 6.)

The Court nevertheless appreciates Plaintiff's claim that Defendants' supplemental disclosure denies it the opportunity to take discovery, which could prejudice Plaintiff should

Hotels.com introduce any of its newly disclosed employees at trial for direct examination. For this reason, the Court orders that, should Defendants anticipate calling Matt Brown, Skip Masonsmith, Terry Meadows, Pascal Pissot, and/or John Sansom at trial, Defendants inform both Plaintiff and the Court of their intention at least 90 days before the commencement of trial and make the same available for deposition within 60 days of trial.

**II.  The "T-III Real Estate System," Which Hotels.com Failed to Disclose in a Timely Manner, Would Prejudice Plaintiff**

Plaintiff's interrogatory number 13 provided:

> For each person or entity on whose testimony you may rely in whole or in part in support of a contention by Hotels.com that any claim of any of the patents in suit is invalid under 35 U.S.C. § 102 and/or 103, identify the name and address of the person or entity, and describe in detail: (a) the alleged prior art on which the person or entity will testify; (b) all the statutory provisions that apply to the alleged prior art; and (c) the subject matter of the testimony. In addition, specifically identify by production number or other suitable designation all documents and things pertaining to the testimony and/or on which Hotels.com will rely. Do not identify persons, entities or documents or things on which you will not rely at trial.

(R. 655-1 at 9.) On November 15, 2010, Defendants supplemented their response to this interrogatory, identifying "third-party T-III Real Estate Systems, who [*sic*] developed, manufactured, made publicly available, and/or sold a prior art system for locating items of interest through the use of a database, which included a Touch Screen Consumer Kiosk." (*Id.* at 10.) Defendants further asserted that, "upon information and belief, the T-III system was available to the public by 1994." (*Id.*)

Plaintiff vigorously disputes the propriety of Hotels.com's identification of T-III Real Estate Systems after the close of fact discovery. (R. 655 at 6-8.) Civix observes that it "hotly contested" Defendants' prior-art contentions on invalidity during that period of discovery,

5

pointing out that it even had to file a motion to compel Defendants to supplement their response to interrogatory number 13. (*Id.* at 7.) Magistrate Judge Schenkier granted that motion on April 10, 2007, ordering Hotels.com to "supplement their interrogatory responses disclosing prior art . . . with the supplementation to be completed by 05/10/07." (R. 313.)

Fact discovery in this case closed on January 22, 2010. (R. 496.) Defendants offer no creditable reason why they failed to discover and disclose the T-III Real Estate System until, they claim, November 15, 2010—the very same date that the Court required supplementation. (R. 659 at 8-9.) They merely assert that the system "is not proprietary to Hotels.com, and it existed in the public marketplace at least 16 years ago." (*Id.* at 8.)

Defendants' identification of the T-III Real Estate System is untimely. The ensuing question, then, is whether the delayed disclosure warrants exclusion. As noted, under Rule 37(c)(1), "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Westefer*, 422 F.3d at 584 n.21(quoting *Salqado*, 150 F.3d at 742). Defendants have not demonstrated that their untimely disclosure was justified. If the system were indeed available to the public since 1994, there is no good reason why Hotels.com could not have unearthed it earlier. The ultimate issue, therefore, is whether Defendants' disclosing the T-III Real Estate System was harmless.

In this respect, Hotels.com argues that Plaintiff is not prejudiced by the "supplementation," noting that, "over the course of this years-long litigation, Civix has never once deposed even a single third-party on any of the nearly two dozen other prior art systems Hotels.com has diligently and previously disclosed." (R. 659 at 9.) Hotels.com also represents that it has provided Plaintiff with the "relevant written materials it had discovered." (*Id.* at 8.)

6

Plaintiff, for its part, does not specify in any detail how the disclosure prejudices it for the purpose of this case. Civix merely asserts in broad language that it is "entitled to know about and to take fact discovery on any and all prior art that Hotels.com is relying on in this case." (R. 655 at 7.) The only particularized example that Plaintiff identifies is that it has been denied the opportunity to take discovery from Errol Samuelson, "the Move, Inc. employee identified for the first time in Hotels.com's November 15, 2010 supplemental response to Interrogatory No. 13." (*Id.*) As a result, Civix argues, it "must rely entirely on what Hotels.com's expert says about the T-III Real Estate System." (*Id.*)

The Court nevertheless concludes that Defendants' tardy disclosure of the T-III Real Estate System would prejudice Plaintiff. Although expert discovery does not close until March 7, 2011, the Court required that burden-of-proof expert disclosures take place by December 20, 2010. (R. 652.) As the parties have already exchanged expert reports, and because fact discovery closed almost a year ago, Plaintiff's untimely disclosure of the T-III Real Estate System was not harmless. *See, e.g.*, *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus. Ltd.*, No. 95-CV-673, 1996 WL 680243, at * 7 (N.D. Ill. Nov. 21, 1996) ("If a party is allowed to withhold the supplementation of its discovery responses until after fact discovery is closed . . . the opposing party is denied the opportunity to conduct discovery on the supplemented responses. . . . [T]his Court finds that Plaintiffs were prejudiced by Mitsubishi's failure to timely supplement its interrogatory responses. Had Plaintiff been aware of Defendants' intention to raise this defense, it would have altered the way it conducted discovery."); *Abbott Labs. v. Syntron Bioresearch, Inc.*, No. 98-CV-2359, 2001 WL 34082555, at *10 (S.D. Cal. Aug. 24, 2001) ("The newly revealed prior art references were not mentioned in discovery and Abbott had no

7

opportunity to conduct expert discovery on these prior acts. Since no expert discovery has been conducted, Abbott will be prejudiced if these prior art references are admitted at trial."); *see also THK Am., Inc. v. MSK Ltd.*, 917 F. Supp. 563, 568 (N.D. Ill. 1996) (precluding plaintiff, for numerous reasons, from presenting evidence of two letters, the "[m]ost important" being that the "documents were not disclosed in answers to . . . interrogatories. Discovery in this case has been closed for many months. To allow this new contention into evidence would greatly prejudice THK in that it has had no opportunity to explore their ramifications by its own discovery"); *Luddington v. Indiana Bell Tel. Co.*, 796 F. Supp. 1550, 1579 (S.D. Ind. 1990), *aff'd*, 966 F.2d 225 (7th Cir. 1992) (noting that the court had "held that the plaintiff could not raise any claims regarding . . . four promotions because he had not informed the defendant that he was alleging discrimination .. . . until after discovery was closed and over a month after the filing of the defendant's motion for summary judgment").

