HEADIN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

CIVIX-DDI, LLC,

                **Plaintiff,**

      **v.**

HOTELS.COM, L.P. and HOTELS.COM
GP, LLC,

                **Defendants.**

Case No.:     05 C 6869

Judge Amy St. Eve

**MEMORANDUM OF LAW IN SUPPORT OF HOTELS.COM, L.P.'S AND
HOTELS.COM GP, LLC'S OMNIBUS MOTION FOR SUMMARY JUDGMENT**

**REDACTED - PUBLIC VERSION**

May 4, 2011

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.      UNDISPUTED MATERIAL FACTS ......................................................................2
     A.      This matter's procedural history. .....................................................................2
     B.      The asserted claims. ........................................................................................3
     C.      The Hotels.com system and service accused by CIVIX. ..............................5
         1.      The accused initial screen search functionality. .................................7
         2.      The accused banner "advertising." .....................................................7
         3.      The accused virtual tour "videos." .....................................................8

III.      LEGAL STANDARDS ...............................................................................................9
     A.      The law of direct infringement under 35 U.S.C. § 271(a). ..........................10
         1.      "Making" and "using" a claimed system. .........................................10
         2.      "Using" a claimed method. ................................................................11
         3.      The law of vicarious liability for joint infringement. ........................11
     B.      The law of induced infringement under 35 U.S.C. § 271(b). ......................12
     C.      The law of willful infringement. ...................................................................13

IV.      ARGUMENT .............................................................................................................14
     A.      As a matter of law, Hotels.com does not directly infringe the asserted
           claims. ...........................................................................................................14
         1.      Hotels.com does not directly infringe the '622 patent individually
              because it cannot "make" or "use" the accused system. ....................14
         2.      Hotels.com does not directly infringe the '291 patent individually
              because it cannot "use" the accused method. .....................................15
         3.      Hotels.com does not jointly infringe the '622 patent or '291 patent
              because it is not vicariously liable for actions of its third-party
              customers. ...........................................................................................16
     B.      User-generated searches from the initial screen of the accused sites do not
           infringe the asserted claims of the '622 patent. ...........................................17
         1.      The accused initial screen search functionality does not infringe
              because no user can provide or select an "associated category." ..............18
         2.      The design of the accused initial screen search interface does not
              evidence a specific intent to induce infringement of the '622
              patent. ..................................................................................................22
     C.      Hotels.com does not infringe the '291 patent because Hotels.com does not
           store and supply "advertising information about a business." .......................22
     D.      Hotels.com does not infringe any "video" element of any asserted claim. ..........23
     E.      CIVIX cannot sustain its willfulness burden. ..............................................24

V.      CONCLUSION .........................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*,
    501 F.3d 1307 (Fed. Cir. 2007) .......................................................................... 13, 22

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*,
    629 F.3d 1311 (Fed. Cir. 2010) .......................................................................... 12, 17

*BMC Resources, Inc. v. Paymentech, L.P.*,
    498 F.3d 1373 (Fed. Cir. 2007) ................................................................................ 11

*Centillion Data Sys., LLC v. Qwest Comm'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011) ....................................................................... passim

*CIVIX-DDI, LLC v. Cellco Partnership et al.*,
    387 F. Supp. 2d 869 (N.D. Ill. 2005) ................................................................ 10, 25

*Cross Medical Products v. Medtronic Sofamor Danek*,
    424 F.3d 1293 (Fed. Cir. 2005) ................................................................................ 12

*Desenberg v. Google, Inc.*,
    392 Fed. Appx. 868 (Fed. Cir. 2010) ....................................................................... 16

*Exigent Tech., Inc. v. Atrana Solutions, Inc.*,
    442 F.3d 1301 (Fed. Cir. 2006) .................................................................................. 9

*In re Seagate Tech., LLC*,
    497 F.3d 1360 (Fed. Cir. 2007) ............................................................................ 13, 25

*Jones Motor Co., Inc. v. Holtkamp, Liese, Beckemeier & Childress, P.C.*,
    197 F.3d 1190 (7th Cir. 1999) ................................................................................... 10

*Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi.*,
    877 F.2d 1333 (7th Cir. 1989) ................................................................................... 21

*Muniauction, Inc. v. Thomson Corp.*,
    532 F.3d 1318 (Fed. Cir. 2008) .......................................................................... 12, 17

*Novartis Corp. v. Ben Venue Labs., Inc.*,
    271 F.3d 1043 (Fed. Cir. 2001) .................................................................................. 9

*NTP, Inc. v. Research in Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005) ................................................................................ 11

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
    601 F.3d 1319 (Fed. Cir. 2010) ................................................................................ 16

*Telemac Cellular Co. v. Topp Telecom, Inc.*,
    247 F.3d 1316 (Fed. Cir. 2001) ................................................................ 20

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) ........................................................ 13, 25

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009) ........................................................ 13, 22

*Yoon Ja Kim v. ConAgra Foods, Inc.*,
    465 F.3d 1312 (Fed. Cir. 2006) ................................................................ 19

**Statutes**

35 U.S.C. § 271(a) ................................................................................ 10, 14

35 U.S.C. § 271(b) ........................................................................................ 12

**Rules**

Fed. R. Civ. P. 56(c)(2) .................................................................................. 9

Local Rule 56.1(a)(3) ...................................................................................... 2

## I.    INTRODUCTION

Over the six years CIVIX-DDI, LLC ("CIVIX") has litigated its case against Hotels.com,

L.P. and Hotels.com GP, LLC (collectively, "Hotels.com"), it has been forced to withdraw more

than four dozen patent claims, acquiesce to a Court ruling invoking licenses that CIVIX

previously entered with others, and surrender key patent scope in a reexamination proceeding

before the U.S. Patent & Trademark Office ("USPTO").  Hotels.com now seeks to resolve this

matter, challenging the three remaining claims CIVIX aims to try on multiple grounds.

Hotels.com infringes none of these claims.

