## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CIVIX-DDI, LLC,                         )
                                        )
        Plaintiff,                    )     No. 05 C 6869
                                        )
        v.                            )     Hon. Amy J. St. Eve
                                        )
HOTELS.COM, LP and HOTELS.COM           )
GP LLC,                                 )
                                        )
        Defendants.                   )

### MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

       Plaintiff Civix-DDI, LLC ("Civix"), accuses Defendants, Hotels.Com, LP, and

Hotels.Com GP, LLC (collectively "Hotels.com" or "Defendants"), of infringing claims 20 and

26 of U.S. Patent No. 6,385,622 ("the '622 patent") and claim 23 of U.S. Patent No. 6,415,291

("the '291 patent"). (R. 203.) Hotels.com has moved for summary judgment, arguing that,

pursuant to the undisputed evidence in the record, no reasonable jury could find that it has

infringed any of the asserted claims. (R. 678.) For the reasons explained below, the Court

grants Hotels.com's motion for summary judgment.

### BACKGROUND

**I.**    **The Litigation to Date**

       Civix brought this lawsuit on December 6, 2005, when it filed a patent-infringement

lawsuit against Hotels.com, as well as other companies that are no longer part of these

proceedings. (R. 1.) On August 24, 2006, Civix filed a Second Amended Complaint, alleging

that Hotels.com had infringed the '291 and '622 patents, as well as other intellectual-property

rights that are no longer pertinent to the case.  (R. 203.)  On September 17, 2007, the Court

stayed the proceedings pending the U.S. Patent and Trademark Office's ex parte reexamination

of the '291, '622, and other patents.  (R. 493 at 1.)  The PTO issued reexamination certificates

for the '622 and '291 patents, which cancelled many, though not all, of the claims. (R. 494-2; R.

494-3.)  On October 25, 2010, the Court construed eight disputed claims.  (R. 650.)  Fact and

expert discovery closed on January 22, 2010, and April 4, 2011, respectively.  (R. 496; R. 672.)

Civix contends that Hotels.com has infringed claims 20 and 26 of the '622 patent, as well

as claim 23 of the '291 patent.  (R. 690 at 5.)  It accuses "'location-based search services for

hotels, condos, bed & breakfasts and the like through the Hotels.com web site at

http:www.hotels.com and other URLs (such as www.hoteles.com) that access the same hotel

database servers' for the period from May 3, 2004 to the present."  (*Id.*)  Civix submits that

"Hotels.com has directly infringed the asserted claims both individually and jointly with

consumer users by providing forms that require the insertion of input parameters and by

returning results in response to the user inputs."  (*Id.*)  Civix further alleges that "Hotels.com has

induced others to infringe the asserted claims through the design of the user interface of . . . the

'accused sites' . . . and by advertising and promoting such websites."  (*Id.* at 6.)  It also maintains

that Hotels.com "'makes and uses' the accused system and 'practices' the accused method."

(*Id.*)

Hotels.com now moves for summary judgment.  (R. 678.)  Specifically, Hotels.com

argues that the evidence, construed in the light most favorable to Civix, entitles it to judgment as

a matter of law as to no direct and no induced infringement of both claim 20 of the '622 patent

and claim 23 of the '291 patent.  (*Id.* at 1.)  With respect to claim 26 of the '622 patent, it seeks

summary judgment of no direct infringement, as well as partial summary judgment of no induced infringement, with respect to user-generated searches from the initial screen of the accused Hotels.com web sites. (*Id.*) Finally, Hotels.com seeks summary judgment of no willful infringement.

## II.    The Asserted Claims

Asserted dependent claim 20 of the '622 patent claims a "[s]ystem of claim 19, wherein the communications link comprises the Internet." (R. 690 at 7.) Claim 19, in turn, provides for a "[s]ystem according to claim 18, wherein the additional detail comprises video." (*Id.*) Claim 18 states a "[s]ystem according to claim 1, wherein the portion of information comprises additional detail for at least one of the items of interest." (*Id.*) Finally, independent claim 1 is directed to a:

> [s]ystem for remotely determining the position of a selected category of items of interest in a selected geographic vicinity from a database, the system comprising
>
> (A) a database for storing information about a plurality of items of interest, the information including, for each of the items of interest, a geographical position and at least one associated category,
>
> (B) a communications link for communicating between a user of the system and the database,
>
> (C) an information controller for transmitting a portion of the information in the database to the user via the link upon receipt of a request signal representative of a selected category and geographic vicinity, the transmitted portion of the information including identification of geographic position for at least one of the items of interest within the selected category and geographic vicinity, and
>
> (D) a port for remotely accessing the portion of information via the link, the port generating the request signal in response to inputs by the user which are representative of the selected category and geographic vicinity, the port having a user interface for accepting the inputs and for indicating to the user the position [*sic*] at least one of the items of interest in the selected category and geographic vicinity.

(*Id.* at 6-7.)

Asserted dependent claim 26 of the '622 patent claims a "[s]ystem of claim 25, wherein the communications link comprises the Internet." (*Id.* at 7-8.) Claim 25 provides for a "[s]ystem according to claim 18, wherein the additional detail comprises digital pictures." (*Id.*) Claim 18, as well as claim 1, upon which the former is dependent, are as recounted above. (*Id.*)

The last asserted claim is dependent claim 23 of the '291 patent, which is directed to "[a] method of claim 21, wherein the step of supplying information comprises supplying one or more video clips and digitized images related to the one item of interest." (*Id.* at 13.) Claim 21 comprises "[a] method of claim 14, wherein the step of supplying information comprises supplying advertising information about a business." (*Id.*) Finally, independent claim 14 claims:

> A method for determining the position of one or more items of interest in a selected category, comprising:
>
> storing information about the items of interest in a database, the information including, for each of the items of interest, at least one associated category and spatial detail defining a geographic position; and
>
> supplying information about at least one of the items of interest to one of a plurality of ports, connected to the database at least in part through the Internet, in response to inputs at the one port, wherein a user at the port may locate the one item of interest.