The Court therefore grants Plaintiff's motion to strike with respect to the untimely disclosed T-III Real Estate System.

### III. The Court Grants the Motion to Strike as to Defendants' Untimely Disclosed "Google Maps API Premier Purchase Agreement"

Plaintiff's interrogatory number 15 provides:

State specifically the factual and legal bases for any defense based upon license, estoppel or patent exhaustion, including specifically:

(a) each fact that supports each defense;
(b) the identify [*sic*] of any persons or entities that create the basis for a license, estoppel or patent exhaustion defense;
(c) the timing and circumstances of any act giving rise to each defense;
(d) the identity of any documents, including agreements that support each defense;

(e) a chronological statement of all facts, circumstances, acts and documents that support each defense.

(R. 655-1 at 11-12.) Defendants state in their supplemental response that, "[i]n late 2008, Hotels.com contracted for rights to protected technology from Google, Inc. under an agreement executed on December 29, 2008. That agreement was supplemented in 2010 through an amendment that was fully executed as of June 2, 2010." (*Id.* at 12.) Hotels.com further states that, "[b]ecause Google and its customers are licensed under the patents-in-suit, [it] is a third-party beneficiary of Google's license to use the accused technology." (*Id.* at 13.)

Plaintiff objects to this disclosure, contending that it amounts to the addition of "brand new, substantive defenses after the close of fact discovery." (R. 655 at 6) (emphasis omitted). Although Hotels.com's second amended answer explicitly asserted affirmative defenses that include the doctrine of patent exhaustion and authorization by one or more licenses, (R. 585 at 16), Defendants did not assert or identify the Google agreement as a basis for these defenses until November 15, 2010. The first question is whether Defendants "could and should have produced a copy of its agreement with Google and disclosed its defenses based on the agreement long before November 15, 2010." (R. 655 at 5.)

Defendants' parent company, Expedia, entered into the Google agreement on December 29, 2008. (R. 659 at 4.) Neither party contends that Hotels.com was privy to this agreement at that time. Instead, Defendants submit that the Google agreement became relevant when they began "receiving and using Google technology" in August 2010. (R. 659 at 4-5.) Defendants conclude that they disclosed the fact of the Google agreement in a timely fashion "a few months later" on November 15, 2010. (*Id.* at 3.) Given the posture of the present case, with expert discovery set to close on March 7, 2011, and fact discovery having closed on January 22, 2010,

9

it was incumbent on Hotels.com to disclose the agreement sooner than it did. In the circumstances, a delay of almost four months rendered Defendants' disclosure untimely. *Cf., e.g.*, *Contech Storwater Solutions, Inc. v. Baysaver Techs., Inc.*, 534 F. Supp. 2d 616, 624 (D. Md. 2008) ("Over the next four months the defendants, quite simply, failed to supplement their . . . initial response in a timely fashion."). Defendants rely on *Wachel* for the proposition that a supplemental production that took place approximately two months after it become relevant was "seasonable." (R. 659 at 5 (citing *Wachel v. First Colony Life Ins. Co.*, No. 05-CV-292, 2008 WL 73647, at *10 (N.D. Ind. 2008).) Beyond the fact that questions of timeliness are necessarily fact specific, *Wachel* is eminently distinguishable, for the court there premised its finding on the ground that "Wachel failed to submit an argument to rebut First Colony's arguments that disclosure was timely and that in any event no prejudice resulted." *Wachel*, 2008 WL 73647, at *10.

The next question concerns the issue of prejudice. Plaintiff contends that, if Hotels.com were allowed to use its agreement with Google to establish the existence of a license or exhaustion, it would suffer "severe" prejudice. (R. 655 at 5.) It is no answer to assert, as Defendants do, that the license and exhaustion defenses "have been the subject of substantial discovery." (R. 659 at 4.) Whether those defenses have merit is a question that will turn on the facts surrounding each sale said to give rise to exhaustion or a license. With respect to the only now-disclosed Google agreement, Defendants would have to demonstrate that that agreement entails an authorized sale that substantially embodies the relevant patents. *See, e.g.*, *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 638 (2008). Plaintiff would indeed be prejudiced were it forced to meet this defense without the benefit of fact discovery. *Cf. Cornell*

*Research Found., Inc. v. Hewlett Packard Co.*, 223 F.R.D. 55, 67 (N.D.N.Y. 2003) ("[F]undamental fairness dictates, at a minimum, that HP be required to flesh out the contentions associated with this affirmative defense in sufficient detail to allow CRF to conduct meaningful discovery concerning it.").

As Defendants failed to disclose the agreement, and because Plaintiff would suffer prejudice were it denied the opportunity to take discovery regarding the same, the Court grants Civix's motion to strike with respect to the Google agreement.

## CONCLUSION

For the preceding reasons, the Court grants Plaintiff's motion in part and denies it in part.

**Dated:** January 19, 2011

                                          **ENTERED**

                                          **AMY J. STUEVE**
                                          **United States District Judge**