First, taking all of CIVIX's infringement contentions as true, the practice of each and

every asserted claim explicitly requires the participation of a third party.  CIVIX concedes no

less, nor could a plain reading of the claims.  As a matter of law, Hotels.com does not infringe

these claims itself, and it cannot be held vicariously liable for the actions of third parties.  And

while CIVIX blanketly, and at times incompatibly, alleges direct and indirect liability to

overcome this truth, it fails to meet the applicable Federal Circuit-established standard in each

instance.

Second, as construed, the three claims do not read on the accused Hotels.com system.  To

sidestep this reality, CIVIX erroneously resorts to reading out claim requirements and simply

ignoring the record.  For example, CIVIX cannot demonstrate that the accused Hotels.com

system satisfies the claimed "associated category" limitation, which must be selected by a user to

request and return information from a database.  Likewise, CIVIX accuses virtual tours as

satisfying the "video" limitation of two asserted claims, even though virtual tours are not

available on any Hotels.com site (nor have they been for some time), and the single, static frame

CIVIX accuses cannot reasonably be deemed a "video."   Similarly, by its own expert's

admission, CIVIX cannot demonstrate that Hotels.com has ever satisfied the claimed

"advertising" limitation, because it has never stored or supplied any accused advertising.

As a matter of fact and law, CIVIX cannot sustain its infringement burden, let alone the

added willfulness claim it pleaded. Hotels.com is accordingly entitled to summary judgment.

## II.    UNDISPUTED MATERIAL FACTS

### A.  This matter's procedural history.

In 2005, CIVIX sued Hotels.com alleging infringement of fifty-three claims from four

patents. SUF at ¶4.[1]  Today, only three narrowed claims from two patents remain. SUF at ¶13.

This Court has already established that Hotels.com is a third-party beneficiary to licenses

CIVIX previously entered into with others, thereby granting partial summary judgment and

immunizing Hotels.com's conduct for a portion of the period CIVIX has accused. *See* D.I. 263

at 26 ("The Court thus grants Hotels.com's Motion for Partial Summary Judgment with respect

to the alleged infringement of the '622, '307, and '291 Patents for activities licensed under the

MapQuest-Hotels.com License Agreement.").

CIVIX's allegations have further been narrowed as a result of reexamination by the

USPTO, which resulted in numerous amendments and even outright cancellation of asserted

claims. SUF at ¶¶5, 7-8, 10.  As a consequence of reexamination, CIVIX withdrew two patents

and forty-seven claims from suit in 2009. SUF at ¶11.  The sliver of claims CIVIX maintained

after reexamination were narrowed substantially by reexamination disclaimers (SUF at ¶¶6, 9),

and, following this Court's *Markman* ruling, CIVIX withdrew additional claims. SUF at ¶¶12-

---

[1]    Pursuant to Local Rule 56.1(a)(3), Hotels.com is filing herewith a Statement of Undisputed Facts ("SUF"),
which sets forth the material facts of which there is no genuine issue and that entitle Hotels.com to judgment as
a matter of law, as well as bound exhibits providing the evidence that proves those facts.

13. CIVIX now seeks to try literal infringement of the following claims (SUF at ¶13), under the following theories:

- Claims 20 and 26 of U.S. Patent No. 6,385,622 (the "'622 patent"): direct infringement (both individually and jointly) and induced infringement;

- Claim 23 of the U.S. Patent No. 6,415,291 (the "'291 patent"): direct infringement (both individually and jointly) and induced infringement.

SUF at ¶¶15-16.

**B. The asserted claims.**

Asserted claims 20 and 26 of the '622 patent recite systems "for remotely determining the position of a selected category of items of interest in a selected geographic vicinity from a database." SUF at ¶¶18-19. The claimed systems include four components: (A) a database; (B) a communications link; (C) an information controller; and (D) a port. *See id.* The systems' human "user" sits at her computer "port." *See* D.I. 650 (construing "user" as "a human being"); D.I. 642 (stipulating "port" means "a terminal, for example a personal computer with modem, from which a user of the invention can access the database storing information about items of interest").

The computer "port" is used to request information from the claimed remote "database." *See id.* Specifically, the claims recite that the "port" must "generat[e] the request signal in response to inputs by the user which are representative of the selected category and geographic vicinity," and that the "port" has "a user interface for accepting the inputs" necessary to do so. SUF at ¶¶18-20; *see also* ¶¶53-54.

The claims require the user input an "associated category," which, once selected, is referred to as a "selected category." SUF at ¶52. The "associated category"/ "selected category" element is critical to all asserted claims. To be sure, this Court has construed the term to: (1) divide items of interest in the database into subgroups; (2) be provided or selected by the user in

building her query of the database; and (3) one basis for search of the database. *See* D.I. 650 at 4-10. Illustratively, the Court explained the operation of the claimed "category" with reference to the disclosed example category of music stores:

> a user who is leaving Boston Logan Airport for Los Angeles International Airport (LAX) can access a port ... at Logan and display, selectively, items of interest in an associated category relative to LAX. For example, if a user of the invention wishes to locate music stores upon arrival in Los Angeles, she can command the display of music stores relative to LAX so that they are easily located.

*Id.* at 10.

The claimed "information controller" component receives the user-generated request signal from the port and transmits a portion of information from the "database" that is responsive to the user's request; specifically, information about items of interest "within the selected category and geographic vicinity." SUF at ¶¶18-19. Information is transmitted to and from the user through the "communications link" component. *See id.*

The computer "port" is finally again used by the user for "accessing the portion of information" transmitted from the "database." SUF at ¶¶18-19, 21. Asserted claims 20 and 26 differ only with respect to the additional information — "video" and "digital pictures," respectively — that must be transmitted from the claimed "database" and subsequently accessed at the computer "port" by the user. SUF at ¶¶18-19.

There is no dispute that the '622 claimed systems are incomplete until the human "user" supplies a computer "port" and connects it to the other claimed components. SUF at ¶22. It is likewise undisputed that the asserted claims are not met until a human "user" actually initiates a database search via a request signal from the computer "port" and accesses responsive information returned from the database. SUF at ¶¶23-24.