(*Id.* at 12-13.)

In moving for summary judgment, Hotels.com submits that, according to the undisputed evidence, user-generated searches from the initial screen of the accused sites do not, and have never, satisfied the "associated category" and "selected category" limitations common to asserted claims 20 and 26 of the '622 patent, thus entitling it to summary judgment. (R. 679 at 14.) Hotels.com also argues that all "asserted claims require the participation of third parties whose actions cannot be attributed to Hotels.com," thus entitling Defendants to summary

4

judgment as to direct infringement of each asserted claim. (*Id.*) Further, it contends that the evidence does not support a finding that its accused sites satisfy the "video" limitation of claim 20 of the '622 patent, the "video-clip" element of claim 23 of the '291 patent, or the "advertising" limitation of claim 23 of the '291 patent. (*Id.*) Finally, Hotels.com submits that there is insufficient evidence in the record to sustain a reasonable jury verdict of willful infringement. (*Id.* at 29-30.)

## LEGAL STANDARD

Although this is a patent case that is appealable to the Federal Circuit, Seventh Circuit law applies to procedural summary-judgment issues. *See, e.g.*, *Shum v. Intel Corp.*, 633 F.3d 1067, 1076 (Fed. Cir. 2010) ("We review grants of summary judgment . . . under the law of the regional circuit, since they present procedural issues not unique to patent law."); *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1047-48 (Fed. Cir. 2000).

Direct infringement exists when one "without authority makes, uses, offers to sell, or sells" a patented product or process within the United States. 35 U.S.C. § 271(a). "To prove direct infringement, the plaintiff must establish by a preponderance of the evidence that one or more claims of the patent read on the accused device literally or under the doctrine of equivalents." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005). Similarly, the Federal Circuit has held that "a method claim is directly infringed only if each step of the claimed method is performed." *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328 (Fed. Cir. 2008).

Direct infringement can occur through the combined actions of multiple parties only if "one party exercises 'control or direction' over the entire process such that every step is

attributable to the controlling party, i.e., the 'mastermind.'" *Id.* at 1329 (quoting *NTP, Inc. v. Research in Motion*, 418 F.3d 1282, 1380-81 (Fed. Cir. 2005)); *see also Golden Hour Data Sys., Inc. v. emsCharts, Inc.*, 614 F.3d 1367, 1380 (Fed. Cir. 2010).  "[T]he control or direction standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method." *Muniauction*, 532 F.3d at 1330.

Separately, Section 271(b) provides that "whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).  The Supreme Court recently rejected the view that "deliberate indifference to a known risk that exists" is appropriate and instead held that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011).

## ANALYSIS

I.     **The Law Entitles Hotels.com to Summary Judgment as to No Direct Infringement of Claims 20 and 26 of the '622 Patent Because It Can Neither "Make" nor "Use" the Accused System**

Independent claim 1 of the '622 patent, upon which asserted claims 20 and 26 of the '622 patent depend, requires "a port for remotely accessing the portion of information via the link, the port generating the request signal in response to inputs by the user which are representative of the selected category and geographic vicinity, the port having a user interface for accepting the inputs and for indicating to the user the position [*sic*] at least one of the items of interest in the selected category and geographic vicinity." (R. 690 at 7.)  Hotels.com moves for summary judgment as to no direct infringement of the '622 patent based on this "port" limitation. (R. 679 at 19-20.)  Hotels.com submits that it cannot itself satisfy this limitation because only its

6

customers' personal-computer and web-enabled devices constitute "ports." (*Id.* at 19.)

Civix has alleged that Hotels.com "makes and uses" the accused system. (R. 690 at 6.) Hotels.com argues that neither allegation can stand as to the '622 patent in light of the undisputed evidence concerning the port limitation. (R. 679 at 19-20.) Relying on *Centillion Data Sys., LLC v. Qwest Comm'ns Int'l, Inc.*, 631 F.3d 1279, 1288 (Fed. Cir. 2011), Hotels.com contends that it cannot "make" the accused system because a third party must supply a necessary claimed component. (*Id.* at 19.) Similarly, and again relying on *Centillion*, it maintains that it cannot directly infringe the '622 patent's asserted claims by "using" the accused system because the Hotels.com system only operates after a user loads her "port," connects the same to the Internet, loads the Hotels.com website, and performs a search. (*Id.* at 19-20.)

Civix opposes this argument, asserting instead that claims 20 and 26 of the '622 patent involve a "system" that Hotels.com can infringe without regard to the actions of a third-party user. (R. 688 at 24-27.) Civix maintains that it is not *Centillion* that controls in this matter, but *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011). The Court agrees with Hotels.com, and grants summary judgment of no direct infringement of claims 20 and 26 of the '622 patent.

In early 2011, the Federal Circuit addressed the question of what constitutes "use" of a system under Section 271(a) in *Centillion*, a case that involved a patented "system for collecting, processing, and delivering information from a service provider, such as a telephone company, to a customer." *Centillion*, 631 F.3d at 1281. The first claim of the asserted patent, which was illustrative of the other asserted claims, involved a "'back-end' system maintained by the service provider[,]" as well as a "'front-end' system maintained by an end user." *Id.* The back-end

system was comprised of three elements: "1) storage means for storing transaction records, 2) data processing means for generating summary reports as specified by a user from the transaction records, [and] 3) transferring means for transferring the transaction records and summary reports to the user[.]" *Id.* A single claim element—"personal computer data processing means adapted to perform additional processing on the transaction records"—constituted the front-end system. *Id.* The accused products consisted of "back office systems and front-end client applications that a user may install on a personal computer." *Id.*

In that case, the Federal Circuit considered for the first the time the question of "use" of "a system claim that includes elements in the possession of more than one actor." *Id.* at 1283. It held that, "to 'use' a system for purposes of infringement, a party must put the invention into service, i.e., control the system as a whole and obtain benefit from it." *Id.* at 1284. Furthermore, "direct infringement by 'use' of a system claim 'requires a party to use each and every element of a claimed system.' In order to 'put the system into service,' the end user must be using all portions of the claimed invention." *Id.* It found that the district court had erred, however, in holding that a party must exercise direct or physical control over each element of a system in order to "use" the same for the purpose of Section 271(a).