The method recited in remaining asserted claim 23 of the '291 patent is a nearly-identical process for "determining the position of one or more items of interest in a selected category."

SUF at ¶29. Like the '622 claims, claim 23 requires a human "user" to enter "inputs at the one port" to initiate a search request that queries the database. *See id.* In response, each of the following is "supplied" to the user's computer: (1) advertising information; (2) video clips; and (3) digitized images about responsive items of interest. *See id.* As amended in prosecution, the claim requires the user's computer "port" to "fetch" information "defining a geographic position" so that "a user at the port may locate the one item of interest." SUF at ¶¶30-31.

There is no dispute that infringement of the patented method requires a user to execute a search. SUF at ¶¶32, 34.

### C. The Hotels.com system and service accused by CIVIX.

A user may access the Hotels.com website at www.hotels.com (and its Spanish-language analog, www.hoteles.com) to, among other things, search for lodging by location. SUF at ¶¶39, 42. A user inputs a location and receives information about lodging within or near that location. SUF at ¶¶63, 64. Although the accused sites are called *Hotels*.com, they make available information about various types of lodging, including condos, suites, bed & breakfasts, and hotels. *See id.* In some instances, the accused sites have allowed users to narrow location-based search results on the basis of various parameters, including "star rating" (a metric of a property's amenities) or "property type" (*e.g.*, whether a property is a bed & breakfast or hotel). SUF at ¶51.

CIVIX has specifically accused the location-based search functionality of the accused sites. SUF at ¶14. CIVIX contends that the "associated category"/"selected category" element of the '622 patent asserted claims is satisfied by a "property type" or "star rating" field that CIVIX alleges is contained in the Hotels.com database and is a basis of search. SUF at ¶55. In his report, CIVIX's expert identifies no other database grouping in the accused Hotels.com

5

system as satisfying the claimed "associated category"/"selected category" limitation.  SUF at ¶56.

The accused sites have been freely accessed and searched by users at their discretion.  *See* SUF at ¶¶35-38.  These users employed their own computers or other web-enabled devices to connect to the Internet and navigate the accused sites.  SUF at ¶35.  CIVIX does not allege that Hotels.com has ever supplied computer "ports" to any allegedly-infringing users.  *See id.*  Nor does CIVIX allege, or could it, that Hotels.com has ever employed anyone or contractually obligated anyone to use its website at all, much less in any infringing manner.  SUF at ¶¶15-16, 36-38.  In fact, every user of the accused sites has complete discretion over whether to (1) visit the accused Hotels.com sites, (2) conduct a search in the manner CIVIX has accused of infringement, and (3) view any responsive information Hotels.com returns to the user — even information CIVIX alleges satisfies the asserted claim elements.  *See* SUF at ¶¶22-24, 32, 34.

█████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
█████████████████████████████████.  SUF at ¶¶39, 42, 49-50.  Since at least 2009, the only searches accused by CIVIX are those generated on the initial screen user interface of the accused sites.  SUF at ¶¶14, 42-43.

CIVIX accuses Hotels.com websites of infringing its patents since May 2004.  SUF at ¶14.  It is undisputed that the accused sites have changed over that seven-year period.  SUF at ¶44.  CIVIX's infringement expert, however, does not and cannot identify changes to the accused sites during this time, nor has he accounted for these changes in his analysis.  *See* SUF at ¶¶ at 45-47.

6

### 1. The accused initial screen search functionality.

For the entire period CIVIX accuses, it contends that the claimed "associated category" limitation is met on initial screen searches because a particular "property type" — namely, hotels — is "implied" by the accused site itself.  SUF at ¶¶59-61; *see also* SUF at ¶¶49-50.

There is no dispute that the search functionality on the initial screen of the accused Hotels.com sites allowed and still allows users to request information about lodging at a particular location.  SUF at ¶¶ 39, 42.  During the period at issue, the initial screen user interface of the accused sites has consistently required only a location input by a user.  SUF at ¶¶ 48.  No initial screen user interface of any accused site has ever permitted a user to input any accused "property type" or "star rating."  *Compare* SUF at ¶¶39, 42 *with* SUF at ¶¶57-58.

As a result, all user-generated searches from the initial screen of the accused sites were and are conducted exclusively on the basis of location.  SUF at ¶¶63-64.  ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

### 2. The accused banner "advertising."

CIVIX contends that Hotels.com stores and supplies banner advertisements displayed on the accused sites, which satisfy the "advertising" limitation of claim 23 of the '291 patent.  SUF at ¶¶72-73.

These banner advertisements are neither stored, nor supplied by Hotels.com.  SUF at ¶¶75-77.  ████████████████████████████████████████████████

███████████████  *See id.*  The accused banner "advertising" is thus neither contained in, nor comes from any Hotels.com database.  *See id.*

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

### 3.  The accused virtual tour "videos."

CIVIX contends that virtual tours on the accused sites satisfy the "video" elements of claim 20 of the '622 patent and claim 23 of the '291 patent.  SUF at ¶81.

The accused virtual tours have only been sporadically available on the accused sites and only for a minority of properties.  SUF at ¶82, 88.  No virtual tours are presently available on any accused site.  SUF at ¶82.  Nor have they been since at least February 2010.  *See id.*  CIVIX cannot establish for how long Hotels.com has offered this accused functionality, nor can it quantify how many virtual tours were ever accessed by users.  SUF at ¶¶85-87.  ██████

████████████████████████████████████████████████

██████████████████████████████████.  SUF at ¶¶83-84.

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████  *See id.*

Pursuant to the undisputed facts above and the controlling law set forth below, Hotels.com is entitled to summary judgment of non-infringement for the following reasons:

- Each of the asserted claims require the participation of third parties whose actions cannot be attributed to Hotels.com, and therefore, Hotels.com is not liable for direct infringement of claims 20 and 26 of the '622 patent and claim 23 of the '291 patent.

- User-generated searches from the initial screen of the accused sites have never satisfied the "associated category"/"selected category" limitation, and therefore, do not infringe claims 20 and 26 of the '622 patent. Moreover, the accused initial screen does not induce infringement of claims 20 and 26 of the '622 patent.