Applying these principles, the Federal Circuit held that the defendant's customer "used" the system as a matter of law when she created "a query and transmit[ted] it to Qwest's back-end." *Id.* at 1285. It explained:

> The customer controls the system on a one request/one response basis. This query causes the back-end processing to act for its intended purpose to run a query and return a result. The user may then download the result and perform additional processing as required by the claim. If the user did not make the request, then the back-end processing would not be put into service. By causing the system as a whole to perform this processing and obtaining the benefit of the

8

result, the customer has 'used' the system under § 271(a). If makes no difference that the back-end processing is physically possessed by [defendant.]

*Id.* at 1285.

The Federal Circuit then proceeded to find that the defendant, "as a matter of law, . . . does not 'use' the patented invention[,]" explaining that, "[t]o 'use' the system, Qwest must put the claimed invention into service, i.e., control the system and obtain benefit from it. While Qwest may make the back-end processing elements, it never 'uses' the entire claimed system because it never puts into service the personal computer data processing means. Supplying the software for the customer to use is not the same as using the system." *Id.* at 1286. Because Qwest was not vicariously liable for the actions of its customers, the patentee-appellant could not establish "use" by Qwest. *Id.* at 1286-87.

The Federal Circuit also addressed the meaning of "make" for the purpose of Section 271(a) within the context of a claimed system, concluding that "Qwest does not 'make' the patented invention under § 271(a) as a matter of law. Qwest manufacturers only part of the claimed system. In order to 'make' the system under § 271(a), Qwest would need to combine all of the claim elements—this it does not do. The customer, not Qwest, completes the system by providing the 'personal computer data processing means' and installing the client software." *Centillion*, 631 F.3d at 1288.

*Centillion* entitles Defendants to summary judgment of no direct infringement of claims 20 and 26 of the '622 patent. Civix's expert report opined that Hotel.com satisfies the "port" element because "Hotels.com used the personal computers and other web enabled devices (each having interactive user interfaces) of Hotels.com's customers to obtain user input and deliver search results in response to user requests." (R. 682-1 at 10.) Thus, Hotels.com does not "use"

or "make" the system in a manner cognizable under the Federal Circuit's opinion in *Centillion*. Indeed, Civix's expert testified in his deposition that the asserted claims of the '622 and '291 patents claim both front-end and back-end components.  (R. 682-2 at 8.)  His deposition on March 24, 2011, took place more than two months after the Federal Circuit rendered its decision in *Centillion*.  (*Id.* at 2; *Centillion*, 631 F.3d at 1279.)  He agreed that "a user's personal computer and other web-enabled devices access the Hotels.com site on the front end of the system," (*id.* at 11), and that Hotels.com's "internal networks" or "the databases that execute the queries and, basically, . . . the web servers" are "on the back end of the system[.]"  (*Id.* at 8, 11.) He conceded that "a user of Hotels.com starts a search on the front end of the Hotels.com system[,]" and that, "in response to the user's input on the Hotels.com site, the back end of the Hotels.com system processes that request and returns results."  (*Id.* at 10.)  He similarly agreed that a user's interaction with a database takes place on the front end.  (*Id.* at 8.)  He accepted the view that, "without any user input, the port cannot generate the request signal that the claim needs," and conceded that at least one element of the '622 patent would not be satisfied "if no one ever completed a search on the Hotels.com site."  (*Id.* at 16-17.)

Civix's expert attempts to distance himself from these concessions in a declaration filed in opposition to Hotels.com's motion for summary judgment.  (R. 690-2 at 3-5.)  It is well settled, however, that parties cannot use a declaration to contradict the declarant's prior deposition testimony to create a genuine dispute.  *See, e.g.*, *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 759 (7th Cir. 2006) ("A plaintiff cannot, however, create an issue of material fact by submitting an affidavit that contradicts an earlier deposition."); *see also Radar Indus., Inc. v. Cleveland Die & Mfg. Co.*, No. 10-CV-1335, 2011 WL 1150534, at *5 (Fed. Cir. Mar. 30, 2011)

(looking to the applicable law of the forum circuit for this rule).

In light of these undisputed facts, it follows under *Centillion* that Hotels.com does not directly infringe claims 20 and 26 of the '622 patent as a matter of law. *See also Kenexa Brassring, Inc. v. Taleo Corp.*, No. 07-CV-521, 2011 WL 2112386, at *2 (D. Del. May 26, 2011) (finding that the defendant "makes the back end processing elements, but it never 'uses' the entire claimed system because it never puts into service the display of said source data stream. The user must click on a hyperlink in order to display said stream").

Civix's reliance on *Uniloc* is unavailing. Although the accused system in that case entailed the use of computers operated by third parties, the claims of the asserted patent did not encapsulate the same. A brief discussion of the relevant facts of that case, as well as of the Federal Circuit's opinion, reveals why.

Microsoft's product-activation feature, which—the plaintiff contended—infringed its patent, involved a number of user actions, beginning with a user's entering a 25-character product key and then agreeing to a license agreement. *Uniloc*, 632 F.3d at 1297. At that stage, the relevant Microsoft software (which the company sought to protect through the accused product-activation system) would create product and hardware IDs on the user's computer. *Id.* at 1298. If the user chose to begin product activation, the software would send "a digital license request to Microsoft over the internet," including the IDs. *Id.* "At Microsoft's remote location, this information [was] entered into one of two software algorithms: the MD5 message digest algorithm ('MD5') for Office products and the SHA-1 secure hash algorithm ('SHA-1') for Windows products." *Id.* The Federal Circuit explained that the functionality of these algorithms lay "at the heart of this case." *Id.* Those algorithms created a "license digest" that Microsoft