- The "video" limitation is never satisfied, and therefore, Hotels.com is not liable for infringement of claim 20 of the '622 patent and claim 23 of the '291 patent.

- The "advertising" limitation is never satisfied, and therefore, Hotels.com is not liable for infringement of claim 23 of the '291 patent.

## III. LEGAL STANDARDS

At all times, the plaintiff bears the burden of proving infringement. *See, e.g., Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). Even at summary judgment, the defendant bears no burden of proving non-infringement. *See Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1309 (Fed. Cir. 2006) ("nothing more is required than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations"). On the contrary, it is incumbent on the plaintiff to come forward with admissible evidence that would support a finding of infringement. *See Novartis*, 271 F.3d at 1050-51 ("Under modern summary judgment law, a patentee who fails to provide probative evidence of infringement runs the risk of being peremptorily nonsuited.").

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Genuine issues of material fact cannot arise by "unsubstantiated expert testimony." *Jones Motor Co., Inc. v. Holtkamp, Liese, Beckemeier & Childress, P.C.*, 197 F.3d 1190, 1194-95 (7th Cir.

9

1999) (affirming summary judgment where plaintiff's expert offered only a "bare conclusion without data").

### A. The law of direct infringement under 35 U.S.C. § 271(a).

Direct infringement exists when one "without authority makes, uses, offers to sell, or sells" a patented invention within the United States.  35 U.S.C. § 271(a).

#### 1. "Making" and "using" a claimed system.

The Federal Circuit recently clarified the infringement standard for "making" a patented system under § 271(a), holding that "making" requires an accused infringer to "combine all of the claim elements," in order to "complete[] the system."  *Centillion Data Sys., LLC v. Qwest Comm'ns Int'l, Inc.*, 631 F.3d 1279, 1287-88 (Fed. Cir. 2011).  In *Centillion*, the system claims at issue had four components: three components maintained by the accused service provider (for storing, processing, and transferring data) and one component maintained by an end user (a personal computer used to perform additional processing).  *Id.* at 1281-82.  The Federal Circuit held that the accused infringer could "not 'make' the patented invention under § 271(a) as a matter of law," since the "customer, not [the accused infringer], completes the system by providing the 'personal computer data processing means.'"  *Id.* at 1287-88.

*Centillion* also clarified the standard for "use" of a patented system within the meaning of § 271(a): "We hold that to 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system *as a whole* and obtain benefit from it."[2]  *Id.* at 1284.[3]  The Federal Circuit framed the infringing use inquiry in terms of who "put the [accused]

---

[2]   Except where stated, all emphasis has been added and internal citation omitted.

[3]   In *Centillion*, the Federal Circuit explained that it had "never directly addressed the issue of infringement for 'use' of a system claim that includes elements in the possession of more than one actor."  631 F.3d at 1283.

This Court, however, addressed infringing use in a prior CIVIX litigation, in *CIVIX-DDI, LLC v. Cellco Partnership et al.,* 387 F. Supp. 2d 869, n. 11 (N.D.Ill. 2005).  In denying summary judgment there, this Court

system into service" by "using all portions of the claimed invention." *Id.* The Court held that the accused infringer, "as a matter of law… does not 'use' the patented invention." *Id.* at 1286. "While [accused infringer] may make the back-end processing elements, it never 'uses' the entire claimed system because it never puts into service the personal computer." *Id.* Instead, the Court held it was the customer who put the accused system into service from its personal computer. *See id.* at 1284-87.

### 2. "Using" a claimed method.

A method claim can only be infringed through "use:" "For a process patent or method patent claims, infringement occurs when a party performs all of the steps of the process." *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379 (Fed. Cir. 2007); *see e.g., NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1317-18 (Fed. Cir. 2005) (an infringer must "do[] or perform[] each of the steps recited").

### 3. The law of vicarious liability for joint infringement.

Where a third-party customer of the accused infringer is required to "make" or "use" a claimed system or "use" a claimed method, the accused infringer may only be liable for direct infringement when the accused infringer is vicariously liable for the customer's actions under a so-called "joint infringement" theory. *See, e.g., Centillion*, 631 F.3d at 1286, 1288 ("The only way [patentee] can establish 'use' by [accused infringer] is if [accused infringer] is vicariously liable for the actions of its customers such that 'use' by the customers may be attributed to

---

determined that a material issue of fact existed as to "whether Expedia exercises control over its system and obtains beneficial use." *Id.* at 886. At that time, however, the Court did not have the benefit of the Federal Circuit's recent guidance in *Centillion*, which has nearly identical facts and establishes that service providers like Hotels.com cannot "use" the system claimed in the '622 patent, because it "never puts into service the personal computer" (*i.e.*, the claimed "port" of the asserted claims here). Nor did this Court have the benefit of *Cross Medical Products v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1311-1312 (Fed. Cir. 2005) (holding that a medical device manufacturer did not directly infringe the asserted device claim, because "if anyone makes the claimed apparatus, it is the surgeons," and so "no reasonable juror could find that the accused infringer itself makes or uses the entire claimed apparatus").

[accused infringer].”); *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311, 1319-20 (Fed. Cir. 2010) (*en banc* reh'g granted April 20, 2011) (noting that for joint infringement "what is essential is ... whether the relationship between the parties is such that acts of one may be attributed to the other"); *see also Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1330 (Fed. Cir. 2008) (holding that an auction-website provider did not jointly infringe with its customer-bidders as a matter of law, because there was "no legal theory under which [the defendant] might be vicariously liable for the actions of the bidders," since "control[ing] access to its system and instruct[ing users] on its use is not sufficient to incur liability for direct infringement").