11

encrypted and then sent "with the original data back to the user's computer." *Id.* at 1299. The software on the user's computer would then decrypt the message, recover the license digest, input the original ID and related information, and use the same MD5 or SHA-1 algorithms that Microsoft's computers used. *Id.* Finally, "Microsoft's Product Activation software [would] compare[] the local license digest and the remote license digest; if they match, the software is activated." *Id.*

After a jury verdict in favor of the patentee, Microsoft filed a motion for judgment as a matter of law because it "could not have directly infringed the system because [the claim required] acts to be taken on the user's local computer over which Microsoft [had] no control." *Id.* The district court denied the motion. *Id.* at 1301. On appeal, the Federal Circuit affirmed this holding. *Id.* at 1308-09. It observed that the asserted patent claim "severely hampered" Microsoft's argument because the patentee had structured its claim to capture infringement by a single party by focusing on one entity.[1] *Id.* at 1309 (quoting *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007)). Specifically, the claim "focuse[d] extensively on the 'remote registration station,' and define[d] the environment in which that registration station must function." *Id.* The court observed that Microsoft used that remote registration station and explained that the fact "[t]hat other parties are necessary to complete the environment in which the claimed element functions does not necessarily divide the infringement between the necessary parties." *Id.* Illustratively, the Federal Circuit pointed out that "a claim that reads '[a]n algorithm incorporating means for receiving emails' may require two parties to function,

---

[1] The patentee directed its asserted claim to "[a] remote registration station incorporating remote licensee unique ID generating means, said station forming part of a registration system . . . including local licensee unique ID generating means. . . ." *Uniloc*, 632 F.3d at 1309.

but could nevertheless be infringed by the single party who uses an algorithm that receives

emails.'" *Id.*   The court emphasized the importance of the fact that, in the case before it, "only

one party, Microsoft, makes or uses the remote registration station."  *Id.*

*Unil*oc does not benefit Civix in this case because, unlike that case, Hotels.com does not

"make and use the [claimed device] in the environment required by the claims."  *Id.*  The claim

asserted by Civix explicitly claims "a port for remotely accessing the portion of information via

the link, the port generating the request signal in response to inputs by the user[.]" (R. 690 at 7-

8.)  In contrast to *Uniloc*, where the asserted claim focused on a single party's operation of the

claimed system, the '622 patent claims a system operated by more than one party, being

comprised of a database, a communications link, an information controller, and a port.  (*Id.*)  In

light of Civix's own expert's concessions, there is no dispute that "a user of Hotels.com starts a

search on the front end of the Hotels.com system."  (R. 682-2 at 10.)  Nor is there a dispute that a

user's inputs through her personal computer or other web-based device, which access the

Hotels.com site, constitute the front end of the claimed system, while Hotels.com's "internal

networks" or "the databases that execute the queries and, basically, . . . the web servers" are "on

the back end of the system[.]"  (R. 682-2 at 8-11.)

*Centillion* held that a party "uses" a system only if it "control[s] the system as a whole

and obtain[s] benefit from it."  *Centillion*, 631 F.3d at 1284.  Direct infringement for "use" of a

system "requires a party to use each and every element of a claimed system."  *Id.*  As with the

defendant in *Centillion*, Hotels.com "never 'uses' the entire claimed system because it never puts

into service the [port]."  *Id.* at 1286.

Civix does not argue that Hotels.com is vicariously liable for its customers' actions. Nor does the evidence, viewed in the light most favorable to Civix, support a finding that Hotels.com controlled or directed the actions of its customers to perform the steps of the claimed system. No evidence supports a finding that an agency relationship or other contractual obligation existed between Hotels.com and those who use its challenged website. *See, e.g.*, R. 682-2, Dep. Testimony of Ophir Frieder, at 18 (commenting that Hotels.com employees "could be" users, but agreeing that he did not know whether any Hotels.com employees searched the website and booked hotels).

For that reason, the undisputed facts entitle Hotels.com to judgment as a matter of law of no direct infringement of claims 20 and 26 of the '622 patent. As such, Hotels.com is also entitled to judgment as a matter of law as to induced infringement of these claims. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1325 (Fed. Cir. 2009) ("In the absence of direct infringement, SAAT cannot be liable for induced infringement."); *see also Global-Tech*, 131 S. Ct. at 2067.

## II. Hotels.com Is Alternatively Entitled to Partial Summary Judgment of No Infringement of the '622 Patent as to the Initial Screen Search Functionality of Hotels.com Sites

As noted, asserted claims 20 and 26 of the '622 patent concern a "[s]ystem for remotely determining the position of a *selected category* of items of interest in a selected geographic vicinity from a database, the system comprising:

(A) a database for storing information about a plurality of items of interest, the information including, for each of the items of interest, a geographical position and at least one *associated category*,

(B) a communications link for communicating between a user of the system and the database,

14

(C) an information controller for transmitting a portion of the information in the database to the user via the link upon receipt of a request signal representative of a *selected category* and geographic vicinity, the transmitted portion of the information including identification of geographic position for at least one of the items of interest within the *selected category* and geographic vicinity, and

(D) a port for remotely accessing the portion of information via the link, the port generating the request signal in response to inputs by the user which are representative of the *selected category* and geographic vicinity, the port having a user interface for accepting the inputs and for indicating to the user the position [*sic*] at least one of the items of interest in the *selected category* and geographic vicinity

(R. 690 at 6-8) (emphasis added.)

Hotels.com moves for partial summary judgment of noninfringement of the '622 patent, arguing that, in light of the undisputed evidence, the initial screen search functionality of the accused site does not satisfy the patent's "associated category"/"selected category" limitation. (R. 679 at 22-27.) The Court has construed "associated category" to mean "a classification both stored in the database and provided or selected by a user that divides particular items of interest into subgroups." (R. 650 at 2.) The parties have stipulated that "request signal representative of a selected category and geographic vicinity" in the asserted claims of the '622 patent requires "a single electronic representation of a user's selection of at least one category and at least one geographic vicinity." (R. 690 at 23.)