The Federal Circuit has repeatedly confirmed that an accused infringer is only vicariously liable for customer acts if an agency relationship exists between the parties or the customer is contractually obligated to the accused infringer to perform the infringing acts. *See, e.g., Akamai*, 629 F.3d at 1320; *Centillion*, 631 F.3d at 1286, 1288 (holding that accused infringer was not vicariously liable for actions of its customers, because "customers do not act as [accused infringer's] agents as a matter of law nor are they contractually obligated by [accused infringer] to act"); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1330 (Fed. Cir. 2008) ("That [defendant] controls access to its system and instructs [customers] on its use is not sufficient to incur liability for direct infringement."); *Cross Med.*, 424 F.3d at 1311-1312 (holding that an accused manufacturer of a medical device does not "make" the apparatus, as required for direct infringement, because "if anyone makes the claimed apparatus, it is the surgeons, who are, as far as we can tell, not agents").

**B. The law of induced infringement under 35 U.S.C. § 271(b).**

Indirect infringement under § 271(b), such as inducement, requires a predicate finding of direct infringement. *See, e.g.*, *ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501 F.3d 1307,

1312 (Fed. Cir. 2007) ("to prevail on an inducement claim, the patentee must establish first that there has been direct infringement").

In addition, "[i]nducement requires a showing that the alleged inducer [1] knew of the patent, [2] knowingly induced the infringing acts, and [3] possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1329 (Fed. Cir. 2009) (granting summary judgment of no inducement, even where direct infringement may exist, because the accused product instructions "do not evidence a specific intent to encourage infringement, since they teach … action which [defendant] could have reasonably believed was non-infringing" and the design of the accused device resulted in "substantial non-infringing uses").

### C. The law of willful infringement.

Proof of willful infringement "requires at least a showing of objective recklessness." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (*en banc*). That is, the plaintiff "must show by clear and convincing evidence that the [alleged] infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id*. The accused infringer's state of mind is not relevant to this objective inquiry. *See id*. Rather, it is the risk of harm that is objectively assessed, as determined by the record in the infringement proceeding. *See id*. Where an accused infringer's position is "susceptible to a reasonable conclusion of no infringement," this objective threshold cannot be met. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1310 (Fed. Cir. 2011). Accordingly, where the record indicates that an accused infringer's legitimate and reasonable defenses could lead to such a reasonable conclusion, there cannot be any willful infringement. *See id.* at 1310-11.

13

## IV.    ARGUMENT

### A.  As a matter of law, Hotels.com does not directly infringe the asserted claims.

Because Hotels.com does not make or use third-party computer "ports," and is not vicariously liable for third parties that do, Hotels.com cannot directly infringe the patents-in-suit.

#### 1.   Hotels.com does not directly infringe the '622 patent individually because it cannot "make" or "use" the accused system.

CIVIX accuses Hotels.com of infringing the asserted '622 claims by "making" and "using" the accused system itself — even as it concedes, fatally, that third-party action is required to complete that system and put it into service.  SUF at ¶¶17, 22-23.  Significantly, it is undisputed that a third-party "user" separate and apart from Hotels.com must provide her own computer or web-enabled device to satisfy the claimed "port" element of the '622 claims.  SUF at ¶28.  As such, Hotels.com cannot directly infringe these claims as a matter of law.

Hotels.com cannot directly infringe the '622 claims by "making" the system itself, because CIVIX only accuses "personal computers and other web enabled devices (each having interactive user interfaces) of Hotels.com's *customers*" as meeting the "port" limitation.  SUF at ¶28.  Therefore, the accused system is not complete until these third-party customers connect their own computer "ports" to the accused Hotels.com sites.  SUF at ¶22.  As in *Centillion*, where a third-party supplies a necessary claimed component, Hotels.com cannot, as a matter of law, "make" the accused system pursuant to §271(a).  *See* 631 F.3d at 1288 ("In order to 'make' the system under §271(a), [defendant] would need to combine all of the claim elements-this it does not do.  The customer, not [defendant], completes the system by providing the 'personal computer data processing means' and installing the client software.").

Likewise, Hotels.com cannot directly infringe the '622 claims by "using" the accused system.  By CIVIX's own admission, the accused Hotels.com system is only "put into service"

14

after a user of the accused site (1) loads her personal computer or web-enabled "port"; (2) connects her "port" to the Internet; (3) loads the accused www.hotels.com site user interface; and (4) performs a search accused of infringement. SUF at ¶¶22-23, 28; *see also* SUF at ¶25. Should the user elect to do otherwise, the accused system is not put into service. *See id.* Nor could it be, as the claim itself requires the actions of a human being "user." SUF at ¶¶18-19 (requiring "inputs by the user") and ¶20; *see also* D.I. 650 at 31 (construing "user" as a "human being"). Therefore, as in *Centillion*, while Hotels.com "may make the back-end processing elements, it never 'uses' the entire claimed system because it never puts into service the personal computer" the asserted claims require. *See* 631 F.3d at 1286; *compare with* SUF ¶¶26-28.

### 2. Hotels.com does not directly infringe the '291 patent individually because it cannot "use" the accused method.

CIVIX baselessly accuses Hotels.com of directly infringing claim 23 of the '291 patent by practicing each of the recited steps, despite the fact that by its plain text, the claimed method is, in each and every instance, only ***initiated*** by a third-party user's "inputs at the one port" and only ***completed*** by the third-party user's "port" fetching information so that "a user at the port may locate the one item of interest." SUF at ¶¶17, 29-34. Because a third-party "user" and her computer "port" are required to perform the claimed process, Hotels.com cannot itself directly infringe the claim. SUF at ¶¶32, 34; *see also* SUF at ¶33. Put simply, both the claim and CIVIX's infringement allegation require third-party action beyond Hotels.com.

The '291 prosecution history, moreover, additionally confirms the need for independent user action beyond Hotels.com. SUF at ¶¶30-31. To secure allowance of claim 23, CIVIX specifically added the final claim limitation: "wherein a user at the port may locate the one item of interest," which requires a user's "port" to fetch or download location information and provide

it to the user.[4]  CIVIX's prosecution decision to require user action independently disposes of its direct infringement claim that Hotels.com performs the method by itself.  *See, e.g., Desenberg v. Google, Inc.,* 392 Fed. Appx. 868, 870-72 (Fed. Cir. 2010) (affirming Rule 12(b)(6) dismissal because accused infringer "does not itself perform all of the steps of the claim," and in particular, the "wherein" step added during prosecution that required user action).