In its fifth supplemental answer to Hotels.com's Interrogatory No. 2, which required Civix to "identify each claim that CIVIX alleges has been infringed by Hotels.com and [to] describe in detail each and every factual and legal basis for CIVIX's allegation that Hotels.com has infringed that claim[,]" Civix directed Hotels.com to its "representative" claim charts for Claims 20 and 26. (R. 691-2 at 3, 11.) Those charts both explained "at least one associated category" as "star rating, property type." (*Id.* at 16, 18.)

15

Nevertheless, Civix purports to dispute Hotels.com's statement of undisputed fact that "Civix has only explicitly identified Hotels.com's 'star rating' and 'property type' as meeting the claimed 'associated category' limitation." (R. 690 at 24.) Civix contends that "[t]he associated categories of 'star rating' and 'property type' were . . . examples in a set of 'representative claim charts[,]'" and that prior claim charts "explicitly identify other examples of associated categories." (*Id.*) Civix does not explain, however, what those other examples are. Nevertheless, the Court has reviewed the "prior claim charts," which arguably reveal that Civix's contention as to the "category" limitation differed from the "star rating" and "property type" examples Civix proffered more recently. Exhibit 4 to Civix's fourth supplemental answers to Hotels.com's Interrogatory No. 2 gives an example of a "category" as "hotel room or rooms for a number of adults or children." (R. 691-5 at 19.) It highlights as a "category" a part of the hotels.com website that asks a user to input the check-in and check-out dates, as well as the number of rooms and of people. (*Id.* at 17.) It gives an additional example of "a desired category" as "[n]umber of adults, children[.]" (*Id.* at 20.)

Civix does not explain, however, how the evidence in the record could support a reasonable jury finding that the accused Hotels.com system satisfies the claimed "associated category" or "selected category" limitation other than as "star rating" or "property type." (R. 688 at *passim*.) A generalized reference to prior interrogatory responses, lacking any explanation as to how the evidence would support the contentions contained therein and accompanied only by conclusory assertions, is insufficient to demonstrate a genuine dispute. *See, e.g.*, *Lottie v. W. Am. Ins. Co.*, 248 Fed. App'x 734, 739 (7th Cir. 2007) ("Lottie sets forth a five-page series of questions which he asserts establish the existence of a genuine issue of

material fact, but without providing any case citations in support of his litany of questions.

Lottie's argument . . . is inadequate."); *Nolan v. Cleland*, 686 F.2d 806, 812 (9th Cir. 1982)

("[Plaintiff's] speculative and conclusory arguments do not constitute the significantly probative

evidence required to create a genuine issue of material fact[.]"); *Minemyer v. B-Roc*

*Representatives, Inc.*, No. 07-CV-1763, 2010 WL 3787093, at *1 (N.D. Ill. Sept. 21, 2010) ("It

was not the court's job to piece together an argument for them, and research pertinent authority.

Their motion for summary judgment as to obviousness was denied following a long line of cases

holding that perfunctory, undeveloped arguments, without citation to pertinent authority, are

deemed waived.") (internal citations omitted).  Regardless, there is no dispute that Civix's expert

explicitly identified only  Hotels.com's "star rating" and "property type" as satisfying the

claimed "associated-category"/"selected-category" limitation.  (R. 690 at 24.)  Civix can proffer

no expert evidence, therefore, to support an argument that the accused system satisfies the

associated-category/selected-category element of the asserted claims of the '622 patent on the

basis of a feature other than "star rating" or "property type."

　　　In moving for summary judgment, Hotels.com argues that no initial screen search service

of any accused site has ever permitted a user to provide or select a "category" for the purpose of

the asserted claims of the '622 patent.  (R. 679 at 23-27; R. 694 at 12-16.)  Specifically, it

submits that the evidence would not support a finding that the accused site satisfies the

"category" limitation through a "star rating" or "property type."  (*Id.*)  The parties agree that

"CIVIX's infringement expert is unaware of any Hotels.com site where a user could select the

category of star rating on the initial screen of Hotels.com."  (R. 690 at 25.)  Thus, the parties'

dispute concerns the question whether the accused site's input of "property type" satisfies the

limitation. Hotels.com contends that a user's merely entering a city name into the initial screen search service does not involve a user input of "property type," thus entitling Hotels.com to summary judgment of noninfringment of the '622 patent as to searches run from the initial screen ("landing page") of the accused sites. (R. 694 at 13-14.) Hotels.com also maintains that the resulting search returns items of all property types, as opposed to the "selected" property type, which, it argues, similarly entitles it to summary judgment. (*Id.* at 13.)

In opposing Hotels.com's motion, Civix argues that the evidence creates a genuine dispute whether the accused system satisfies the "associated-category" limitation because there is a property-type classification stored in the database that a user provides or selects and that divides particular items of interest into subgroups, thus meeting the court's construction of "associated category." (R. 688 at 11.) Civix argues that the evidence supports such a finding on two alternative grounds. In the first place, Civix points to the "suites, condos, bed & breakfast" tab on the May 2006 landing page for the hotels.com website as the relevant property type. (*Id.*) By clicking on this tab, entering a geographical location, and clicking "Go," Civix maintains, a user leads the accused system to meet the associated-category limitation. (*Id.*) Second, and also as to the May 2006 landing page, Civix argues that a user could select the classification "hotels" directly from the landing page by simply entering a city name and clicking "Go." (*Id.* at 11-13.) This satisfies the associated-category limitation, Civix contends, because the accused system runs a query of a Hotels.com database for hotels in the selected city, and returns information about the same to the user. (*Id.* at 11-12.) In the alternative, Civix submits that, even if "hotels" alone do not constitute a "classification" for the purpose of "associated category," a basic search using cities alone constitutes a classification because such a search involves the implicit

18

selection of "both a location and property type (i.e., 'hotels')." (*Id.* at 13.)