This is not a case where the acts of a third-party customer are peripheral to the claimed method performed.[5]  To the contrary, the parties agree that "if nobody ever executed a search on the Hotels.com site, Hotels.com could not supply information as claim 14 [as incorporated into claim 23] requires."  SUF at ¶34.

### 3. Hotels.com does not jointly infringe the '622 patent or '291 patent because it is not vicariously liable for actions of its third-party customers.

Aware that its patent claims and infringement allegations extend far beyond Hotels.com, CIVIX seeks to preserve its case by contending that Hotels.com should be found liable for jointly infringing the patents-in-suit with its customers, despite the textbook law to the contrary.  SUF at ¶15.  To be sure, no "joint infringement" liability (*i.e.* vicarious liability) can attach because CIVIX has not demonstrated and cannot demonstrate any allegedly-infringing conduct by customers attributable to Hotels.com.  *See, e.g.*, *Centillion*, 631 F.3d at 1287 (concluding "as a matter of law, that [accused infringer] is not vicariously liable for the actions of its customers" because it "in no way directs its customers to perform nor do its customers act as agents");

---

[4]    During prosecution, CIVIX amended claim 24 — now claim 14 — to add:  "wherein a user at the port may locate the one item of interest." SUF at ¶30.  This had been identified during an interview between CIVIX and the patent examiner as necessary to overcome prior art.  *See id.*  The USPTO relied on that amendment in allowing the claims, noting that the claimed invention involved "downloading" at the port, while that the "prior art of record ... does not teach the ***fetching*** of the item from a remote database through the Internet."  SUF at ¶31.

[5]    *Cf. SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1330-31 (Fed. Cir. 2010) (reasoning that SiRF performed all of the steps, because "SiRF initiates the process" and end-user GPS "devices and software. . . . automatically perform the disputed steps of the claims at issue").  Unlike *SiRF*, claim 23, here, requires the "user" and the user's computer "port" to actively perform steps of the claimed search.

*Akamai,* 629 F.3d at 1319 ("what is essential is ... whether the relationship between the parties is such that acts of one may be attributed to the other").

The parties agree that the Hotels.com customers that CIVIX accuses of infringement are independent actors, not agents of Hotels.com. SUF at ¶35-37. CIVIX does not allege that Hotels.com has ever exercised any type of legal control over these individuals. *See id.* In fact, as CIVIX fundamentally concedes, it is ***entirely*** the decision of the customer whether to perform an accused search on any accused site. SUF at ¶¶ 32, 38; *see Centillion*, 631 F.3d at 1285-86 ("If the user did not make the request, then the back-end processing would not be put into service."). Moreover, the Terms & Conditions that govern use of the accused sites explicitly note: "no joint venture, partnership, or employment relationship exists between [a user] and the Hotels.com Companies as a result of . . . . use of this Website." SUF at ¶37. Because no agency relationship or contractual obligation exists, Hotels.com cannot be held vicariously liable for the actions of its customers, and no joint infringement liability exists. *See, e.g.*, *Muniauction*, 532 F.3d at 1330 (holding that auction-website provider did not jointly infringe with its customer-bidders as a matter of law since "control[ing] access to its system and instruct[ing] [users] on its use is not sufficient to incur liability for direct infringement").

In summary, because Hotels.com does not make or use third-party "ports," and is not vicariously liable for any third parties who do, Hotels.com cannot directly infringe the patents-in-suit.

### B. User-generated searches from the initial screen of the accused sites do not infringe the asserted claims of the '622 patent.

Because CIVIX's damages theory is based almost entirely on an accused initial screen search functionality of Hotels.com sites that does not infringe the '622 patent, Hotels.com moves for partial summary judgment of no infringement as to that functionality. See SUF at ¶¶39-41

17

████████████████████████████████████████; ¶¶42-43 ████████████

████████████████████████████████; ¶¶49-50, 59-61.  Hotels.com further moves for

partial summary judgment that the accused initial screen search interface does not evidence

induced infringement of the '622 patent as a matter of law.

### 1. The accused initial screen search functionality does not infringe because no user can provide or select an "associated category."

No initial screen search functionality of any accused site can satisfy the claimed

"associated category"/"selected category" limitation that is core to the asserted '622 claims.

To use the systems of claims 20 and 26 of the '622 patent in an infringing manner, a

user's computer "port" must generate a "request signal in response to inputs by the user which

are representative of the selected category and geographic vicinity."  SUF at ¶¶18-20, 54.[6]  Upon

receipt of a single request signal containing both category and location information, the claimed

system transmits responsive information from the "database."  SUF at ¶¶18-19 ("including . . .

"geographic position for at least one of the items of interest ***within the selected category and***

***geographic vicinity***").  The "star rating" or "property type" groupings accused by CIVIX here

(SUF at ¶¶55, 56) satisfy no aspect of the claims.

As an initial manner, CIVIX is unable to establish, as it must, how any accused "property

type" or "star rating" can satisfy the construed "associated category" element.  Under the Court's

construction, the claimed "associated category" element is not only input or "selected" by the

user, but is also the basis, in part, for information returned to the user.   SUF at ¶52; *see also* D.I.

650 at 10 (describing the user's category selection of "music stores:" "if a user of the invention

---

[6]  To be sure, the parties have stipulated that the claimed "request signal" must be "a ***single*** electronic
representation of a user's selection of at least one category and at least one geographic vicinity."  SUF at ¶ 53.

wishes to locate music stores ..., she can command the display of music stores").   Nonetheless, CIVIX's infringement expert cannot identify:

- how or what Hotels.com database stores any of the categories CIVIX accuses (SUF at ¶68);

- how long any of these accused categories have existed in any Hotels.com database (SUF at ¶69); or

- how Hotels.com searches — or has ever searched — its databases for any such category (SUF at ¶70).

These admissions not only demonstrate CIVIX's fundamental ignorance of the system it has accused, but fundamentally foreclose CIVIX's ability to prove infringement of the claim.  *See, e.g., Yoon Ja Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1320 (Fed. Cir. 2006) (affirming JMOL of non-infringement where plaintiff's expert offered "conclusory testimony" and "did not support this determination with any examinations or tests of the actual accused products").