Hotels.com is entitled to summary judgment of noninfringement of the asserted claims of the '622 patent as to the accused initial screen search interface. Even construed in the light most favorable to Civix, the evidence does not reveal a genuine dispute whether the May 2006 *landing page*'s tab for "suites, condos, bed & breakfast" satisfies the associated-category limitation. There is no dispute that the "suites, condos, bed & breakfast" tab leads to "different sections of the site." Indeed, Philippe Tulula, upon whose testimony Civix relies in opposing summary judgment, testified at his deposition that the 2006 web site tabs, including the "suites, condos, bed & breakfast" tab, were "not search parameters, they're different sections of the site." (R. 690-7 at 4.) Civix does not introduce any evidence to the contrary. (R. 688 at *passim*.) Hotels.com has moved for partial summary judgment as to the landing page, or "initial screen search interface," alone. (R. 679 at 22-27; R. 694 at 12-16.) In addition, the parties have stipulated that "request signal representative of a selected category and geographic vicinity" in the asserted claims of the '622 patent requires "a *single* electronic representation of a user's selection of at least one category and at least one geographic vicinity." (R. 690 at 23) (emphasis added.) Civix does not explain how a user's making inputs in multiple sections of the website could give rise to "a single electronic representation" of her selection from any *initial screen* of the accused sites. Civix's argument that there is a genuine dispute whether the initial screen of the accused sites satisfies the "associated-category" limitation based on the "suites, condos, bed & breakfast" tab on the May 2006 landing page therefore fails.

Nor can Civix establish a genuine dispute as to whether the initial screen of the accused sites from 2006 satisfies the "associated-" or "selected-category" limitation based on a user's

electing not to change the default search option (category) by simply entering a city name and

clicking "Go." Pointing out that "hotels" are an associated category, Civix argues that a user can

"select" hotels for the purpose of the asserted claims of the '622 patent by remaining on the

landing page. (R. 688 at 11-12.) Because "the Hotels.com website preselects 'hotels' over 'air,'

'suites,' 'vacation packages,' 'deals, 'destinations' or 'road trips,'" Civix submits, a user

"selects" hotels by declining to select another option from the initial screen. (*Id.* at 12.) Thus,

Civix maintains, "[a] category and geographic vicinity are 'input' from the May 2006 landing

page when a user clicks the 'Go' button, thereby transmitting a signal that represents both a

category ('hotels') and a geographic vicinity (the city name)." (*Id.*)

Civix's argument fails. The evidence in the record, construed in the light most favorable

to Civix, reveals that the default search for "hotels" does not in fact run a search for hotels—it

runs a search for every property type. (R. 682-7 at 14.) In submitting that there is no factual

dispute that "[t]he classification 'hotels' could also be selected from the landing page[,]" Civix

relies on Mr. Tulula's deposition testimony. (R. 690 at 39.) Mr. Tulula testified at his

deposition, however, that "the default search returns all property types. . . . The default search is

to do all of them." (R. 690-7 at 5.) It is true that Dr. Frieder opined that the accused device

satisfies the fourth element of claims 20 and 26 of the '622 patent:

> For example, when I performed a city search as mentioned above, Hotels.com
> used my computer and loaded its search page onto my browser. I consciously
> chose to remain at the initial screen thereby selecting the property type category
> to be hotels from among the other available options such as "suites, condos, bed
> & breakfast." I selected Chicago as my destination city and clicked the "GO"
> button which sent a single signal to Hotels.com representative of my selected
> category and geographic vicinity. . . . In response, Hotels.com returned a search
> result to my computer identifying hotels in Chicago and describing each hotel's
> position with information such as "Magnificent Mile."

20

(R. 682-1 at 10-11.)  Dr. Frieder testified in his deposition, however, that he "cannot speak with certainty" with respect to the question "whether or not any property type category was applied as a default to searches on the website[.]"  (R. 682-2 at 124.)[2]

Because the evidence, viewed in the light most favorable to Civix, establishes that the "default" selection of "hotels" does not entail a search for "hotels" alone, that default selection does not satisfy the "associated-category" limitation as a matter of law.  That limitation requires "a classification . . . that divides particular items of interest into subgroups[.]"  (R. 650 at 2.) The "default" provision for the purported category "hotels," therefore, does not divide items of interest into subgroups because there is no dispute that "the default search returns all property types."  (R. 690-7 at 5.)  Hotels.com correctly points out in reply that, if it were otherwise, the ensuing "selected-category" element would lack meaning because the relevant search returned all items of interest, rather than a subgroup of the same.  (R. 694 at 16.)  As a result, the landing page of the accused site does not satisfy the "associated-category" limitation.

---

[2] Civix also points to the testimony of Hotels.com's expert, Sigurd Meldal.  (R. 688 at 12.)  Mr. Meldal testified that "[o]ne [associated category] is a property type, and the other is star rating.  And inasmuch as these are selected by a user, and dividing the particular items of interest into subgroups, I would think that they would satisfy the definition of associated category."  (R. 690-11 at 5.)  This testimony, however, does not amount to evidence that the accused system actually runs a search limited to "hotels" from the May 2006 launching page if a user simply selects a city and clicks "Go."  This deposition testimony is therefore insufficient to create a genuine dispute sufficient to defeat Hotels.com's motion for partial summary judgment as to noninfringement of the '622 patent by the landing pages of the accused system. *See generally Dynacore Holdings Corp. v. U.S. Phillips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004) ("It is well settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact, and that a party may not avoid that rule simply by framing the expert's conclusion as an assertion that a particular critical claim limitation is found in the accused device.").

Separately, Civix argues that items of interest within a user's vicinity ("hotels in and around a city") are themselves a "property type" that satisfy the "associated-category" limitation. (R. 688 at 12-13.)  This argument is akin to Civix's unavailing contention that a user's input of a geographical position on the initial screen search interface and click of "Go" satisfies the "associated-category" limitation on account of its implicit selection of the category "hotels."  (*Id.* at 13 ("[I]n entering a city name into the user interface on the May 2006 landing page and clicking the 'Go' button, a user is not selecting a location 'alone'; she is selecting both a location and a property type (i.e., 'hotels.').").)  This argument fails because there is no dispute that the default search returns all property types, rather than just hotels.