Dispositively, nor can CIVIX prove that any third-party user has ever "provided" or "selected" a star rating or property type, as the Court's construction requires, on any accused initial screen.  SUF at ¶¶52, 57-58.  To the contrary, publicly-available screenshots of the initial screen search functionality readily confirm that a user cannot "provide or select" any "star rating" or "property type" on any initial screen as CIVIX incorrectly accuses; rather, users have only ever been able to input a location of their choosing.[7]  SUF at ¶39, 42.

No doubt aware that Hotels.com has never offered any accused initial screen search interface that permits a user to "provide or select" either a star rating or property type, CIVIX chose to contend for the first time in expert discovery that "whether or not a user selects a

---

[7]   Of note, a user-selected location, such as a city or destination, cannot satisfy the "associated category" limitation for multiple reasons.  First, CIVIX has not timely accused it.  SUF at ¶¶55-56.  Second, and more significantly, a user-selected location alone cannot literally meet the claim requirement for *both* a "selected category and geographic vicinity" input.  SUF at ¶54.

category, the website will *imply* one." SUF at ¶¶59-61. For example, CIVIX's expert narrates his investigation as follows:

> I *consciously chose to remain at the initial screen thereby selecting the property type category to be hotels* from among the other available options such as 'suites, condos, bed & breakfast.' I selected Chicago as my destination city and clicked the 'GO' button which sent a single signal to Hotels.com representative of my selected category and geographic vicinity."

SUF at ¶61. In other words, CIVIX alleges that by *doing nothing*, a user actually selects the property type of "hotels." SUF at ¶60 ("Q. So by doing nothing, it's your understanding the user selected a category? A. By staying on this web page, consciously, yes."); *but see* SUF at ¶62.

CIVIX's theory of "implied" selection fails as a matter of law. First, as construed, the claimed associated category must be "provided or selected by the user." D.I. 650 at 7. CIVIX's argument of an "implied" category selection is an end-run around the construction's clear requirement of user input and is nothing more than an attempt to resurrect CIVIX's proposed, but rejected, "associated category" construction requiring no user action. *See id.* at 4-5, 7-8. In rejecting CIVIX's proposal, this Court noted that CIVIX's construction was foreclosed by the written description of the patents, which explicitly state "a user selects the associated category." *See id.* at 8; *see also* SUF at ¶¶18-19 ("port generating the request signal in response to *user inputs by the user* which are representative of the selected category and geographic vicinity, the port having a *user interface for accepting the inputs*"). CIVIX cannot ignore the Court's construction and claim infringement by alleging that an implied action by the website satisfies an *affirmative* action by the *user*. *See, e.g.*, *Telemac Cellular Co. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1332 (Fed. Cir. 2001) (affirming summary judgment of non-infringement where "[plaintiff's] infringement analysis depended on that [rejected] construction").

Second, CIVIX's theory has no basis in the undisputed facts. ███████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ CIVIX does not and cannot

dispute this, and its own expert admits ambivalence as to whether any search on the accused sites

has ever defaulted to the "property type" CIVIX accuses:

> Q. And, specifically, you can't speak with certainty to whether or not any property type category was applied as a default to searches on the website, correct?
>
> A. I cannot speak with any certainty.

SUF at ¶67; *see also* SUF at ¶66.

Even worse, CIVIX's expert conceded that his "associated category" conclusions related

to "property type" were based not on any analysis of any accused Hotels.com database, but

rather his own layperson survey that some search results "looked to me like hotels":

> Q. When you looked at the search results for the search by city on the Hotels.com site, you have no understanding as to how those properties are recorded or classified in the Hotels.com database, correct?
>
> A. It is my understanding they were identified as hotels, because they looked to me like hotels. But, no, I did not see the internals of the database.

SUF at ¶65. CIVIX's wholesale inability to prove that any Hotels.com database is ever searched

on the basis of any accused "property type" or "star rating" for any accused initial screen search

provides an additional reason to grant summary judgment on this count. *See, e.g., Mid-State

Fertilizer Co. v. Exch. Nat'l Bank of Chi.*, 877 F.2d 1333, 1339 (7th Cir. 1989) (affirming

summary judgment despite expert testimony in favor of the non-moving party, because the

expert did not reason from "a firm foundation").

For these reasons, partial summary judgment of no direct and induced infringement of the '622 patent with respect to user-generated searches from the initial screen of the accused sites should be granted. Based on the undisputed facts, CIVIX cannot prove that the associated category limitation is or has ever been met by the initial screen search functionality of the accused sites. *See, e.g.*, *ACCO,* 501 F.3d at 1312, 1314 (finding "the jury verdict of inducement cannot stand" because "the record lacks substantial evidence to support the jury's finding of direct infringement").

### 2. The design of the accused initial screen search interface does not evidence a specific intent to induce infringement of the '622 patent.

The Court should also grant summary judgment of no induced infringement for user-generated searches from the initial screen of the accused sites because there is no evidence that Hotels.com intended to encourage infringement by its customers.

CIVIX has pointed only to the "design of the user interfaces" as proof of inducement. SUF at ¶16. But the one-input user interface of the accused initial screen — allowing input of location — plainly contradicts and cannot support any inference of intent to encourage infringement of claims explicitly requiring a system with two inputs (*i.e.*, a selected category and geographic vicinity). *Compare* SUF at ¶¶39, 42 *with* ¶¶18-19; *see, e.g., Vita-Mix*, 581 F.3d at 1328-29 (affirming summary judgment of no induced infringement in part because defendant "could have reasonably believed [its product] was non-infringing").

### C. Hotels.com does not infringe the '291 patent because Hotels.com does not store and supply "advertising information about a business."

Hotels.com does not infringe claim 23 of the '291 patent for the additional reason that the banner ads CIVIX accuses do not satisfy the "advertising information" claim limitation. *See* SUF at ¶¶29, 71 ("advertising information" limitation).