Because Hotels.com is entitled to partial summary judgment of no infringement by the accused initial screen search interface of the asserted claims of the '622 patent, it is also entitled to summary judgment of no induced infringement with respect to the initial screen of the accused sites.  *See Exergen*, 575 F.3d at 1320 (Fed. Cir. 2009) ("Active inducement requires the patentee to prove 'first that there has been direct infringement[.].") (quoting *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002)); *see also Global-Tech*, 131 S. Ct. at 2067.

### III. The Undisputed Evidence Entitles Hotel.com to Summary Judgment of Noninfringement of Claim 23 of the '291 Patent Because the Accused Method Does Not Store or Supply "Advertising Information About a Business"

Asserted claim 23 of the '291 patent is directed to "[a] method of claim 14, wherein the step of supplying information comprises supplying advertising information about a business." (R. 690 at 13.)  Civix's expert report contends that Hotels.com satisfies the limitation "supplying advertising information" because "Hotels.com transmits advertising (such as banner ads) to its

customers who are connected to the hotels.com site and consequently the hotels.com databases via the Internet." (R. 682-1 at 13.) Hotels.com argues that the undisputed evidence entitles it to summary judgment of noninfringement of this claim because no Hotels.com database "supplies" or "stores" the banner ads that Civix accuses. (R. 679 at 27-28.)

There is no genuine dispute that the asserted claim of the '291 patent requires storage of the "advertising information." Civix's expert, Dr. Frieder, agreed in his deposition that, "if Hotels.com does not have an advertisement in its database, there's no infringement[.]" (R. 690 at 31.) In its response brief in opposition to summary judgment, Civix does not oppose the view that one cannot practice claim 23 without storing advertising information. (R. 688 at 27-28.) Nor does it identify, or point to any evidence showing the existence of, a Hotels.com database that stores advertising information. (*Id.*) Instead, Civix argues that "the Hotels system generates an 'iFrame' that designates advertising space on the search results page," which "satisfies the claim." (R. 688 at 27.) In an attempt to create a genuine dispute on this point, Civix proffers the declaration of its expert, Ophir Frieder, to the effect that:

> Hotels.com supplies advertising to a user's port by sending html instructions (prepared by Hotels.com) to a browser that commands the browser (used by Hotels.com) to access a database of *stored* advertisements made available to Hotels.com and deliver a specific ad from that database to an iFrame defined by Hotels.com within a web page loaded on the user's browser by Hotels.com. Hotels.com is involved every step of the way and therefore infringes claim 23[.]

(R. 690-2 at 10) (emphasis added.)

Civix filed this declaration contemporaneously with its brief in opposition to summary judgment, after the close of expert discovery. (*Id.*) The views expressed in this declaration differ in important ways from the contents of Dr. Frieder's Rule 26 report, and so the Court declines to rely on it. *See WMH Tool Group, Inc. v. Woodstock Int'l, Inc.*, No. 07-CV-3885,

2009 WL 6825247, at *1 n.2 (N.D. Ill. Dec. 9, 2009) ("The declaration prepared by WMH's survey expert *after* Defendants filed their summary judgment brief and long after expert discovery closed on June 30, 2009, will not be considered. Summary judgment affidavits may not contain expert testimony not previously disclosed.") (emphasis in original).  Dr. Frieder's Rule 26 report contended that Hotels.com performs the step of "wherein the step of supplying information comprises supplying advertising information about a business" because it "transmits advertising (such as banner ads) to its customers who are connected to the hotels.com site and consequently the hotels.com databases via the Internet."  (R. 682-1 at 13.)  Neither his rule 26 report, nor his deposition testimony, revealed a theory of infringement of claim 23 of the '291 patent comparable to the one that he propounds in his declaration.

In addition, the declaration contradicts Dr. Frieder's deposition testimony in at least two significant ways.  First, it contradicts his deposition testimony that he "do[es] not know" whether "the advertising that Hotels.com displays on its site is stored in a Hotels.com database[.]"  (R. 682-2 at 109.)  Second, his declaration to the effect that "[w]hether the advertising is stored in a database owned by Hotels.com or not is irrelevant to Hotels.com's infringement" (R. 690-2 at 9) contradicts his earlier deposition testimony that "if Hotels.com does not have an advertisement in its database, there's no infringement[.]"  (R. 690 at 31.)  The Court therefore declines to rely on Dr. Frieder's declaration for the purpose of revealing a genuine dispute.  *See Stein v. Foamex Int'l, Inc.*, No. 00-CV-2356, 2001 WL 936566, at *6 (E.D. Pa. Aug. 15, 2001) ("In essence, Stein would have the Court allow him to file preliminary expert reports and then freely supplement them with information and opinions that should have been disclosed in the initial report.  That result would effectively circumvent the requirement for the disclosure of a timely

24

and complete expert report.").  Hotels.com is therefore entitled to summary judgment of noninfringement of Claim 23 of the '291 patent on the ground that there is no genuine dispute that no Hotels.com database stores advertising information.

The record, construed in the light most favorable to Civix, would also compel summary judgment to Hotels.com as to claim 23 of the '291 patent because it reveals that Hotels.com does not "supply" any advertising information.  Hotels.com, in its Rule 30(b)(6) deposition, testified that it does not control "when and how the advertisement is delivered and placed on its results page" and explained that "a third party . . . delivers the ad[,]" such that Hotels.com does not "actually . . . control the content of it."  (R. 682-7 at 6.)  In response to Hotels.com's statement of undisputed fact that "[a] third-party delivers and controls the content of advertisements displayed on the accused Hotels.com sites[,]" Civix contends that "Hotels.com controls and determines *when* an advertisement is inserted into a search results page" and asserts further that "advertising on the Hotels.com website is handled by a sales team shared by Expedia and Hotels.com."  (R. 690 at 31-32) (emphasis added.)  This response does not reveal a genuine dispute whether a third party delivers and controls the content of advertisements displayed on the accused Hotels.com sites.  First, the question "when" an advertisement is inserted into a search-results page has no bearing on the distinct questions of control or the fact of delivery.  Second, Civix has not introduced any evidence to the effect that Hotels.com, as opposed to a third party, delivers advertising information about a business.  (R. 688 at 27-28.)