22

Hotels.com neither "stores" nor "supplies" the banner ads CIVIX accuses.  SUF at ¶¶73, 76-77.  As CIVIX's expert concedes, to infringe, the claim requires that advertising "supplied" to the user be "stored" in an accused database.  SUF at ¶72 ("Q.  So the information that's supplied in claim 23 has to be stored in the database, correct?  A.  Correct").  CIVIX has not identified any Hotels.com database that stores the accused banner advertising.  *See* SUF at ¶75.  ███████

████████████████████████████████████████████████████████████████████

████████  SUF at ¶¶76-77.  Accordingly, by CIVIX's own admission, the claim is not and cannot be infringed by Hotels.com.  SUF at ¶74 ("Q.  So if Hotels.com does not have an advertisement in its database, there's no infringement of this claim?  A.  That seems to be.").

**D.  Hotels.com does not infringe any "video" element of any asserted claim.**

Both claim 20 of the '622 patent and claim 23 of the '291 patent require "video" to infringe.  SUF at ¶¶18, 29; *see also* SUF at ¶¶9, 92.  The only aspect of the Hotels.com system that CIVIX accuses of meeting these "video" limitations is a "virtual tour" feature that is not even available on the Hotels.com websites.  SUF at ¶81-82.  As a matter of fact and law, the "virtual tours" CIVIX has accused do not satisfy the "video" elements of claim 20 of the '622 patent and claim 23 of the '291 patent, providing an additional reason to grant summary judgment of no infringement of those claims.

To begin with, it is undisputed that the accused virtual tours have only been sporadically available in limited quantity for the multi-year period CIVIX accuses.  SUF at ¶¶82, 85, 88.  More significantly, *no* virtual tours are currently available on any accused site, ██████████

███████████████████████.  SUF at ¶82.  As such, summary judgment of no infringement is appropriate for that period.

For the brief period CIVIX alleges virtual tours were available for some properties on the accused sites, CIVIX's accusation remains wholly insufficient as a matter of law.  CIVIX cannot

and does not offer any evidence that the accused virtual tours were contained in any Hotels.com database (SUF at ¶83), as even its own expert concedes is required by the claims. SUF at ¶¶80, 92. ████████████████████████████████████████████████████████████████████

████████ SUF at ¶84. Summary judgment of no infringement for all accused periods is thus warranted.

Despite alleging continuous and uniform infringement for six-plus years, CIVIX cannot quantify: how long virtual tours were available on the accused websites (SUF at ¶85-86); how many users actually accessed virtual tours (SUF at ¶87); or even what proportion of properties had virtual tours (SUF at ¶88). CIVIX thus cannot establish with specificity the scope of the infringing use it alleges.

Finally, the accused virtual tours cannot satisfy the "video" limitation, which has been construed to require "a presentation of multiple sequential frames of image data." SUF at ¶79. Rather, ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████ *Compare* SUF at ¶¶89-90 *with* ¶79. Nor can CIVIX demonstrate otherwise, as its own expert conceded that an analogous wraparound frame at one moment in time is not a video, because it is "one picture" and "not a sequence." SUF at ¶91.

### E. CIVIX cannot sustain its willfulness burden.

CIVIX's further allegation of willful infringement similarly fails as a matter of law. Willfulness requires "***clear and convincing evidence*** that the infringer acted despite an

*objectively high likelihood* that its actions constituted infringement of a valid patent." *Seagate*, 497 F.3d at 1371. No such showing could ever be made here.

As outlined above, Hotels.com has raised multiple, valid non-infringement defenses for each asserted claim. For these reasons alone, CIVIX cannot prove that Hotels.com acted despite an "objectively high likelihood" that its acts constituted infringement of a valid patent. *See, e.g., Uniloc*, 632 F.3d at 1310-11 (upholding JMOL of no willfulness, because "accused infringer's position is susceptible to a reasonable conclusion of no infringement"); *Seagate*, 497 F.3d at 1371.

Furthermore, the litigation history confirms exactly the opposite. This Court has already established Hotels.com is a third-party beneficiary to licenses CIVIX previously entered, even granting partial summary judgment on the issue. *See* D.I. 263 at 26. As a result of USPTO reexamination, CIVIX has withdrawn two patents and a total of forty-seven claims from suit. SUF at ¶¶4-5, 7-8, 10-11. And following the Court's *Markman* ruling, CIVIX dropped additional claims. SUF at ¶¶12-13. Indeed, this Court has already determined that a former CIVIX defendant, who did not have the benefit of the above, did not willfully infringe these patents under the higher, pre-*Seagate* standard. *See, e.g., CIVIX-DDI*, 387 F. Supp. 2d at 902-03 (N.D. Ill. 2005).

## V. CONCLUSION

For the reasons above, Hotels.com's motion for summary judgment should be granted.

Dated:  May 4, 2011                 /s Atif Khawaja _____

Jonathan Putnam (jputnam@kirkland.com)
Atif Khawaja (akhawaja@kirkland.com)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900

Craig D. Leavell (cleavell@kirkland.com)
Aaron D. Charfoos (acharfoos@kirkland.com)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:       (312) 862-2200

*Attorneys for Defendants/Counterclaimants*
*Hotels.com, L.P., and Hotels.com GP, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 4, 2011, a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF HOTELS.COM, L.P. AND HOTELS.COM GP, LLC'S OMNIBUS MOTION FOR SUMMARY JUDGMENT (PUBLIC VERSION) was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

> Raymond P. Niro, Esq. (rniro@nshn.com)
> David J. Sheikh, Esq. (sheikh@nshn.com)
> Gregory P. Casimer, Esq. (casimer@nshn.com)
> Paul Vickrey, Esq. (vickrey@nshn.com)
> NIRO, HALLER & NIRO
> 181 West Madison Street, Suite 4600
> Chicago, IL 60602
> ***Attorneys for Plaintiff CIVIX-DDI Inc.***

/s Craig D. Leavell

*Attorney for Defendants/Counterclaimants*
*Hotels.com, L.P. and Hotels.com GP, LLC*