Finally, to the extent Civix seeks to rely on Dr. Frieder's declaration to create a genuine dispute, it fails for the reasons discussed above.

25

**IV.    As the Undisputed Evidence Establishes that the Accused System Did Not, and Does Not, Store the Accused Virtual Tours, and Because There Is No Genuine Dispute that the Accused Virtual Tours Do Not Satisfy the "Video" Limitation, Hotels.com Is Entitled to Summary Judgment of Noninfringement of Claim 20 of the '622 Patent and Claim 23 of the '291 Patent**

**A.    Hotels.com Is Entitled to Summary Judgment of Noninfringement of Claim 20 of the '622 Patent**

Claim 20 of the '622 patent is directed to a system comprising "a database for storing information about a plurality of items of interest, the information including . . . a geographical position and at least one associated category."  (R. 690 at 6-7.)  The claim recites a system wherein the portion of information comprises video for at least one of the items of interest.  (*Id.*)  Hotels.com moves for summary judgment of noninfringement of this claim on the ground that the evidence, construed in the light most favorable to Civix, reveals that the accused system does not satisfy the "video" limitation.  (R. 679 at 28-29.)

The undisputed evidence entitles Hotels.com to summary judgment.  According to the plain language of the asserted claim, the claimed system must comprise a database that stores video for at least one of the items of interest.  Consistent with this interpretation, in response to the question "if Hotels.com does not store the Virtual Tours that Civix has accused of infringement on its database, it doesn't meet this element of the claim, correct?," Civix's expert, testified that, "[i]f it doesn't store, if it doesn't have possession of it, then that's correct."  (R. 682-2 at 115-16.)

The evidence, construed in the light most favorable to Civix, makes clear that the Hotels.com database did not store the virtual tours.  (R. 682-9 at 4; R. 690 at 34.)  Civix does not introduce any evidence or argument to the contrary, but instead submits that "Hotels.com controls and uses virtual tours stored on a server of its sister company Expedia."  (R. 690 at 34.)

26

It also argues that Hotels.com "store[d] a procedure to obtain the virtual tours from an Expedia database." (R. 688 at 28.) Even if Plaintiff were correct in this respect, it would not create a genuine dispute whether the accused system satisfied the "video" element of claim 20 of the '622 patent. In other words, the undisputed fact that Hotels.com stored "a procedure to obtain the virtual tours from an Expedia database" (R. 697 at 30) is irrelevant. *See De Marini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001) ("Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device, i.e., when the properly construed claim reads on the accused device exactly.") (quoting *Amhil Enters. Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996)).[3] Civix does not explain why, or cite any case law to the effect that, "stor[ing] a procedure to obtain the virtual tours from an Expedia database . . . is tantamount to storing the videos themselves." (R. 688 at 28.) Ultimately, Civix's own expert testified in his deposition that, if Hotels.com does not store the virtual tours, Hotels.com does not meet the video limitation of claim 20 of the '622 patent. (R. 682-2 at 115-16.)

**B.    Hotels.com Is Entitled to Summary Judgment of Noninfringement of Claim 23 of the '291 Patent**

Asserted claim 23 of the '291 patent recites "[a] method . . . wherein the step of supplying information comprises supplying one or more video clips . . . related to the one item of interest." (R. 690 at 12-13.) There is no genuine dispute that this claim also requires the storage of one or more video clips. Civix's expert Dr. Frieder, in response to the question "as in the '291 patent, the information's that being sent to the user's computer must be stored in the system's

---

[3] For this reason, the Court need not address the question whether the accused virtual tour, which "displayed a square section of a single very wide rectangular image" (R. 690 at 35,) satisfies the Court's construction of video: "a presentation of multiple sequential frames of image data." (R. 650 at 2.)

27

database, correct?," testified: "It's a system that's capable of doing it for -- to store it on the video, yes." (R. 682-2 at 115.) He further testified that Hotels.com would not satisfy the claim if it did not store video clips "in its own database." (*Id.* at 112.) He also agreed that, "[i]f Hotels.com does not store video clips or digitized images in its database, it doesn't meet this claim[.]" (*Id.* at 113.)

Civix disputes this interpretation, arguing that claim 23 of the '291 patent does not require video clips as "the claim is infringed if one or more elements from the group of video clips and digitized images are supplied." (R. 688 at 28-29.) This argument fails as a matter of law, however, because "supplying one or more video clips and digitized images" means supplying at least one video clip and at least one digital image. *See, e.g.*, *Superguide Corp. v. DirecTV Enters.*, 358 F.3d 870, 885-86 (Fed. Cir. 2004) (holding that "the phrase 'at least one of' means 'one or more'" and concluding that, as applied to four categories, the phrase "modifies each category in the criteria list, i.e., one or more values in each category are required").

As explained above, there is no dispute that the Hotels.com database does not store video, and so Hotels.com is also entitled to summary judgment of no infringement of claim 23 of the '291 patent.

**V.     The Court Need Not Reach the Issue of Wilfulness**

Finally, Hotels.com submits that Civix's allegation of willful infringement fails as a matter of law because the record, construed in the light most favorable to Civix, would not support a reasonable jury finding that clear and convincing evidence exists that Hotels.com infringed "despite an objectively high likelihood that its actions constituted infringement of a valid patent." (R. 679 at 29-30) (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed.

28

Cir. 2007) (en banc)). In light of the fact that Hotels.com is entitled to summary judgment of noninfringement of claims 20 and 26 of the '622 patent, as well as claim 23 of the '291 patent, the Court need not address the question of willful infringement.

## CONCLUSION

For these reasons, the Court grants Hotels.com's motion for summary judgment.

**Dated:** August 19, 2011

ENTERED

_____
**AMY J. ST. EVE**
**United States District Judge**